IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. PEREZ, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| AMERICAN FUTURE SYSTEMS, INC., et al., | : | NO. 12-6171 |
| Defendants. | : | |

**MEMORANDUM**

**L. Felipe Restrepo, U.S. District Court Judge**                                **October 21, 2013**

On November 1, 2012, the Department of Labor ("DOL") filed a Fair Labor Standards Act ("FLSA") action against two defendants, American Future Systems, Inc. ("AFSI") and its CEO, Edward Satell. Now before the Court is a motion for a discovery plan filed by Defendants, asking that DOL be forced to disclose, two and half months prior to the conclusion of discovery, the identity of twenty representative witnesses who will testify at trial, so that they may be deposed by Defendants. Further, Defendants ask that these twenty representatives, once identified, be the only witnesses allowed to provide representative testimony on behalf of Plaintiff, whether by declaration in support of a motion for summary judgment or through testimony at trial. Plaintiff objects, and, among other things, refuses to reveal identities of potential witnesses at this stage, based on the so-called informer's privilege.

Finding that the identities of DOL's witnesses are protected by the informer's privilege and that it would be premature for this Court to make any decision on the size of a representative group of employee-witnesses, Defendants' motion will be denied.

## I. Factual and Procedural Background

The Complaint alleges that AFSI sells business publications through a number of telemarketing call centers in Pennsylvania, Ohio and New Jersey. Compl. ¶¶ 2, 6. The gravamen of the Complaint is that AFSI employees are not paid for short periods of time that DOL believes are properly compensable. According to DOL, this occurs because employees must log on to a computer system during the time that they are making calls or recording the results of those calls. *Id.* ¶ 7. The employees are paid for the time that they are logged on to the system, but once logged off, they are no longer paid. *Id.* Thus, employees are uncompensated for any number of short periods of time during the work-day, including breaks of a few minutes, breaks for water, breaks to use the restroom, and for work activities that the employees may be performing while not logged on to the system. *Id.* ¶¶ 8-9. The Complaint further alleges that as a result of failing to compensate employees for these short periods, Defendants fail to pay many of them the federal minimum wage and otherwise properly compensate them, in violation of the FLSA. *Id.* ¶ 10. As such, DOL seeks, among other things, back pay for over 1,800 allegedly aggrieved employees. *Id.*, Ex. A.

It is clear that much of this case will revolve around an issue of law: Are the short periods of time at issue those for which an employee must be paid? DOL relies on, among other things, 29 C.F.R. § 785.18, for the proposition that breaks of less than twenty minutes must be compensable.[1] Defendants, in their Answer, in the instant motion, and in representations to the

---

[1] 29 C.F.R. § 785.18 states:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call

Court, do not dispute that AFSI does not compensate employees for these short periods. Instead, they argue that these shorts breaks are those in which their employees are completely relieved from duty and hence, are properly not compensable, pursuant to 29 C.F.R. § 785.16.[2] Defs.' Mot. 3-4.

On August 12, 2013, the Court held a status conference in the matter, where Defendants requested that the Court impose a discovery plan that would have two main components: First, Defendants asked that DOL and Defendants should each select twenty representatives from the group of alleged employees. Defs.' Mot. 5. Under Defendants' plan, no employee outside of these representatives would be allowed to testify, either at the summary judgment stage or at trial. *Id.* at 6. Second, Defendants asked that these representatives be revealed two and one half months prior to the close of discovery. *Id.* at 5.

DOL objected to this proposed plan. It stated that it was willing to provide redacted statements of potential employee-witnesses, but, pursuant to the informer's privilege, it did not intend to reveal names of these "informers" until the summary judgment stage, to the extent it filed such a motion, or at the pre-trial conference. Pl.'s Mot. 11-12. The Court asked each side to provide a memorandum of law identifying their positions, especially with regard to the appropriateness of the informer's privilege. Each side ably did so.

---

time. (*Mitchell v. Greinetz,* 235 F. 2d 621, 13 W.H. Cases 3 (C.A. 10, 1956); *Ballard v. Consolidated Steel Corp., Ltd.*, 61 F. Supp. 996 (S.D. Cal. 1945)).

[2] 29 C.F.R. § 785.16(a) states:

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

II. **Discussion**

   a. **The Informer's Privilege**

"The informant's privilege[3] serves a significant public service encouraging citizens to report illegal activity." *Chao v. Sec. Credit Sys., Inc.*, No. 08-267, 2009 WL 1748716, at *3 (W.D.N.Y. June 19, 2009) (citation omitted). The privilege "is well established and its soundness cannot be questioned." *Mitchell v. Roma*, 265 F.2d 633, 635 (3d Cir. 1959). Further, "[o]ne of the most common applications of the privilege in civil cases is in cases arising under the FLSA and in these cases courts have generally refused disclosure." *Sec'y of Labor v. Superior Care Inc.*, 107 F.R.D. 395, 397 (E.D.N.Y. 1985) (citations omitted).

"The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement." *Donovan v. Fasgo, Inc.*, No. 81-129, 1981 WL 2402, at *2 (E.D. Pa. Oct. 6, 1981). "By preserving the anonymity of citizens who provide information, the privilege encourages citizens to perform their obligation of communicating to law enforcement their knowledge of the commission of crimes and to make retaliation impossible." *Chao v. Westside Drywall, Inc.*, 254 F.R.D. 651, 656 (D. Or. 2009) (citations and quotations omitted).

The informer's privilege is deeply entrenched in FLSA jurisprudence in this Circuit. *Mitchell*, 265 F.2d 633; *Chao v. Raceway Petrol., Inc.*, No. 06-3363, 2008 WL 2064354 (D.N.J. May 14, 2008); *Donovan*, 1981 WL 2402 at *2. So, too, is the privilege ingrained in FLSA cases throughout the country. *Brock v. Gingerbread House, Inc.*, 907 F.2d 115, 116-17 (10th Cir. 1990); *Brennan v. Engineered Prods., Inc.*, 506 F.2d 299, 302-05 (8th Cir. 1974); *Hodgson v. Charles Martin Inspectors of Petrol., Inc.*, 459 F.2d 303 (5th Cir. 1972); *Solis v. Delta Oil Co.,*

---

[3] Courts interchangeably refer to the privilege as both the "informer's privilege" and the "informant's privilege."

4

*Inc.*, No. 11-233, 2012 WL 1680101 (S.D. Ohio May 14, 2012); *Sec. Credit Sys.*, 2009 WL 1748716 at *2-4; *Westside Drywall*, 254 F.R.D. 651; *Martin v. New York City Transit Auth.*, 148 F.R.D. 56, 62-65 (E.D.N.Y. 1993).

While often invoked, "[t]he informer's privilege is not absolute. Its scope is limited by the underlying purpose of the privilege as balanced against the fundamental requirements of fairness and disclosure in the litigation process." *Delta Oil*, 2012 WL 1680101 at *3 (quotations and citation omitted). That said, the overwhelming majority of courts presented with the assertion of the privilege in FLSA cases have granted it, particularly during the discovery stage. *See, e.g., Perez v. L & J Farm Picking, Inc.*, No. 12-24426, 2013 WL 5446625, at *3 (S.D. Fla. Sept. 30, 2013) ("Defendants have failed to show a sufficient need to require Plaintiff to disclose the identity of its trial witnesses two and a half months early."); *Superior Care*, 107 F.R.D. at 397 (noting a "virtually unanimous refusal to compel disclosure"); *Sec. Credit Sys.*, 2009 WL 1748716 at *3 n.1 (noting "vast majority" of courts tend to uphold the privilege); *Brock v. J.R. Sousa & Sons, Inc.*, 113 F.R.D. 545, 546 (D. Mass. 1986) ("The informer's privilege has been rather uniformly applied in cases involving the Fair Labor Standards Act to protect the plaintiff from disclosing the names of its witnesses and copies of the witnesses' statements during discovery.").

### b. Plaintiff Properly Invoked the Informer's Privilege

To invoke the privilege "[t]here must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual consideration by the officer." *Raceway Petrol.*, 2008 WL 2064354 at *4 (citing *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953)). DOL may delegate such duties to a high ranking administrator. *See, e.g., Marriott Intern. Resorts, L.P. v. United States*, 437 F.3d 1302, 1308 (Fed. Cir. 2006); *Raceway Petrol.,*

5

2008 WL 2064354 at *4. "Delegation and assertion of the privilege must be in writing," *Westside Drywall*, 254 F.R.D. at 657, with an officer of high authority in DOL "attesting to his personal review of the documents and materials at issue in the case," *Raceway Petrol.,* 2008 WL 2064354 at *5. Further, that attestation must give "precise and certain reasons for preserving the confidentiality of the communications." *Raceway Petrol.,* 2008 WL 2064354 at *5 (quoting *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980).

Here, DOL properly invoked the privilege. It has provided a declaration invoking the privilege from Laura Fortman, the Principal Deputy Administrator of the Wage and Hour Division of the Department of Labor. Pl's Mot., Ex. 1. Ms. Fortman states that by Order of the Secretary of Labor, she is the proper official to make such a claim. *Id.* ¶ 4. She further states that she personally reviewed the files, including "documents identifying employee witnesses that have communicated with the Secretary [of Labor]," *Id.* ¶ 8; that DOL promised these witnesses that DOL will attempt to keep their identity "confidential to the maximum extent possible under the law," *Id.* ¶ 9; and, that revealing these employees' identities could adversely impact these employees and may deter others from reporting future violations, *Id.* ¶ 10. Accordingly, DOL invokes the privilege to attempt to shield such identities until the filing of dispositive motions or the pre-trial conference. Such a declaration is proper, and as such, the privilege is properly invoked.[4]

---

[4] In their brief, Defendants suggest that to the extent that the privilege has been invoked only recently, that it is too late to do so now. This Court disagrees. Perhaps because the privilege appears as much a protection for vulnerable employee-witnesses as it is for DOL's law-enforcement function, courts tend to not use rigid timeframes for the timing of a claim of privilege and have even let DOL cure a defective claim after an initial failure to properly invoke it. *See Westside Drywall*, 254 F.R.D. at 662 (holding that the privilege was not properly raised, but granting leave to do so); *Martin v. Albany Bus. Journal, Inc.*, 780 F. Supp. 927, 943 (N.D.N.Y. 1992) (same). Moreover, discovery seems like the most logical point in which the privilege would be invoked. *See Raceway Petrol*, 2008 WL 2064354 at *5 (citing *Reynolds*, 345 U.S. at 7-8).

### c. Once Invoked, Defendants Must Demonstrate a Need for Information that Outweighs the Purpose Behind the Privilege

Having determined that the privilege was properly invoked, the issue turns to whether Plaintiff should be forced to lift it and disclose information to Defendants. "Generally, in questions involving the privilege, the interests to be balanced . . . are the public's interest in efficient enforcement of the Act, the informer's right to be protected against possible retaliation, and the defendant's need to prepare for trial." *Delta Oil Co., Inc.*, 2012 WL 1680101 at *3 (citations omitted). Once invoked, "[t]he defendant bears the burden of establishing that his or her need for disclosure is greater than the purpose behind the privilege." *Raceway Petrol.,* 2008 WL 2064354 at *3 (citations omitted).

Defendants give interrelated reasons why invoking the privilege is inappropriate in this matter. First, they argue that since Plaintiff will inevitably be disclosing the names of individuals at some point—such as during the dispositive motion stage, or at trial—it should disclose them now, so as to avoid an unfair "trial by surprise." That is, the privilege must now give way to Defendants' ability to adequately prepare for trial. Second, they argue that disclosing witnesses now, along with severely limiting the number of witnesses that Plaintiff can call, would create a more efficient trial. As explained below, neither argument is enough for this Court to lift the privilege.

### d. Defendants' Claims for Lifting the Privilege Are Inadequate

A defendant's claim that it cannot adequately prepare for trial without piercing the informer's privilege is often made and often denied in the FLSA context. Courts tend to do so because such litigation generally revolves around a defendant's own documents and records, and because a defendant is free to seek out the very same witnesses in order to interview them, depose them or seek declarations from them. *See, e.g., Hodgson*, 459 F.2d at 307 ("The

7

Secretary's answers to interrogatories have given defendant all the information it reasonably needs to prepare its defense, in view of the fact that the dispute here concerns facts which are as much within the knowledge of defendant as its employees."); *Raceway Petrol.*, 2008 WL 2064354 at *4 ("[T]he knowledge sought from [Defendant's] current and former employees- whether or not they worked overtime hours for which they were not compensated- is just as much within the knowledge of [Defendant] as it is within the knowledge of the [Defendant's] workers.") (citations and internal quotations omitted); *Donovan,* 1981 WL 2402 at *1 ("[T]he Secretary has supplied the defendants with a great deal of information easily sufficient to apprise them of the nature of the violations alleged, the extent of the violations and the time period involved."). These cases are clearly analogous to the matter at hand, where much of this case will be an analysis of Defendants' records along with an issue of law: whether the uncompensated breaks should properly have been compensated under the FLSA.

Defendants' strongest argument is perhaps that the size of the witness pool would make an attempt to interview every potential witnesses so unwieldy as to be unrealistic. And, this Court, as the ultimate fact finder in a case where there are alleged to be 1,800 different aggrieved employees, is sympathetic to Defendants' request for efficiency. However, as Plaintiff correctly notes, efficiency is generally not considered a sufficient reason to pierce the informer's privilege, even when the size of a witness pool makes it unlikely that a defendant would practically be able to interview each potential witness. *See, e.g., Raceway Petrol.*, 2008 WL 2064354 at *4 (despite 600 potential employee-witnesses, claim of "efficiency on its own is not weighty enough to overcome the public policy against disclosure") (quotations and citations omitted); *see also Sec. Credit Sys.*, 2009 WL 1748716 at *4 ("The Court is similarly unpersuaded by the defendants' assertion that compelling the DOL to produce the statements is required because it is 'more

8

efficient' than conducting independent interviews themselves"). This makes intuitive sense, because it will inevitably be more efficient for a defendant if DOL discloses its witnesses. Thus, if efficiency were enough to lift the privilege, there would be no privilege to speak of, because it would never survive the discovery stage. And, while the number of potential witnesses is larger here than in most FLSA matters, it would create an incongruous result if employee-witnesses from large employers were not afforded the protections of the privilege simply because their employer, by default, had a larger number of potential aggrieved employees to interview.

Further, Defendants' limited citations to FLSA jurisprudence do not support lifting the privilege. For example, Defendants cite *Martin v. New York City Transit Authority* for the proposition that "[t]he DOL's intended use of these witnesses' declarations as a sword waives the DOL's right to shield their prior interview statements from disclosure." 148 F.R.D. at 63. While an accurate quote, the reasoning of *New York City Transit Authority* supports the proposal of Plaintiff, not Defendants. In *New York City Transit Authority*, DOL sought to invoke the privilege, even as it related to witnesses whose declarations would be used to support a motion for summary judgment. *Id.* The Court there gave DOL a choice: lose the privilege for the witnesses whose declarations support a motion for summary judgment, or forgo those declarations, but keep the privilege. *Id.* at 64-65. In other words, the "sword" was not the collection of witness statements, but the use of those statements before a trier of fact. Here, DOL is already offering the same arrangement: the privilege is lost for a specific witness if a declaration by that witness is used in support of a motion for summary judgment.

Defendants' citation to *Secretary of Labor v. Superior Care Inc.*, 107 F.R.D. 395, is similarly unavailing. There, like here, a defendant attempted to force DOL to disclose the names of witnesses it planned to introduce at trial. *Id.* at 396. A Magistrate Judge granted the motion

9

and ordered the disclosure. *Id.* at 396-97. The District Court reversed the Magistrate's ruling, granted a protective order for DOL, and suggested that the names of informers would not need to be revealed until DOL sought to introduce those witnesses at trial. *Id.* at 397. Again, DOL has proposed something more favorable than was granted in that case. Rather than ending the privilege at trial, the privilege here would end at the pre-trial conference or when a witness is used to support a motion for summary judgment.[5] In fact, courts have routinely refused to lift the privilege in situations where DOL used it to shield more information than what it seeks to shield here. *See, e.g., Sec. Credit Sys., Inc.*, 2009 WL 1748716 at *3 (denying request to reveal both identities and statements of informers); *Raceway Petrol., Inc.*, 2008 WL 2064354 at *4 (same); *Martin v. Albany Bus. Journal, Inc.*, 780 F. Supp. 927, 939-40 (N.D.N.Y. 1992) (same).

Defendants give no compelling reasons that their circumstances are different than the significant body of case law that declines to lift the privilege during the discovery stage. In fact, it appears to this Court that the facts of this case are squarely on point with those cited above, and that DOL's proposal is reasonable and discloses more information than in a number of similar FLSA cases. Further, Defendants have failed to demonstrate that they cannot adequately prepare for trial. Accordingly, Defendants have not met their burden to demonstrate the need for lifting the privilege and their motion will be denied.

---

[5] To the extent that Defendants seek to use statements for impeachment purposes, here too, DOL's claim for privilege is supported by ample case law. *See Engineered Products, Inc*., 506 F.2d at 303-304 ("Access for impeachment purposes should be handled at the pretrial stage."); *Donovan*, 1981 WL 2402 at *2 (suggesting proper time for disclosure of identity for impeachment purposes is similar to that required by the Jenks Act, 18 U.S.C. § 3500).

### e. The Court Finds it Premature to Make a Decision Regarding the Number of Representative Witnesses

Defendants also ask, regardless of this Court's decision on privilege, that the Court limit DOL to twenty representative witnesses. Defendants are correct that "[c]ourts commonly allow representative employees to prove violations with respect to all employees." *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994) (citations omitted). However, to determine whether a sample is adequate generally includes a careful review of evidence. *Id.* at 702; *Reich v. S. Maryland Hosp., Inc.*, 43 F.3d 949, 952 (4th Cir. 1995); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 67 (2nd Cir. 1997). This Court has not heard any such evidence at this stage. Accordingly, it is premature to make any decision on the appropriateness of a representative sample, and the motion will be denied without prejudice. The Court will discuss the potential size of a witness pool at the pre-trial conference, and, if appropriate, will make a determination then.

An appropriate Order follows.