## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, | ) ) ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )  Civil Action No.  12-6171 |
|  | ) |
| AMERICAN FUTURE SYSTEMS, INC. d/b/a PROGRESSIVE BUSINESS PUBLICATIONS, a corporation; and EDWARD SATELL, individually and as President of the above referenced corporation, | ) ) ) ) ) ) |
|  | ) |
| Defendants. | ) |

_____

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

M. Patricia Smith
Solicitor of Labor

Linda Thomasson
Acting Regional Solicitor

Adam F. Welsh
A. Scott Hecker
Attorneys
Office of the Solicitor
Suite 630E, The Curtis Center
170 S. Independence Mall West
Philadelphia, PA 19106-3306
(215) 861-5159
(215) 861-5162 (fax)
welsh.adam@dol.gov
hecker.scott@dol.gov

U.S. Department of Labor

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………… 1

SUMMARY OF UNDISPUTED MATERIAL FACTS……………………………………… 2

ARGUMENT………………………………………………………………………………… 6

  I.  **All Workday Breaks of Twenty Minutes or Less are Compensable Under the FLSA**……………… 6

    a.  **The Court should apply the Department of Labor's longstanding regulation mandating that short workday breaks are compensable**…………………………………………………….. 7

      1.  The Section 785.18 rest period regulation is longstanding and well-established…………………… 7

      2.  Courts commonly apply Section 785.18 as bright-line rule………………………………… 8

      3.  Section 785.18 warrants substantial deference…………………………………………… 10

      4.  Defendants must manage their workforce, and not withhold compensation, if they wish to prevent excessive short breaks. …………………………………………………….. 15

    b.  **The facts and circumstances surrounding the breaks at issue confirm their compensability**…… 16

      1.  The employer bears the burden of establishing that the breaks are not compensable……………… 17

      2.  The duration and pattern of the breaks confirm they are typical compensable work breaks……….. 18

      3.  The employees, the Secretary's expert, and even certain Progressive managers confirm that these breaks promoted employee efficiency, reduced employee turnover, and predominantly benefited Progressive……………………………………………………………………. 19

      4.  The employees used their breaks for purposes that are typically deemed compensable and beneficial to the employer…………………………………………………………….. 21

    c.  **Section 785.16 does not apply to this case**…………………………………………… 23

  II.  **Edward Satell is an "Employer" Under the FLSA and Liable for All Violations**………………… 24

  III.  **Defendants are Liable for Liquidated Damages** ……………………………………………… 26

  IV.  **Defendants' Violations Were Willful** ……………………………………………………… 28

  V.  **Defendants Violated the FLSA Recordkeeping Requirement** …………………………………… 29

CONCLUSION………………………………………………………………………………… 30

## **TABLE OF AUTHORITIES**

**Statutes**

29 U.S.C. § 201 et seq....................................................................................... 1
29 U.S.C. § 202(a) ............................................................................................ 12
29 U.S.C. § 203(s)(1)(A) ................................................................................... 2
29 U.S.C § 204 ........................................................................................... 11, 12
29 U.S.C. §206.................................................................................................... 2
29 U.S.C. §206(a)(1)(C) .................................................................................... 3
29 U.S.C. § 211(c) ........................................................................................ 2, 29
29 U.S.C. §§ 216(c) ...................................................................................... 2, 26
29 U.S.C. § 217................................................................................................... 2

**Regulations**

29 C.F.R. § 516.2(7) ........................................................................................ 29
29 C.F.R. § 516.6(a)(1) .................................................................................... 29
29 C.F.R. § 578.3(c)(2) .................................................................................... 28
29 C.F.R. § 778.223 ......................................................................................... 17
29 C.F.R. § 785.10 ........................................................................................... 11
29 C.F.R. § 785.16 ..................................................................................... 23, 24
29 C.F.R. § 785.16(a) ...................................................................................... 23
29 C.F.R. § 785.16(b) ...................................................................................... 24
29 C.F.R. § 785.18 .................................................................................... passim
29 C.F.R. § 785.21 ........................................................................................... 11
29 C.F.R. § 785.22 ........................................................................................... 11
29 C.F.R. § 785.23 ........................................................................................... 11
29 C.F.R. § 790.6(b) ........................................................................................ 17

**Cases**

Abendschein v. Montgomery County,
    984 F. Supp. 356 (D. Md. 1997)................................................................ 18
Aboud v. City of Wildwood,
    Civ. No. 12-7195, 2013 WL 2156248 (D.N.J. May 17, 2013) .................. 9
Aeromotive Metal Products, Inc. v. Wirtz,
    312 F.2d 728 (9th Cir. 1963) .................................................................... 20
Alvarez v. IBP, Inc.,
    546 U.S. 21 (2005)..................................................................................... 17
Atkinson v. House of Raeford Farms, Inc.,
    Civ. No. 09-3137, 2012 WL 2871747 (D.S.C. July 12, 2012) .................. 9
Bernard v. IBP, Inc. of Nebraska,
    154 F.3d 259 (5th Cir. 1998) .................................................................... 18
Brock v. Claridge Hotel and Casino,
    664 F. Supp. 899 (D.N.J. 1987) ................................................... 16, 21, 23

Brock v. Claridge Hotel and Casino,
    846 F.2d 180 (3d Cir. 1988)......................................................................................... 27
Brock v. Richardson,
    812 F.2d 121 (3d Cir. 1987)........................................................................................... 7
Brooks v. Vill. of Ridgefield Park,
    185 F.3d 130 (3d Cir. 1999)......................................................................................... 11
Brown v. L&P Industries LLC,
    2005 WL 3503637 (E.D. Ark. Dec. 21, 2005).............................................................. 8
Burroughs v. MGC Servs., Inc.,
    No. 08-1671, 2009 WL 959961 (W.D. Pa. Apr. 7, 2009).......................................... 25
Castellino v. M.I. Friday, Inc.,
    No. 11-261, 2012 WL 2513500 (W.D. Pa. June 29, 2012) ....................................... 25
Cleary ex rel. Cleary v. Waldman,
    167 F.3d 801 (3d Cir. 1999)......................................................................................... 12
DeKeyser v. Thyssenkrupp Waupaca, Inc.,
    747 F. Supp.2d 1043 (E.D. Wisc. 2010)....................................................................... 8
Dole v. Solid Waste Servs., Inc.,
    733 F. Supp. 895 (E.D. Pa. July 14, 1989), ....................................................... 25, 29
Enter. Rent-A-Car Wage & Hour Practices Litig.,
    683 F.3d 462 (3d Cir. 2012)................................................................................... 24, 25
Garcia v. Tenafly Gourmet Farms, Inc.,
    2012 WL 715316 (D.N.J. 2012) ................................................................................. 28
Garcia v. Tyson Foods,
    766 F. Supp. 2d 1167 (D. Kan. 2011)........................................................................ 16
Gomez v. Tyson Foods, Inc.,
    Civ. No. 08-21, 2013 WL 5516277 (D. Neb. Oct. 2, 2013) ....................................... 9
Hawkins v. Alorica, Inc.,
    287 F.R.D. 431 (S.D. Ind. 2012)........................................................................... 14, 15
Haybarger v. Lawrence Cnty. Adult Prob. and Parole,
    667 F.3d 408 (3d Cir. 2012)......................................................................................... 25
Hertz v. Woodbury County,
    566 F.3d 775 (8th Cir. 2009) ...................................................................................... 18
Imada v. City of Hercules,
    138 F.3d 1294 (9th Cir. 1998) .................................................................................... 11
Jackson v. Airways Parking Co.,
    297 F. Supp. 1366 (N.D. Ga. 1969) ........................................................................... 23
Jackson v. Art of Life, Inc.,
    836 F. Supp. 2d. 226 (E.D. Pa. 2011) ........................................................................ 26
Jones v. C&D Technologies, Inc.,
    Civ. No. 11-1431, 2014 WL 1233390 (S.D. Ind. March 25, 2014).......................... 9
Kasten v. Saint-Gobain Performance Plastics Corp.,
    556 F. Supp. 2d 941 (W.D. Wisc. 2008)..................................................................... 16
Lacy v. Reddy Electric Co.,
    Civ. No. 11-52, 2013 WL 3580309 (S.D. Ohio July 11, 2013)................................. 9
Marshall v. Brunner,
    668 F.2d 748 (3d Cir. 1982)......................................................................................... 27

Marti v. Grey Eagles Distributors, Inc.,
  937 F. Supp. 845 (E.D. Mo. 1996).................................................................... 10, 23

Martin v. Cooper Elec. Supply Co.,
  940 F.2d 896 (3d Cir. 1991)............................................................................ 26, 27

Martin v. Selker Bros., Inc.,
  949 F.2d 1286 (3d Cir. 1991) ............................................................................... 28

Martin v. Waldbaum, Inc.,
  Civ. No. 86-0861, 1992 WL 314898 (E.D.N.Y. Oct. 16, 1992)......................... 9, 15

McLaughlin v. Richland Shoe Co.,
  486 U.S. 128 (1988)............................................................................................... 28

Mireles v. Frio Foods, Inc.,
  899 F.2d 1407 (5th Cir. 1990) ......................................................................... 23, 24

Mitchell v. Greinetz,
  235 F.2d 621 (10th Cir. 1956) ...................................................................... passim

Overnight Motor Co. v. Missel,
  316 U.S. 572 (1984) ............................................................................................... 11

Petrone v. Werner Enterprises,
  Civ. No. 12-307, 2013 WL 3479280 (D. Neb. July 10, 2013) ............................... 13

Petrone v. Werner Enterprises, Inc.,
  Civ. No. 11-401, 2012 WL 4848900 (D. Neb. Oct. 11, 2012) ............................... 14

Reich v. Brenaman Electrical Service,
  Civ. No. 95-3737, 1997 WL 164235 (E.D. Pa. Mar. 28, 1997).............................. 27

Reich v. Cole Enterprises,
  901 F. Supp. 255 (S.D. Ohio 1993) ........................................................................ 9

Rother v. Lupenko,
  515 Fed. Appx. 672 (9th Cir. 2013)......................................................................... 8

Roy v. County of Lexington,
  141 F.3d 533 (4th Cir. 1998) ................................................................................. 18

Salazar v. Life Ambulance Servs., Inc.,
  Civ. No. 99-361,  2001 WL 685755 (W.D. Tex. 2001)........................................... 11

Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.,
  82 F. Supp. 2d 426 (W.D. Pa. 2000)...................................................................... 11

Skidmore v. Swift,
  323 U.S. 134 (1944).............................................................................................. 10

SmithKline Beecham Corp. v. Apotex Corp.,
  Civ. No. 99-4304, 2005 WL 2436662 (E.D. Pa. Sept. 28, 2005) ........................... 27

Solis v. A-1 Mortg. Corp.,
  934 F. Supp. 2d 778 (W.D. Pa 2013)...................................................................... 25

Solis v. Cindy's Total Care, Inc.,
  No. 10-7242, 2012 WL 28141 (S.D.N.Y. Jan. 5, 2012) ........................................... 8

Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123,
  321 U.S. 590 (1944)................................................................................................ 7

Thornton v. Crazy Horse, Inc.,
  Civ. No. 06-251, 2012 WL 2175753 (D. Alaska June 14, 2012) ........................... 10

Townsend v. Mercy Hosp. of Pittsburgh,
  862 F.2d 1009 (3d Cir. 1988)................................................................................. 11

iv

United States v. Rosenwasser,
    323 U.S. 360 (1945) ........................................................................................ 24
Vargas v. Gen. Nutrition Cents., Inc.,
    No. 10-867, 2011 WL 43020 (W.D. Pa. Jan. 6, 2011) ........................................ 7
Walton v. United Consumers Club, Inc.,
    786 F.2d 303 (7th Cir 1986) ............................................................................. 26
Williams v. Tri-County Growers, Inc.,
    747 F.2d 121 (3d Cir. 1984) ........................................................................ 27, 29
Wirtz v. Williams,
    369 F.2d 783 (5th Cir. 1966) ............................................................................ 29
Wong v. Hunda Class Corp.,
    Civ. No. 09-4402, 2010 WL 2541698 (S.D.N.Y. June 23, 2010) ......................... 9

**Opinion Letters**

Opinion Letter, FLSA,
    (Aug. 13, 1964) ................................................................................................ 12
Opinion Letter, FLSA,
    (Dec. 19, 1967) ................................................................................................ 12
Opinion Letter, FLSA-587,
    (Oct. 3, 1975) .................................................................................................. 12
Opinion Letter, SCA-126,
    (Mar. 27, 1987) ............................................................................................... 12
Opinion Letter, FLSA
    1994 WL 1004840 (June 16, 1994) ................................................................... 12
Opinion Letter, FLSA,
    1996 WL 1005233 (Dec. 2, 1996) ................................................................. 8, 13
Opinion Letter, FLSA,
    (Feb. 19, 1998) ................................................................................................ 12

## INTRODUCTION

Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor ("Plaintiff" or the "Secretary") alleges that Defendants violated the minimum wage and recordkeeping provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA" or "the Act"), as a result of Progressive's undisputed policy of requiring its telemarketers -- with very limited exceptions -- to "log-off" its computer and telephone system and go "off the clock" during the workday whenever they were not making sales calls.  In July 2009, Progressive ceased paying its employees for short bathroom breaks, five-minute coffee breaks, brief rest periods between telephone calls, or any other short workday breaks of twenty minutes or less.[1]  Progressive's policy of not compensating its employees for short breaks is contrary to more than half a century of case law and a longstanding and well-accepted U.S. Department of Labor ("DOL") regulation that specifically requires employers to compensate employees for short workday breaks and other brief pauses in active work lasting twenty minutes or less.  *See* 29 C.F.R. § 785.18.[2]

This Court should apply a bright line test and find these short log-off periods to be compensable work time pursuant to the applicable regulation and case law. Alternatively, if the Court declines to apply the regulation as a bright line test, the undisputed facts

---

[1] Although (as set forth below) Progressive's own documents state that breaks are unpaid, and Progressive's witnesses consistently testified to this fact, Progressive represented on May 13, 2014 that log-off periods of 90 seconds or less are paid. Even if accurate, this fact does not affect the legal argument herein, as Progressive undisputedly failed to compensate employees for breaks as short as ninety-one seconds.

[2] 29 C.F.R. § 785.18 ("Rest") provides as follows:

Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry.  They promote the efficiency of the employee and are customarily paid for as working time.  They must be counted as hours worked.  Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

show that these short workday breaks promote employee efficiency and provide other clear benefits to Progressive.

Given the undisputed nature of Progressive's policy, the Department's well-established and accepted regulation concerning short workday breaks, and longstanding case law mandating that such breaks be compensated under the FLSA, the short log-off periods at issue constitute compensable time as a matter of law. Defendants' knowing failure to pay these low-wage employees for this compensable time resulted in the employees' actual rate of pay being less than the applicable minimum wage and constitutes a willful violation of the FLSA's minimum wage provision. *See* 29 U.S.C. §206. Defendants also failed to maintain complete records of all hours worked by their employees and are in violation of the recordkeeping provisions of the FLSA. *See* 29 U.S.C. § 211(c). Accordingly, Plaintiff respectfully requests that the Court grant summary judgment in his favor, order that all telemarketer "log-off" time of 20 minutes or less be treated as compensable time under the FLSA, and award back wages[3], liquidated damages, and appropriate injunctive relief pursuant to Sections 16(c) and 17 of the FLSA, 29 U.S.C. §§ 216(c) and 217.[4]

## SUMMARY OF UNDISPUTED MATERIAL FACTS

As set forth in the Joint Statement of Stipulated Facts[5], Defendants failed to compensate their employees for break periods of twenty minutes or less, JSSF 28, 30, 42, which supports an award of summary judgment for Plaintiff in view of the well-

---

[3] Plaintiff moves for summary judgment on FLSA liability, liquidated damages, and willfulness, but not on the actual damage calculation.
[4] There is no dispute that Progressive is a covered employer. JSSF 3, 11; *See* 29 U.S.C. § 203(s)(1)(A). There is also no dispute that the individuals at issue in this case are employees of Progressive. JSSF 9-10.
[5] All record citations are to the Joint Statement of Stipulated Facts ("JSSF"), the Joint Appendix, or the Supplemental Appendix ("JA"). *See* 3/13/14 Order (ECF No. 24); 5/15/14 conference call (ECF No. 29). Joint Appendix document titles are provided in the indexes to the Joint and Supplemental Appendices.

established regulation at 29 C.F.R. § 785.18.  Additional undisputed facts confirm that the nature and duration of these breaks made them extremely beneficial to Progressive and therefore compensable even under a facts and circumstances analysis.

 In July 2009 -- the same month the federal minimum wage increased to $7.25 per hour -- Defendants changed their company-wide break policy to compensate their telemarketers, with very limited exceptions, only for time spent on active telemarketing calls.  29 U.S.C. §206(a)(1)(C);  JSSF 28, 30; JA0194:15-20, JA0197:15-19; JA0199:8-0200:4; JA0204:17-0205:12; JA0869-0870.  Telemarketers, who were mostly paid at a base hourly rate of $7.25, JA0851-0895,[6] were required to log off Progressive's computer and telephone system for all rest breaks, no matter how short.  JSSF 30; JA0204:17-0205:7; JA0493:11-0494:6; JA0501:4-0502:15.  When an employee required a brief bathroom break before proceeding with the next call, the employee was required to log off the system and go into uncompensated time.  JA0199:22-0200:10; JA0322:8-0333:1.  Progressive's telephone system ensured employees were "off the clock" during breaks by automatically dialing the next call after the employee disposed of the current call.  JA0195:18-0196:4; JA0563:8-0564:18; JA0434:21-0435:8.  An employee that wishes to stop making calls and is not instructed to go to "training" must log off.  JA0435:18-0436:11; JA0465:8-0467:20; JA0153:5-15; JA0194:50-20; JA0197:15-24.  All log-on/log-offs are recorded on Progressive's timekeeping system.  JSSF 32-43.

Employees use breaks of twenty minutes or less for typical reasons that benefit Progressive as well as the employees.  JA1004-1253 (employee declarations); JA0360:11-0362:21; JA0429:8-0431:13; JA0432:2-17.  Common examples are bathroom

---

[6] Telemarketers at the Pennsylvania and New Jersey locations were paid at a base rate of $7.25 through 2013; telemarketers at the two Ohio locations were paid at a base rate ranging from $7.25-$7.95 depending on the current Ohio state minimum wage.

breaks, short rest periods, coffee breaks, taking a break after a particularly difficult call, and chatting with co-workers, *See* JA1037-JA1040; JA1049-1051; JA1116-1119[7]; JA0237:6-21; JA0590:14-22; JA0429:8-0431:13. Progressive employees confirm that such breaks are important given the nature of telemarketing. JA1010; JA1026; JA1036; JA1061-1062; JA1069.[8] Telemarketers must maintain an energetic, positive attitude on the phone, and engage in the stressful and emotionally draining task of continuously trying to sell a product, knowing that their success level affects their compensation. JA0579:12-18; JA0424:4-24; JA0425:22-0426:4; JA0427:24-0428:6; JA0146:24-0147:16; JA0148:12-14; JA0316:21-0317:8; JA0317:16-0318:3; JA0319:4-15; JA0549:17-0551:3; JA1126. Short breaks allow them to restore their energy level prior to resuming their calls. JA1029; JA1043; JA1065; JA1077; JA0320:12-0321:1; JA0363:23-0364:17. The peer-reviewed research documented by the Secretary's expert confirms that workday breaks in this type of "emotion regulation" job provide significant benefits to the company by increasing productivity and reducing the risk of burnout. JA0729-0757.

A detailed review of Progressive's log-on/log-off records shows an overall pattern and break duration consistent with a typical office employee taking rest breaks, bathroom breaks as needed, and perhaps a longer lunch break during his daily workday. JA1000-1003; JA0839-0840.[9] The time record review also confirms that a vast majority of the

---

[7] For efficiency purposes, citations to the Secretary's employee declarations (JA1004-1254), which cover all relevant call centers and span the entire relevant time period, will generally be to selected examples even though many or all of the declarations may support the same point.

[8] In fact, one of the employees interviewed by Progressive's own expert stated she was a diabetic who used breaks to check her blood sugar level. JA0768. This is an excellent example of a break that provides obvious, significant benefits to Progressive .

[9] Notably, the average break time per employee of 1.04 hours and average number of breaks per day of 5.15 includes all breaks, not just the breaks of 20 minutes or less that must be compensated.

breaks taken were truly brief:  approximately 74% of all uncompensated breaks of 20 minutes or less were less than 10 minutes in length.  JA0839-0840.

Progressive has consistently claimed its break policy is "flexible."  However, that claim is totally irrelevant to whether the short workday breaks are compensable under the FLSA.  Moreover, the claim that the breaks are "flexible" is inaccurate, because Progressive's own documents show there were limits on the number and duration of the breaks Progressive telemarketers took.   Multiple Progressive policies discouraged, and in some respects precluded, employees from taking excessive or unlimited breaks.  Most obvious is the Progressive policy at issue in this case:  by not paying employees for their breaks, employees were incentivized to take fewer and shorter breaks because they knew any break time would be unpaid. JA1023; JA1065; JA1166; JA1203; JA0344:7-12.  At certain times, some Progressive call centers imposed additional restrictions on the number, duration and timing of breaks that telemarketers could take.  JA1028-1029; JA1166; JA1198; JA1005; JA0221:2-20; JA0470:8-21.  Progressive also limited its call center hours, encouraged a traditional work schedule, maintained policies requiring employees to commit to a minimum number of paid hours, dictated (as recently as 2013) the specific time when employees may take a lunch break, and subjected employees to discipline and other penalties for not meeting that hours commitment.  JSSF 25; JA0869-0883; JA0924; JA0926-0927; JA0933-0934; JA0936-0937; JA0060 at No. 16; JA0154:1-0159:22; JA0160:1-23; JA0182:15-0188:24; JA0189:14-0192:5; JA0335:2-19; JA0336:9-0341:7; JA0342:16-23; JA0346:9-23; JA0347:18-0348:21; JA0353:1-0354:12; JA0356:3-16; JA0443:14-17; JA0450:4-24; JA0452:17-JA0458:22; JA0576:2-18; JA0409:9-25.  In some cases, employees could be put on fixed work schedules or daily

requirements in order to meet their hours worked requirement.  JA0925-0932;  JA0165:8-0181:12; JA0331:15-0334:9; JA0346:11-23.  Progressive also had strict sales quotas and made it clear that employees who did not meet those quotas would be fired. JA0882; JA0935; JA0335:14-16.  As with the minimum hours commitment, Progressive could put employees on stricter work schedules to attempt to raise their sales. JA0926; JA0931; JA0925.  Employees were even told to go home for the day if their sales were low. JA1196; JA1010; JA1029; JA1039.  Any claim that Progressive employees had completely flexible schedules is inconsistent with the undisputed facts, and with the testimony of Progressive's own expert.  JA0283:11-JA0284:10.

Defendant Edward Satell, Progressive's CEO, owned 98 percent of the business and exercised significant control over it.  JSSF 4-5.  He was directly responsible for the decision not to compensate employees for any break periods.  JA0482:9-0484:15; JA0131:18-0132:15; JA0133:2-0134:2.  This break policy was implemented with full knowledge of Mr. Satell that it was contrary to the Section 785.18 rest period regulation, in an apparent effort to maintain telemarketer pay levels when the FLSA minimum wage increased in July 2009.  JA0524:3-0526:20; JA0531:9-0532:7.  The non-compensation of breaks policy continued after DOL representatives specifically informed Progressive that it constituted a violation of the FLSA in March 2011.  JSSF 16.

## ARGUMENT

## I.   All Workday Breaks of Twenty Minutes or Less are Compensable Under the FLSA

This matter concerns whether the short rest periods taken by Progressive's employees are compensable hours worked under the FLSA.  The longstanding DOL regulation at 29 C.F.R. § 785.18 states that short rest periods up to about twenty minutes

are compensable.  The well-accepted premise in the Third Circuit is that the FLSA's "humanitarian" and "remedial" purposes require "liberal" interpretation of its provisions. *Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir. 1987) (citing *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)).  The FLSA "must not be 'interpreted or applied in a narrow, grudging manner.'"  *Vargas v. Gen. Nutrition Cents., Inc.*, No. 10-867, 2011 WL 43020, at *4 (W.D. Pa. Jan. 6, 2011) (quoting *Brock*, 812 F.2d at 123-24 (citation omitted)).  As detailed below, courts repeatedly cite Section 785.18 and conclude that short workday breaks are compensable.  The guidance set forth in Section 785.18 and upheld by numerous courts should be dispositive.  However, even accepting Defendants' assertions, the undisputed facts concerning the breaks at issue here and the nature of Progressive's business further support the conclusion that such breaks are compensable because they promote employee efficiency and benefit Progressive as well as the employees.

     **a.**     **The Court should apply the Department of Labor's longstanding regulation mandating that short workday breaks are compensable.**

29 C.F.R. § 785.18  establishes a clear rule that workday breaks of up to twenty minutes are not an exception to the continuous workday, and should be compensated.[10]

     1.     The Section 785.18 rest period regulation is longstanding and well-established.

The rest period regulation was implemented in its current form in 1961, *see* 26 Fed. Reg. 190 (Jan. 11, 1961), and is derived from a 1940 DOL interpretive press release. *See Mitchell v. Greinetz*, 235 F.2d 621, 624-625 (10ᵗʰ Cir. 1956) (explaining that short

---

[10] Though the regulation mentions only breaks of 5 to about 20 minutes, it is axiomatic that a workday break of fewer than 5 minutes must also be compensated, and the case law discussed *infra* confirms that courts routinely find breaks of fewer than twenty minutes to be compensable.

breaks are beneficial to both employers and employees).  Defendants are challenging a

consistent decades-old DOL policy and subsequent regulation on the compensability of

short breaks which was summarized by the DOL in a December 2, 1996 opinion letter

regarding workday breaks as follows:

> Employees have always taken short work breaks, with pay, for a myriad of
> non-work purposes -- a visit to the bathroom, a drink of coffee, a call to
> check the children, attending to a medical necessity, a cigarette break, etc.
> The Department has consistently held for over 46 years that such breaks
> are hours worked under the FLSA, without evaluating the relative merits
> of an employee's activities.  This position, found at 29 C.F.R. § 785.18, is
> based squarely on the premise that short breaks are common in industry,
> promote the efficiency of employees and are customarily treated as work
> time by employers.

Opinion Letter, FLSA, 1996 WL 1005233 (Dec. 2, 1996).

2.     Courts commonly apply Section 785.18 as bright-line rule.

Courts routinely apply Section 785.18 as a per se rule requiring that short breaks

be compensated.  In *Brown v. L&P Industries LLC*, 2005 WL 3503637 (E.D. Ark. Dec.

21, 2005), the court found that a mandatory 15-minute morning break, even if actually

taken, could not be deducted from an employee's compensable time.  Quoting the

regulation, the court stated that "such break periods '*must* be counted as hours worked.'"

*Id.* at *6 (emphasis in decision).  *See also Rother v. Lupenko*, 515 Fed. Appx. 672, 674-

75 (9th Cir. 2013) ("it is the general rule under federal law that breaks of less than thirty

minutes are compensable," citing 785.18 and 785.19); *Solis v. Cindy's Total Care, Inc.*,

No. 10-7242, 2012 WL 28141, *19 (S.D.N.Y. Jan. 5, 2012) (all workday time was

compensable because breaks above 20 minutes were not regularly taken, and regulation

requires that "work breaks approximately of 20 minutes or less in duration" are

compensable); *DeKeyser v. Thyssenkrupp Waupaca, Inc.* 747 F. Supp.2d 1043, 1056-

1057 (E.D. Wisc. 2010) (denying employer setoff credit for compensated rest breaks because those breaks were compensable pursuant to 29 C.F.R. § 785.18); *Wong v. Hunda Class Corp.*, Civ. No. 09-4402, 2010 WL 2541698, *3 (S.D.N.Y. June 23, 2010) (citing 785.18 for the proposition that rest periods of 5 to 20 minutes must be counted as hours worked, and counting a daily 10- to 20-minute afternoon tea break as compensable time).

There are numerous other examples of courts recognizing that Section 785.18 is a bright line rule. *See Jones v. C&D Technologies, Inc.*, Civ. No. 11-1431, 2014 WL 1233390, *11 (S.D. Ind. March 25, 2014) (20-minute lunch break compensable under Section 785.18); *Atkinson v. House of Raeford Farms, Inc.*, Civ. No. 09-3137, 2012 WL 2871747, *3 (D.S.C. July 12, 2012) (in awarding treble damages under state law, citing Section 785.18 to show that there was no bona fide factual dispute concerning the jury's finding that plaintiffs should have been paid for breaks under twenty minutes); *Lacy v. Reddy Electric Co.*, Civ. No. 11-52, 2013 WL 3580309, *14 (S.D. Ohio July 11, 2013) (citing Section 785.18 and noting Defendants' concession "that employees must be paid for stand-alone breaks of 5-20 minutes"); *Aboud v. City of Wildwood*, Civ. No. 12-7195, 2013 WL 2156248, *5 (D.N.J. May 17, 2013) (citing Section 785.18 and stating that "[b]ecause plaintiffs' two fifteen minute 'coffee breaks' are of short duration . . . for present purposes they are compensable); *Gomez v. Tyson Foods, Inc.*, Civ. No. 08-21, 2013 WL 5516277, *5 (D. Neb. Oct. 2, 2013) (citing Section 785.18 in rejecting defendants' argument that pay for a 15-minute break should be offset against the back wages due); *Reich v. Cole Enterprises*, 901 F. Supp. 255, 260 (S.D. Ohio 1993) ("[A]ny 'cigarette breaks' an employee may have taken are compensable time under 29 C.F.R. §785.18"); *Martin v. Waldbaum, Inc.*, Civ. No. 86-0861, 1992 WL 314898, *1 (E.D.N.Y.

9

Oct. 16, 1992) (citing Section 785.18 and stating that "various courts have confirmed" its interpretation); *cf. Thornton v. Crazy Horse, Inc.*, Civ. No. 06-251, 2012 WL 2175753, *12 (D. Alaska June 14, 2012) (citing Section 785.18 and noting that "time spent on meals and on rest periods *significantly longer than 20 minutes* is also not compensable") (emphasis added); *Marti v. Grey Eagles Distributors, Inc.*, 937 F. Supp. 845, 852 (E.D. Mo. 1996) (noting that courts examining the compensability of breaks have found breaks of 20 minutes or less to be compensable, but breaks of 30 minutes or more to be not compensable).

Thus, rather than conduct a detailed inquiry into the nature and circumstances surrounding hundreds of thousands of short breaks, this Court should apply the rule that the DOL and the Courts have applied for nearly 75 years, and find all breaks of twenty minutes or less compensable.

> 3.     Section 785.18 warrants substantial deference.

The rest period regulation at 29 C.F.R. § 785.18 reflects the DOL's careful consideration of the issue based upon its expertise in administering the FLSA.  Given that expertise, the long history of the rest period regulation, and the manner in which the regulation furthers the purposes of the FLSA by creating an easily-applied rule that protects the pay of low-wage workers, this Court, like the courts cited above, should defer to the DOL's longstanding position that short rest periods are compensable.

This Court should defer to Section 785.18 as persuasive authority under the principles articulated in *Skidmore v. Swift*, 323 U.S. 134 (1944).  The Third Circuit has made it clear that such deference is typically granted in the context of the FLSA.  For example, the Third Circuit stated with regard to a Wage and Hour Administrator's

opinion letter that "the Administrator's expertise acquired through day-to-day application of the statute makes us hesitant to contravene such opinions unless the statute plainly requires otherwise." *Townsend v. Mercy Hosp. of Pittsburgh*, 862 F.2d 1009, 1012-13 (3d Cir. 1988); *see also Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 136 n.3 (3d Cir. 1999) (citing *Overnight Motor Co.v. Missel*, 316 U.S. 572 (1984), to hold that the Department of Labor's bulletin was a reasonable interpretation of the FLSA).

Accordingly, courts both within and outside of this Circuit have deferred to other Section 785 regulations. *See Imada v. City of Hercules*, 138 F.3d 1294, 1297 (9th Cir. 1998) (stating that regulations such as 785.39 (addressing the compensability of travel time) "are entitled to great deference and are presumed valid unless shown to be erroneously in conflict with the underlying law."); *Shannon v. Pleasant Valley Cmty. Living Arrangements, Inc.*, 82 F. Supp.2d 426, 429-30 (W.D. Pa. 2000) (deferring to 29 C.F.R. §§ 785.21, 785.22, and 785.23 because the regulations are "at a minimum . . . a substantial resource of agency expertise" and are in accordance with the congressional intent of the FLSA); *Salazar v. Life Ambulance Servs., Inc.*, Civ. No. 99-361,  2001 WL 685755,*2 (W.D. Tex. 2001).

With respect to Section 785.18 specifically, the Administrator of the Wage and Hour Division published the subject regulation pursuant to his congressionally delegated authority to administer the FLSA, *see* 29 U.S.C.A. § 204 (2006), and to provide guidance in applying the "principles [of the FLSA] to the problems which arise frequently."  Scope of subpart, 29 C.F.R. § 785.10.  Through his experience and expertise, the Administrator concluded that rest periods of short duration "promote the efficiency of the employee and are customarily paid for as working time."  29 C.F.R. § 785.18.

The Third Circuit applies *Skidmore* deference to an interpretive rule where: (a) Congress granted the agency authority to interpret the relevant statute; (b) the agency's interpretation is consistent; and (c) the agency's interpretation furthers the purpose of the relevant statute.  *See Cleary ex rel. Cleary v. Waldman*, 167 F.3d 801,808 (3d Cir. 1999). Congress delegated appropriate authority to the Administrator pursuant to 29 U.S.C.A. § 204 (2006).  As noted in the December 2, 1996 opinion letter cited above, the DOL has consistently, over the course of many decades, taken the position that breaks of twenty minutes or less are compensable.  *See, e.g.,* Wage and Hour Division and Public Contracts Divisions Administrator, U.S. Department of Labor (Aug. 13, 1964); Wage and Hour Division and Public Contracts Divisions Administrator, U.S. Department of Labor (Dec. 19, 1967); Wage and Hour Division Administrator, Opinion Letter FLSA, U.S. Department of Labor, FLSA-587 (Oct. 3, 1975); Wage and Hour Division Administrator, Opinion Letter FLSA, U.S. Department of Labor, SCA-126 (Mar. 27, 1987); Wage and Hour Division Administrator, Opinion Letter FLSA, U.S. Department of Labor (Feb. 19, 1998) (each attached at JA0841-0848).[11]

This regulation also furthers the purpose of the FLSA, which is a remedial statute designed to abolish substandard labor conditions.  29 U.S.C. § 202(a).  It acknowledges that solely because of their length, breaks of 20 minutes or less help employees to be more productive during their active working time.  Experts today confirm what the DOL originally found in 1940:  employees need periodic rest breaks in order to do their job in

---

[11] The Secretary anticipates Defendants will point to the Administrator's June 16, 1994 Opinion Letter, 1994 WL 1004840, which references the "facts and circumstances" mentioned in *Greinetz,* 235 F.2d 621. However, that opinion letter once again concludes (like the numerous other letters cited above) that a short break (in that case, a 5-10 minute smoking break) is compensable.  Moreover, in the *Greinetz* case -- which is cited in 785.18 --  the court agreed with the Secretary's position that "coffee breaks or short rest periods are rapidly becoming an accepted part of employment generally," and that such breaks "are equally beneficial to the employer . . ."  *Id.* at 625.

an efficient and productive manner.  JA0729-0757.  Because all short breaks serve this

purpose, they provide a benefit to the employer and should be compensated.

Section 785.18 also facilitates enforcement of the statute by establishing a clear

and simple rule regarding compensable time.   Disregarding the regulation would, in this

case, mean that the compensability of each break is dependent upon its own facts and

circumstances.   Because Progressive required employees to log off and go into

uncompensated time whenever they stopped making calls, there are more than one

million uncompensated breaks of up to twenty minutes at issue in this case.  JA1001;

JA0839-0840.  A detailed inquiry into every such break would be burdensome and

impractical, as well as disruptive to the employer-employee relationship.   The Wage and

Hour Division recognized this in a 1996 opinion letter, stating:

> *The compensability of short breaks by workers has seldom, if ever, been
> questioned.*  Any modification of the Department's long held position to
> accommodate your request [regarding whether short smoking breaks were
> compensable] would require a series of tests to evaluate the relative
> benefit provided to employee and employer and the impact on employee
> efficiency of each and every small work break ever taken by any
> employee.

Opinion Letter, Fair Labor Standards Act, 1996 WL 1005233 (Dec. 2, 1996) (emphasis

added).

Consistent with this reasoning, courts have recognized that the class action is an

appropriate method of resolving disputes about break time compensability, because the

regulation's per se rule makes an individualized inquiry unnecessary.  For example, in

*Petrone v. Werner Enterprises*, Civ. No. 12-307, 2013 WL 3479280 (D. Neb. July 10,

2013), the court relied on the Section 785.18 rest period regulation in granting a motion

to certify a class for a state law claim that unpaid breaks logged as "off duty" were

compensable.  Although the claim addressed in that opinion was brought pursuant to

Nebraska's Wage and Hour Act, the district court, citing the DOL's rest period

regulation, found that this statute should be interpreted in the same manner as the FLSA.

*Id.* at *4.   Recognizing that courts interpreting "work time" have "looked past the literal

association with periods of exertion to find breaks and waiting periods compensable

under the FLSA," the court cited Section 785.18 and relied on the fact that the DOL "has

determined that breaks of the kind at issue . . . are compensable if they meet certain

criteria."  *Id.* at *3-*5.  Notably, the court rejected Defendants' argument that it must

conduct "individualized inquiries regarding how each plaintiff spent 'off duty' time and

whether it was for the benefit of [the employer]."  *Id.*   In the related FLSA action, the

same court conditionally certified an FLSA collective action for similar claims by citing

Section 785.18 and stating that under the FLSA, "[s]hort rest periods of less than 20

minutes 'must be counted as hours worked.'"  *Petrone v. Werner Enterprises, Inc.*, Civ.

No. 11-401, 2012 WL 4848900 (D. Neb. Oct. 11, 2012).

     In *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431 (S.D. Ind. 2012), the court addressed,

at the conditional class certification stage, a fact pattern very close to the one at issue

here.  Employees working at an incoming call center were instructed to log off of their

system and go into unpaid time for all breaks once they had used their allotted break time

for the day -- even if those additional breaks were less than twenty minutes in length.  *Id.*

at 437.   In granting conditional certification, the court cited Section 785.18 as well as the

DOL's 1996 opinion letter and stated that "[e]ven where a company has provided for

scheduled breaks, and the employee takes an unscheduled break in addition to those

scheduled breaks, the employer must compensate for the additional, unscheduled break if it is less than twenty minutes." *Id.* at 442.

In granting the motion for conditional class certification, the *Hawkins* court acknowledged but rejected the defendant's argument that certification was inappropriate because the circumstances surrounding each individual break might vary. *Id.* The court further noted that "the login/logout data will be an accurate indication of how many instances per day a [call center representative] was logged off his or her phone for less than twenty minutes and, thus, not compensated." *Id.* at 443. In other words, Section 785.18, when applied to clear employer time records, precluded the need for an individualized inquiry. Here, as in *Hawkins*, the court can simply apply Section 785.18 and rely on the log-on/log-off data to determine the amount of unpaid compensable time.

4.  Defendants must manage their workforce, and not withhold compensation, if they wish to prevent excessive short breaks.

Defendants may claim that applying the regulation on its face by requiring compensation for all short workday breaks would be economically infeasible and allow employees to abuse the rule by taking an unlimited number of such breaks. There is an obvious answer to that objection: the employer must simply manage its workforce. As the *Hawkins* court explained when applying Section 785.18,

> While this rule may seem to lead to a slippery slope, where the employee is taking multiple, unscheduled nineteen minute breaks over and above his or her scheduled breaks for example, the employer's recourse is to discipline or terminate the employee – not to withhold compensation.

287 F.R.D. at 442. *See also Waldbaum,* 1992 WL 314898 at *2 ("this Court is of the view that the types of rest breaks [such as telephone calls and cigarette breaks] are commonplace and sensible in any working environment. Even to the extent that an individual employee arguably may have been abusive of break time, efficiency and

15

common sense would dictate that management's attention to the situation at its incipience would provide the proper remedy"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp.2d 941, 953 (W.D. Wisc. 2008) (additional break time beyond employer-allowed, 10-minute rest periods is compensable under the FLSA; while the employer can discipline employees who exceed 10-minute breaks it cannot offset that time against other uncompensated work time).[12]

> **b.     The facts and circumstances surrounding the breaks at issue confirm their compensability.**

Because the regulation in Section 785.18 warrants substantial deference and should be applied as a bright-line rule, there is no need for the Court to engage in the tedious process of inquiring into the facts and circumstances behind each break.  Since the formal implementation of Section 785.18 in 1961, courts have (as discussed above) consistently applied it to short breaks that fall below the 20 minute threshold.  Recently, courts that have looked further into the details regarding the facts and circumstances of breaks have generally done so only when the breaks exceeded or fell near the 20-minute line, or when their length was in dispute.  *See, e.g.*, *Garcia v. Tyson Foods*, 766 F. Supp. 2d 1167 (D. Kan. 2011); *Brock v. Claridge Hotel and Casino*, 664 F.Supp. 899, 906 (D.N.J. 1987) (breaks taken by casino employees lasting between 20 and 30 minutes were compensable).  But even if the Court looks beyond this oft-cited regulation, the facts and circumstances surrounding the breaks taken by Progressive's telemarketers demonstrate they are compensable.

---

[12] *But see* Wage and Hour Field Operations Handbook § 31a01(c), http://www.dol.gov/whd/FOH/index.htm,  stating that in certain limited situations employers can treat unauthorized extensions of authorized breaks as non-compensable .  This FOH enforcement direction and guidance section does not apply to the instant case, as Progressive did not maintain work rules unambiguously restricting employee breaks and punishing excessive breaks.  To the contrary, Progressive's written policy expressly permitted breaks.

1.    The employer bears the burden of establishing that the breaks are not compensable.

If facts and circumstances are considered, Defendants bear the burden of establishing that the time periods at issue are non-compensable.  Because all of the breaks and other log-off periods at issue occurred during the workday, they must be presumed to be compensable working time under the "continuous workday" concept.  In *Alvarez v. IBP, Inc.*, 546 U.S. 21 (2005), the U.S. Supreme Court, consistent with DOL regulations, agreed that all activities between the employee's first principal and last principal activity are part of the continuous workday.  *Id.* at 29 (citing 29 C.F.R. § 790.6(b)).  The regulation affirmed in *Alvarez* clarifies that the workday "includes all time within that period whether or not the employee engages in work throughout all of that period." 29 C.F.R. § 790.6(b).  Other regulations similarly echo the concept that working time during the continuous workday is not limited to actual active, productive work.  *See, e.g.,* 29 C.F.R. § 778.223 ("working time is not limited to the hours spent in active productive labor, but includes time given by the employee to the employer even though part of the time may be spent in idleness.")   Here, the breaks at issue undisputedly occurred after the employee arrived at the call center and began his or her first compensable activity (logging into the system and making calls), and before the end of the last principal activity (ending the final call of the day and logging off).  JA0199:8-0200:10**;** JSSF 32-43; JA0896-0901.

Given the Supreme Court's recognition of the continuous workday, the question of whether short breaks are compensable is akin to an "exemption" issue, and the burden is on the employer to establish their non-compensability.  Several courts have confirmed that, in analogous situations such as meal breaks and sleep time, the burden falls on the

employer to establish that the time need not be paid.  *See Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 265 (5th Cir. 1998) (employer bears burden of showing that meal time qualifies as exception from compensation); *Roy v. County of Lexington*, 141 F.3d 533, 544 (4th Cir. 1998) (employer bears burden of demonstrating its entitlement to the mealtime and sleep time exemptions, which should be narrowly construed); *Abendschein v. Montgomery County*, 984 F. Supp. 356, 359 (D. Md. 1997) ("[n]ot paying employees for meal time is an exception to the FLSA compensation requirements that must be narrowly construed, and the burden is on the Defendant [employer] to show that it is entitled to the exception").  *But see Hertz v. Woodbury County*, 566 F.3d 775, 783-784 (8th Cir. 2009).

> 2.  The duration and pattern of the breaks confirm they are typical compensable work breaks.

A review of the actual breaks at issue shows that Progressive's telemarketers took workday breaks of reasonable number and duration, and then immediately returned to work at the conclusion of those short breaks.  Even under a "facts and circumstances" test, one of the key "facts or circumstances" is the duration of the break.  As noted above, courts that have delved into facts and circumstances tend to do so only for longer breaks that are not obviously "short" rest periods.  In *Mitchell v. Greinetz*, 235 F.2d 621 (10th Cir. 1956), the court repeatedly refers to the "shortness" of the break time at issue in analyzing whether the break time is compensable.  The *Greinetz* court -- even though it referenced the need to consider "facts and circumstances" -- ultimately gave "great weight" to and agreed with the DOL's interpretive press release (that was later incorporated into Section 785.18) finding short breaks to be compensable.  *Id.* at 624-625.  The short duration of the breaks at issue was a key "fact or circumstance" that led to

the court's conclusion that the breaks were compensable.  Of the breaks at issue here, all were twenty minutes or less, and approximately 74% of those were less than 10 minutes. JA0840.

Further, a review by Wage Hour of all breaks confirmed that employees did not take an excessive number of breaks.  Progressive's telemarketers took, on average, just over five breaks per day for a combined break time of one hour.  JA0839.  This includes all breaks -- even, for example, any half-hour or 45-minute lunch break that employees may have taken and that the Secretary agrees need not have been compensated.  If only those breaks of 20 minutes or less that should have been paid are counted, employees averaged just over one-half hour per day of breaks.  JA0839; JA0298:19-0299:11; JA0825.  Two fifteen-minute breaks during the course of a workday is not unusual, and is, in fact, shorter than expected, given Progressive's broad definition of what constitutes a "break."[13]   Indeed, over 32% of all breaks taken were five minutes or less.  JA0839.[14] Progressive's telemarketers, in the aggregate, took breaks that by their number and duration were reasonable and consistent with the type of short rest periods that all employees need, so a facts and circumstances analysis supports their compensability.

3.    The employees, the Secretary's expert, and even certain Progressive managers confirm that these breaks promoted employee efficiency, reduced employee turnover, and predominantly benefited Progressive.

As noted above, there are few if any recent decisions (i.e., since the regulation has become well-established) where courts look into the facts and circumstances surrounding

---

[13] Progressive's employees' average workday (including all workday breaks) was about 6.3 hrs. JA0839. While this is shorter than the typical eight hour workday, that is unsurprising given Progressive's "no overtime" policy and limited call center hours.  JA0498:20-0499:3.  Taking about half an hour's worth of bathroom breaks and other quick breathers during a 6.3 hour workday is reasonable given that Progressive counted virtually every minute not spent on the phones as a break.

[14] In addition, Progressive's own expert found that the average length of the breaks at issue in this case was around 7 minutes.  JA0825.

short breaks.  Even in older decisions where courts look at facts and circumstances, short breaks are virtually always found to be compensable because they predominantly benefit the employer, and this conclusion is reached without requiring a quantitative demonstration that the breaks directly increase employee production.  In *Aeromotive Metal Products, Inc. v. Wirtz*, 312 F.2d 728, 728-729 (9th Cir. 1963), the court agreed with the lower court's finding that a fifteen minute mid-morning rest period was compensable because "[t]he employees felt better after the rest period, and the granting of this rest period by defendant improved defendant's employer-employee relationships," even though there was no evidence that actual production increased as a result of the rest period.

Here, the Secretary has offered declarations from affected employees at all relevant call center location over the entire relevant time period demonstrating that their rest breaks provided the same sorts of benefits relied upon in *Aeromotive Metal Products*. *See generally* JA1004-JA1253.  The expert report offered by the Secretary in this case confirms these benefits. JA0729-0757.  As Progressive has conceded, it is important for Progressive's telemarketers to maintain a strong telephone voice and an energetic attitude in order to successfully engage with the prospective customer on the other end of the phone.  JA0146:24-0147:21; JA0316:21-0318:3; JA0548:15-19; JA0549:17-0551:3**;** JA0579:12-18.  Dr. Trougakos concluded that because telemarketing is an industry that requires the employee, who is constantly interacting with prospective customers, to constantly regulate his or her emotions, the short workday breaks employees take provide very clear benefits to the company.  JA0729-0757.[15]  Even some Progressive managers

---

[15] Even if the Court accepts the statistical conclusions in Defendants' expert report, those conclusions (as argued in more detail in the Secretary's *Daubert* motion) in no way preclude the Court from finding that

concede, and Progressive's manager's manual suggests, that some employees would benefit from taking a break after a particularly frustrating call.  JA0320:12-24; JA0432:2-18; JA0921.  And, of course, as Progressive did and must concede, everyone needs to take bathroom breaks and such breaks by definition benefit Progressive. JA0238:18-0239:2.

It is also undisputed that Progressive's business has extremely high employee turnover. JA0593:24-0596:4; JA0268:9-19; JA1010; JA1030; JA1033; JA1163. Dr. Trougakos' report further confirms that in a high-turnover industry like telemarketing, where burnout is common, breaks are even more important because they mitigate burnout and save the employer the time and expense of hiring and training new employees. JA0734-0735.

> 4.     The employees used their breaks for purposes that are typically deemed compensable and beneficial to the employer.

The evidence in this case confirms that because of their short duration, employees generally used their short workday breaks for brief respites from work and did not typically leave the premises or do anything beyond taking a bathroom break, coffee break, smoking break, or other sort of break that is consistently deemed compensable under the law.  JA1006; JA1020; JA1115; JA1174; JA0237:6-21; JA0590:14-22.  *See, e.g.*, *Claridge Hotel*, 664 F. Supp. at 906 (employees spent compensable breaks at employee cafeteria, playing pinball, or just relaxing); *Greinetz*, 235 F. 2d at 623 (employees able to spend fifteen minute compensable break period relaxing with coffee).

---

the breaks at issue here benefited Progressive.  Defendants' expert found no statistically significant correlation between breaks and sales per hour (the performance metric upon which Progressive relied). And as outlined in the reports of Dr. Trougakos and Dr. Crawford, JA0729-0757; JA0788-0824, there are numerous benefits these breaks provided to Progressive other than the sales increase that Dr. Guryan attempted to measure.  Of course, Dr. Crawford's rebuttal report does show a positive correlation between sales and breaks – yet another fact that supports their compensability.  JA0788-0824.

When employees did leave the premises to use their breaks for other purposes (such as running errands or attending to family members), those breaks likely exceeded 20 minutes in length and are therefore not at issue in this case.  JA0282:11-19.

Defendants will likely argue that the flexible nature of Progressive's break policy means breaks are not compensable because Progressive's employees were free to take longer breaks for any purpose.  This argument fails for several reasons.  First, even if employees were permitted to leave the premises and take as long a break as they wished, breaks of more than 20 minutes are not at issue in this litigation, since the Secretary is not seeking minimum wage compensation for those breaks.  The Court should look at only breaks of 20 minutes or less when answering the compensability question.  The Secretary is aware of no authority holding that a compensable break under the FLSA can be deemed non-compensable simply because the employee could have taken a longer, non-compensable break.  If the Court disregards the regulation and applies a facts and circumstances test, it should look at the facts and circumstances surrounding the breaks that were actually taken -- not breaks that, in theory, could have been taken.  *See Greinetz*, 235 F.2d at 623 (noting that while employees are "in theory" able to leave the premises, "in practice" they do not, primarily because of the shortness of the break time).

In any case, as outlined in the fact summary above, Progressive did not have a totally "flexible" break policy.  Telemarketers were incentivized to quickly return to work because they were told their break time was uncompensated, and there were numerous other Progressive policies -- such as the minimum hours commitment requirement -- that restricted employee schedules by requiring them to work a certain amount of "on the clock" hours at the risk of losing their jobs.

### c.    Section 785.16 does not apply to this case.

This case involves short workday breaks addressed by Section 785.18, rather than longer periods that might be considered "off duty" time pursuant to 29 C.F.R. §785.16. Any argument by Defendants that Section 785.16 is applicable must fail because the breaks at issue do not satisfy the elements of that regulation.

29 C.F.R. § 785.16(a) states that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked."  At the outset, this regulation is inapplicable because all breaks at issue in this case are twenty minutes or less and therefore cannot be -- under the numerous cases cited above -- considered "long enough" to meet that requirement.  The Secretary has not located a single case applying Section 785.16 to a break period of twenty minutes or less.  As the *Claridge Hotel* court noted in rejecting the application of Section 785.16, "cases in which time is held not compensable, because the employees are free to use the time for personal activities, deal with much longer periods of idle time, lasting for hours rather than the thirty minutes involved here." 664 F. Supp. at 907 (citation omitted).  *See also Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1413 (5th Cir. 1990) ("By definition, waiting periods of less than fifteen minutes must be of such short duration that plaintiffs cannot effectively use the time for their own purposes"); *Marti*, 937 F. Supp. at 851 (contrasting Section 785.18, which provides that breaks of 5 to 20 minutes are compensable, with Section 785.16, which applies to "breaks of longer duration"); *Jackson v. Airways Parking Co.*, 297 F. Supp. 1366, 1380-1381 (N.D. Ga. 1969) (distinguishing short rest breaks, which are compensable under 785.18, and "coffee and snack breaks" which are compensable under 785.19, from longer breaks

which may be compensable depending on the circumstances).  As noted above, employee declarations confirm that they generally would not leave the premises for personal errands during breaks of twenty minutes or less.

Section 785.16 also requires that the employee "will not have to commence work until a definitely specified hour has arrived."  This typically refers to a situation where an employee's shift ends and does not recommence until a later fixed time.  The example of non-compensable time provided in that regulation involves a truck driver who arrives at his destination at 12 noon and is relieved from duty until 6 pm for his return trip.  29 C.F.R. § 785.16(b).  Here, Progressive's employees are never told that they need not recommence work until a certain time.  Nor are they waiting for their employer to provide additional work, another situation that is commonly analyzed under Section 785.16.  *See, e.g.*, *Mireles*, 899 F.2d at 1411-1412.   Rather, like all employees who take short workday breaks, Progressive's employees are expected to return to work after the break is finished, and the records confirm that is exactly what they do.  JSSF 20-22, 30, 32-43; JA0896-0901.  Accepting Progressive's argument that Section 785.16 applies to all breaks at issue would result in an employee who takes a two minute bathroom break and returns immediately to work being "off duty" because, in theory, the employee could have taken a longer break.  There is no case of which counsel for the Secretary is aware that supports such a result.

## II.   Edward Satell is an "Employer" Under the FLSA and Liable for All Violations

The Third Circuit has recognized that the FLSA's definition of "employer" is "the broadest definition that has ever been included in any one Act." *In re Enter. Rent-A-Car Wage & Hour Practices Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012) (quoting *United*

*States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)).  Courts utilize the "economic

reality" test for determining whether individuals are employers under the FLSA.  *Enter.*

*Rent-A-Car*, 683 F.3d at 468-469.  "Economic reality" depends on the "totality of the

circumstances" rather than on rigid "technical concepts of the employment relationship."

*Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 667 F.3d 408, 418 (3d Cir. 2012);

*Enter. Rent-A-Car*, 683 F.3d at 467.  The Third Circuit acknowledged the flexibility and

breadth of the FLSA's "employer" definition by adopting a four-part test in the joint

employer context.[16]  The court stressed that the stated factors are not dispositive and that

analysis should not be confined to these four criteria.  *Id.* at 469.

      Courts in this Circuit also recognize that "overwhelming case law" permits claims

for individual employer liability under the FLSA to proceed against a corporate officer

with operational control over employees.  *Burroughs v. MGC Servs., Inc.*, No. 08-1671,

2009 WL 959961, at *4 (W.D. Pa. Apr. 7, 2009) (citing various cases);  *Dole v. Solid*

*Waste Servs., Inc.*, 733 F. Supp. 895, 923 (E.D. Pa. July 14, 1989),  *aff'd*, 897 F.2d 521

(3d Cir. 1990) (subsequent history omitted).  One court has specifically held that "it

cannot be doubted" that an individual is an employer under the FLSA where he served as

owner and President of a company and exerted control over his employees.  *Castellino v.*

*M.I. Friday, Inc.*, No. 11-261, 2012 WL 2513500, at *3 (W.D. Pa. June 29, 2012).

Moreover, a corporate officer who was personally responsible for a violative practice is

---

[16] In considering whether an individual is a "joint employer" under the FLSA and implementing
regulations, the Third Circuit held that courts should consider whether the employer has:

      (1) authority to hire and fire employees; (2) authority to promulgate work rules and
      assignments, and set conditions of employment, including compensation, benefits, and
      hours; (3) day-to-day supervision, including employee discipline; and (4) control of
      employee records, including payroll, insurance, taxes, and the like.

*Enter. Rent-A-Car*, 683 F.3d at 469; *see also Solis v. A-1 Mortg. Corp.*, 934 F. Supp. 2d 778, 790-95 (W.D.
Pa 2013) (applying the *Enterprise* test to find that an individual is a joint employer).

also likely to be liable as an FLSA "employer."  *Jackson v. Art of Life, Inc.*, 836 F. Supp. 2d. 226, 235 (E.D. Pa. 2011).

As set forth in the fact summary above, Edward Satell is the CEO and primary (98%) owner of Progressive, is the "final authority" on compensation policies for telemarketers, and has the final say in terms of what time will and will not be compensated.  He was responsible for the violative break policy at issue here. JA 0075 at No. 3.  Mr. Satell has the final say over all other policy decisions, and considers himself responsible for "overview of the company" and for "all people and all the activities within the company." JA0481:11-13.  As there is no dispute that Mr. Satell exercises significant control over Progressive, is the final authority on compensation policy, and was the admitted decisionmaker on the very policy at issue in this case, the Court should rule as a matter of law that Mr. Satell is individually liable, along with Progressive, for Progressive's FLSA violations.

**III.** **Defendants are Liable for Liquidated Damages**

Under Section 16(c), the Secretary may recover unpaid wages and an additional equal amount in liquidated damages if an employer violates Section 6 of the Act.  *See* 29 U.S.C. 216(c).  Liquidated damages are considered compensatory, not punitive.  *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907 (3d Cir. 1991).  They compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due.  *See id*.  "Double damages are the norm, single damages the exception[.]"  *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir 1986).

In challenging the appropriateness of liquidated damages, the employer bears the "plain and substantial" burden of establishing both good faith and reasonable grounds for

26

the violation.  *See Cooper Elec. Supply Co.,* 940 F.2d at 907.  The employer must prove

"an honest intention to ascertain and follow the dictates of the Act."  *Marshall v.*

*Brunner*, 668 F.2d 748, 753 (3d Cir. 1982).  Merely proving that the employer did not act

intentionally, had good intentions, or was ignorant of the law is not sufficient to avoid

liability for liquidated damages once a violation of the law is found.  *Reich v. Brenaman*

*Electrical* Service, Civ. No. 95-3737, 1997 WL 164235, *8 (E.D. Pa. Mar. 28, 1997)

(citing *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984)).  The

"reasonableness" requirement requires that the employer had objectively reasonable

grounds for believing it was in compliance.  *Brunner,* 668 F.2d at 753.  If the employer

fails to come forward with plain and substantial evidence to satisfy both the good faith

and reasonableness requirements, the court is without discretion to deny liquidated

damages.  *Id.; see also Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 187 (3d Cir.

1988).

There is no evidence that Defendants made any good-faith effort to comply with

the Act.  Prior to 2009, Defendants paid their employees for two fifteen-minute breaks per

day.  JA0860-0862.  Defendants did not consult with any DOL personnel when they

implemented the change in policy.  JA0536:13-0537:6.[17]  After the DOL commenced its

investigation and advised Defendants that they were violating Section 6 of the FLSA,

defendants continued their policy -- and they have continued it to the present.  JSSF 16,

28, 30.  Further, as discussed above, Defendants' policy of refusing to pay for all breaks,

---

[17] The Court should disregard any argument by Defendants that they consulted with an attorney before
implementing the policy. Defendants have refused to produce documents or allow testimony about the
substance of those communications.  JA0533:9-0535:16; JA0241:19-0244:6.  They cannot rely on them as
a defense to either liquidated damages or willfulness.   Defendants cannot rely at trial on information they
have refused to provide during discovery based on a privilege claim.  *See, e.g.,  SmithKline Beecham Corp.*
*v. Apotex Corp.*, Civ. No. 99-4304, 2005 WL 2436662, *4-*5 (E.D. Pa. Sept. 28, 2005).

no matter how short, flies directly in the face of a clear regulation, decades of court decisions, and its prior practice. It is objectively unreasonable. This is particularly true for the very brief rest breaks at issue here, as no court has ever found a short bathroom or water break to be non-compensable.

**IV.   Defendants' Violations Were Willful**

A violation of the FLSA is considered willful if the employer knew that its conduct was prohibited by the Act or showed reckless disregard for the legality of the conduct. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). An employer's awareness of possible FLSA violations, combined with an "indifference toward the requirements imposed" by the statute, supports a finding of willfulness. *Garcia v. Tenafly Gourmet Farms, Inc*., 2012 WL 715316, *2 (D.N.J. 2012) (internal citations omitted). The FLSA's knowledge requirement can be met by showing that the employer knew the conduct might be illegal but failed to make a good faith effort to investigate its legality. *See Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1296 (3d Cir. 1991).

Progressive continued its policy even after being advised by Wage Hour as early as 2011 that its policy violated the FLSA, and still has not come into compliance today. JSSF 16, 28, 30. This advice made Defendants' violations knowing, and therefore willful. *See* 29 C.F.R. § 578.3(c)(2). Even if Defendants could claim they had reasonable basis for disagreeing with the DOL's position with respect to some of the longer breaks at issue here (for example, breaks that were at or just below twenty minutes in length), its policy of not compensating for hundreds of thousands of very short breaks -- for example, there were over 200,000 breaks of less than three minutes that were uncompensated (JA0840) **--** also amounts to a blatant indifference to the requirements of

the FLSA and its regulations.

Further, Progressive was well aware of the requirements of Section 785.18 even prior to the DOL's investigation, JA0530:23-0532:7, and while it claims it consulted with an attorney, it is unwilling to provide any evidence concerning the substance of those conversations.  JA0533:9-0535:16; JA0241:19-0244:6.  That attorney could have advised Progressive that the policy was unlawful or likely to be held unlawful, but we cannot know because Progressive refuses to disclose the nature of the advice.   Finally, the fact that Progressive implemented its policy company-wide in July 2009 -- the same month the federal minimum wage increased to $7.25/hour -- suggests its decision was simply an attempt to maintain its telemarketer wages notwithstanding that increase.

## V.      Defendants Violated the FLSA Recordkeeping Requirement

Section 11(c) of the Act, 29 U.S.C. § 211(c), requires employers to "maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked." *Tri-County Growers, Inc.*, 747 F.2d at 128 (*citing Wirtz v. Williams,* 369 F.2d 783, 785 (5th Cir. 1966)).  The burden is on the employer to keep accurate wage and time records.  *Dole v. Solid Waste Serv., Inc.*, 733 F. Supp. 895, 924 (E.D. Pa. 1989), *aff'd*, 897 F.2d 521 (3d Cir. 1990), *cert. denied*, 497 U.S. 1024 (1990).  Under the applicable regulations, pay records must include hours worked per day and week, as well as the daily starting and stopping time of individual employees.  29 C.F.R. §§ 516.2(7), 516.6(a)(1); *Tri-County Growers, Inc.*, 747 F.2d at 127.

Here, although Progressive provided time and payroll records for much of the time period at issue, there is no dispute that gaps exist in those records.  Progressive was unable to produce employee time records for several locations during several periods

during the relevant investigation period.  JSSF 44-49.  Defendants therefore violated Section 11(c) of the Act.

## **<u>CONCLUSION</u>**

For decades, employees and employers have always understood that brief workday breaks -- using the bathroom, grabbing a cup of coffee, or simply to taking a quick breather -- should be compensated.  The rest period regulation, opinion letters, and abundant case law confirm this.  Those rules make even more sense in a case like this, where minimum-wage telemarketers need periodic breaks from a job that requires them to continuously interact with customers in order to sell a product.  Because Defendants have failed to pay their employees the FLSA-required minimum wage as a result of this policy, the Court should find that Defendants have willfully violated Section 6 of the FLSA and order that all telemarketer "log-off" time of 20 minutes or less be treated as compensable time.  The Court should further find that liquidated damages are appropriate, that Edward Satell is an FLSA "employer," and that by failing to maintain complete time records, Progressive has violated the recordkeeping provisions of the FLSA.

Respectfully submitted,


M. Patricia Smith
Solicitor of Labor

Linda Thomasson
Acting Regional Solicitor

s/ Adam F. Welsh
Adam F. Welsh
A. Scott Hecker
Attorneys

U.S. DEPARTMENT OF LABOR
Office of the Solicitor
Suite 630E, The Curtis Center
170 S. Independence Mall West
Philadelphia, PA 19106
(215) 861-5159
(215) 861-5162 (fax)
welsh.adam@dol.gov
hecker.scott@dol.gov

Attorneys for Plaintiff