## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, <br><br>       Plaintiff, <br><br>v. <br><br>AMERICAN FUTURE SYSTEMS, INC. d/b/a PROGRESSIVE BUSINESS PUBLICATIONS, a corporation; and EDWARD SATELL, individually and as President of the above referenced corporation, <br><br>       Defendants. | ) ) ) ) ) ) **Civil Action No. 12-6171** ) ) ) ) ) ) ) ) ) ) |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

For the reasons set forth in the accompanying Memorandum of Law, Defendants Progressive Business Publications and Edward Satell respectfully move this Court for summary judgment and to dismiss Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor's Complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Dated: May 23, 2014

Respectfully submitted,

/s/ Sarah E. Bouchard
Sarah E. Bouchard
sbouchard@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
Lincoln O. Bisbee, admitted *pro hac vice*
lbisbee@morganlewis.com
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

<u>**CERTIFICATE OF SERVICE**</u>

I, Lincoln O. Bisbee, hereby certify that on May 23, 2014, I served the foregoing Motion

for Summary Judgment via the Court's CM/ECF System on:

> Adam F. Welsh
> A. Scott Hecker
> U.S. Department of Labor, Officer of the Solicitor
> Suite 630E, The Curtis Center
> 170 S. Independence Mall West
> Philadelphia, PA 19106
> welsh.adam@dol.gov

> /s/ Lincoln O. Bisbee_____
> Morgan, Lewis & Bockius LLP
> Lincoln O. Bisbee, admitted *pro hac vice*
> lbisbee@morganlewis.com
> Morgan, Lewis & Bockius LLP
> 1111 Pennsylvania Avenue, NW
> Washington, DC  20004
> (202) 739 -3000
> (202) 739-3001 FAX

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THOMAS E. PEREZ, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,** ) ) ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 12-6171** |
| ) | |
| **AMERICAN FUTURE SYSTEMS, INC. d/b/a PROGRESSIVE BUSINESS PUBLICATIONS, a corporation; and EDWARD SATELL, individually and as President of the above referenced corporation,** ) ) ) ) ) | |
| ) | |
| **Defendants.** ) ) ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Sarah E. Bouchard
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-5000
Facsimile: (215) 963-5001
sbouchard@morganlewis.com

Lincoln O. Bisbee, admitted *pro hac vice*
MORGAN, LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 739-3000
Facsimile: (202) 739-3001
lbisbee@morganlewis.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     Factual Background .................................................................................... 3

        A.      Progressive's Business and Operations ......................................... 3

        B.      The Evolution of Progressive's Flexible Break Policy.......................... 7

        C.      Representatives Take Frequent and Full Advantage of Progressive's
                Flexible Break Policy..................................................................... 10

        D.      Procedural History ........................................................................ 12

III.    LEGAL STANDARD................................................................................... 13

IV.     ARGUMENT ............................................................................................. 14

        A.      The FLSA Does Not Require Compensation for Breaks Taken by
                Progressive Representatives Because the Breaks Are Not "Work," and No
                Deference Is Due the Secretary's Contrary Position ............................ 14

        B.      Even if DOL Regulations Are Entitled to Deference, the Secretary Is
                Relying Upon the Wrong Regulation ................................................ 17

        C.      Even if the Rest Period Regulation Is Applicable to this Case, Breaks
                Taken by Progressive Representatives are Non-Compensable Because the
                Breaks Are to the Benefit of the Representatives, Not Progressive ................... 22

        D.      If Applied to Require Progressive to Compensate Its Employees for
                Breaks Under Twenty Minutes, the Statute Would Raise Serious
                Constitutional Concerns.......................................................................... 29

V.      CONCLUSION.......................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................14

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946)..................................................................................................14

*Bernal v. Trueblue, Inc.*,
    730 F. Supp. 2d 736 (W.D. Mich. 2010) ...............................................20, 21, 23, 28

*Brock v. Claridge Hotel & Casino*,
    664 F. Supp. 899 (D.N.J. 1986) ...............................................................................23

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..................................................................................................13

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)..................................................................................................29

*Clark v. Atlanta Newspapers, Inc.*,
    366 F. Supp. 886 (N.D. Ga. 1973) ...........................................................................21

*Dinges v. Sacred Heart St. Mary's Hosp., Inc.*,
    164 F.3d 1056 (7th Cir. 1999) ..................................................................................29

*Donovan v. Litvin*,
    No. 84-1453, 1985 U.S. Dist. LEXIS 17047 (E.D. Pa. Aug. 8, 1985) ..............23, 25

*Douglass v. Hurwitz Co.*,
    145 F. Supp. 29 (E.D. Pa. 1956) ........................................................................20, 21

*Garcia v. Tyson Fresh Meats, Inc.*,
    766 F. Supp. 2d 1167 (D. Kan. 2011)................................................................23, 24, 25

*Hagans v. Comm'r of Soc. Sec.*,
    694 F.3d 287 (3d Cir. 2012)......................................................................................16

*Halferty v. Pulse Drug Co.*,
    864 F.2d 1185 (5th Cir. 1989) ..................................................................................19

*Henson v. Pulaski Cnty. Sheriff Dep't*,
    6 F.3d 531 (8th Cir. 1993) ........................................................................................17

*Hindes v. FDIC*,
    137 F.3d 148 (3d Cir. 1998).....................................................................................29

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Hinson v. Tecumseh Prods. Co.*,
 No. 99-6091, 2000 WL 1597947 (6th Cir. Oct. 17, 2000) ....................................................14

*Madison v. Res. for Human Dev., Inc.*,
 233 F.3d 175 (3d Cir. 2000)............................................................................................16

*Marten v. Godwin*,
 499 F.3d 290 (3d Cir. 2007)............................................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)........................................................................................................13

*McGrath v. City of Phila.*,
 864 F. Supp. 466 (E.D. Pa. 1994) .................................................................................14

*Mercy Catholic Med. Ctr. v. Thompson*,
 380 F.3d 142 (3d Cir. 2004)............................................................................................16

*Mireles v. Frio Foods, Inc.*,
 899 F.2d 1407 (5th Cir. 1990) .......................................................................................19

*Mitchell v. Greinetz*,
 235 F.2d 621 (10th Cir. 1956) ...........................................................................22, 23, 24

*Mitchell v. Turner*,
 286 F.2d 104 (5th Cir. 1960) ....................................................................................20, 24

*Reich v. Gateway Press, Inc.*,
 13 F.3d 685 (3d Cir. 1994).............................................................................................16

*Rich v. Delta Airlines, Inc.*,
 921 F. Supp. 767 (N.D. Ga. 1996) ................................................................................21

*Salazar v. Butterball, LLC*,
 644 F.3d 1130 (10th Cir. 2011) .....................................................................................14

*Skidmore v. Swift & Co.*,
 323 U.S. 134 (1944)........................................................................................................16

*St. Joseph Abbey v. Castille*,
 712 F.3d 215 (5th Cir. 2013) ....................................................................................29, 30

*United States v. Navarro*,
 145 F.3d 580 (3d Cir. 1998)............................................................................................29

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Zhong v. Zijun Mo*,
No. 10-0806, 2012 WL 2923292 (E.D.N.Y. July 18, 2012)....................................21

*Zimmerman v. Norfolk S. Corp.*,
706 F.3d 170 (3d Cir. 2013)..............................................................................13

STATUTES

Fair Labor Standards Act, 29 U.S.C. 201 et seq. ("FLSA") .................................. passim

OTHER AUTHORITIES

29 C.F.R. § 785.2 .............................................................................................15

29 C.F.R. § 785.16 ................................................................................18, 19, 21

29 C.F.R. § 785.18 ..................................................................................... passim

DOL Opinion Letter FLSA-1413 dated Aug. 15, 1973 .......................................14

DOL Opinion Letter dated May 7, 1981........................................................21

DOL Opinion Letter dated Mar. 25, 1964 .....................................................22

DOL Opinion Letter, FLSA-1358 dated Jan. 25, 1995 ...................................23

DOL Opinion Letter dated Oct. 13, 1964 ......................................................23

DOL Opinion Letter dated Aug. 13, 1964 ................................................23, 24

Fed. R. Civ. P. 56(c) .......................................................................................13

Jean Flatley McGuire, PhD, Phyllis Brashler & Kaitlyn Kenney, *Promoting Children's
Well-Being: The Role of Workplace Flexibility* ..............................................26

Kristen M. Shockley & Tammy D. Allen, *When Flexibility helps: Another look at the
availability of flexible work arrangements and work-family conflict* ...............26, 27

I.      **INTRODUCTION**

This case presents important issues relating to the workplace and the liberty an employer should have to manage its workforce within the confines of the law.  Specifically, it presents the question of whether an employer who provides its employees with complete freedom of when to work must compensate them for times when they choose not to work and are completely relieved of duty.  The fundamental facts and the legal issue to be decided by the Court are not in dispute.

Both parties recognize that flexible work arrangements are important to our economy and an evolving workforce.  The Department of Labor ("DOL") has published numerous articles on the subject, and for good reason.  Flexible work policies have the effect of getting more people into the workforce.

The parties also agree on the terms of the flexible work policy that Progressive created in 2009 and continues to this day.  That policy allows sales representatives ("representatives") to take personal breaks of any length, at any time, for any reason, and as often as they want.  As a result, the breaks taken by representatives differ significantly from the "rest periods" at issue in the regulation relied on by the DOL in this case.  Unlike the traditional conception of a "break" or "rest period"—where an employee is given a fixed amount of time-off and told to return to work at a set time—a Progressive representative is completely relieved of duty when he or she takes a break.  He or she may choose to return to work in five minutes, in five hours, or not at all. The decision of how long to be off-duty, and how to use that off-duty time, is entirely in the representative's hands.  The policy allows employees to go to school, have second jobs, and care for sick children and parents.  None of this is disputed.

What is in dispute is whether Progressive must compensate its employees when they are not working, and are engaged in purely personal pursuits pursuant to Progressive's unique business model and break policy.  The Fair Labor Standards Act, 29 U.S.C. § 201 et seq.,

1

("FLSA"), the only statute at issue here, addresses minimum standards for time worked, not time spent not working.  It does not require employers to provide any break to employees, much less a paid one.  The Secretary of Labor, however, insists that all non-work time of 20 minutes or less must be paid regardless of the factual circumstances.  The Secretary's position appears to be grounded in outdated, historical notions that workers typically work an eight-hour day, with a lunch and two breaks – one in the morning and one in the afternoon.  But Progressive's workers do not work a 40 hour week.  The hours they work are entirely up to them.  In 2014, for example, Progressive's representatives have worked an average of 19 hours per week.[1]

If Progressive were required to pay for all non-work time under its policy, it would lead to absurd results.  For example, suppose that an employee works for five minutes, then goes on a 19 minute break, then repeats that behavior throughout the day.  The Secretary insists that all of those 19 minute breaks should be paid, even though the employee did not work 80% of the shift. Such a position is rigid, inflexible, and at odds with the core of the statute as well as relevant case law and DOL regulations interpreting the same.  Moreover, the Secretary overlooks the individuals on whose behalf he purports to seek relief.  If the Secretary prevails in this case, Progressive will have no choice but to eliminate its flexible break policy, negatively impacting the employees who both value the policy and rely upon it in their daily lives.

Given the specific and unique characteristics of Progressive's break policy, the Secretary's legal theory is wrong, and this case should be dismissed for at least four reasons. First, the Secretary's position is inconsistent with the text and judicial interpretation of the FLSA, both of which make clear that time spent completely relieved of duty does not constitute

---

[1] Throughout the course of this litigation, representatives worked an average of 20 to 25 hours per week.  (*See* Transcript of the Deposition of C. Drummond ("Drummond Dep.") at 257:24-258:18, JA at 2094-95).  (Joint Appendix citations beginning with JA 2000 are contained in the supplemental Joint Appendix filed with this Motion).

"work" and is therefore non-compensable.  Second, the Secretary relies on the wrong regulation.

Under the DOL's "off-duty" regulation, representatives' breaks are non-compensable because

representatives are completely relieved of duty for as long as they choose.  Third, even if the

"rest period" regulation relied on by the Secretary did apply here, which it does not, the

Secretary incorrectly interprets that regulation.  Under that regulation, breaks of 20 minutes or

less are compensable only when they are predominantly to the employer's, not the employee's,

benefit.  As Progressive's break policy predominantly benefits its representatives, the

representatives' breaks are not compensable.  Finally, the Secretary's construction of the FLSA

would raise serious constitutional due process concerns.  These issues should and can be avoided

by allowing Progressive's policy to remain intact.

## II.     FACTUAL BACKGROUND

### A.     Progressive's Business and Operations

Progressive is a privately owned publishing company that annually produces and

distributes over 30 high-quality business publications covering a wide variety of professions.[2]

(Drummond Dep. at 29:15-23, at JA 145).  Progressive's publications aim to help business

professionals become more knowledgeable about their respective fields. (*Id.*).  Progressive

markets and sells its publications through its representatives who work in one of Progressive's

branch offices.  (Joint Statement of Stipulated Facts ("Stipulated Facts") at No. 2).  To sell

Progressive's publications, representatives make outbound phone calls to business professionals.

Representatives do not wait for, nor receive, any incoming phone calls.  (*Id.* at No. 12).

Progressive currently operates ten branch offices across Pennsylvania, New Jersey, and Ohio.

(*Id.* at No. 13).  Each of Progressive's branch offices is run by a branch manager who supervises

---

[2] Edward Satell is President, CEO, and 98% owner of Progressive.  (Stipulated Facts at No. 4).

the representatives employed in that branch.  (Defendants' Supplemental Interrogatory Responses, at JA 58-59; Drummond Dep. at 39:21-40:21, at JA 149-150).

Representatives make their outbound sales calls through a computer-based phone system. When representatives arrive at work, they log-on to the computer system by entering their user names and passwords.  (Stipulated Facts at No. 21).  This puts them "on-the-clock" and initiates the log-on time.  Representatives remain logged-on until they choose to log-off by selecting "end-of-day" on their computer.  (Drummond Dep. at 164:20-165:16, JA at 197-198). Representatives may log-off of the computer system at any time, for any reason and for as long as they want.  (Defendants' Supplemental Interrogatory Responses, JA at 47).  Representatives are then free to return to work, and log-on to the computer system, at any time while their branch office is open.  (*Id.*).  The log-on/log-off process is controlled entirely by the representatives.

Beyond making outbound sales calls, representatives perform a number of non-sales functions while they are logged-on.  For example, representatives engage in various training activities, including reviewing tapes of their calls, and attend a range of meetings while logged-on.  (Transcript of the Deposition of R. Pirock ("Pirock Dep.") at 45:17-24, 49:7-18, 69:21-22, JA at 436, 440, 451; Transcript of the Deposition of B. Stotler ("Stotler Dep.") at 32:8-14, 34:22-35:10, JA at 565, 567-68); Transcript of the Deposition of C. McIlwain ("McIlwain Dep.") at 25:3-10, JA at 390; Drummond Dep. at 50:17-51:21, JA at 151-152).  There is no dispute that representatives are compensated for all time spent logged-on.  In addition, any instances where a representative logs off for 90 seconds or less are treated as time logged-on and are compensated. (*See* Declaration of T. Shubert, JA at 2088-89).

As with time logged-on to the phone system, representatives are also paid for all time spent working while they are logged-off the phone system.  For example, a handful of

representatives engage in tasks such as cleaning or tidying up the branch office, making coffee, or other miscellaneous, administrative tasks.  (McIlwain Dep. at 33:8-14, JA at 393; Stotler Dep. 37:5-16, JA at 570; Transcript of the Deposition of J. Maziarz ("Maziarz Dep.") at 58:20-59:24, JA at 324-325).  Representatives keep track of time spent completing those tasks on timesheets and are compensated for that time.  (McIlwain Dep. at 33:8-14, JA at 393; Stotler Dep. 37:5-16, JA at 570; Maziarz Dep. at 58:20-59:24, JA at 324-325; DOL Redacted Witness Statement, JA at 722-723; DOL Redacted Witness Statement, JA at 724-728).

Every two weeks, representatives set a "committed hours" level of the number of hours that they intend to work over the upcoming two-week pay period.  (Pirock Dep. at 34:6-14, JA at 433; McIlwain Dep. at 58:22-25, JA at 393; Stotler Dep. at 40:16-23, JA at 571).  Apart from indicating their "committed hours" over a two-week period, representatives have complete freedom in determining when they will work within the hours that a branch office is open.[3]  That is, there is no mandatory time at which representatives must begin or end their workday.  Instead, as witness statements gathered by the DOL confirm, each representative independently decides when to begin and end each workday.  (DOL Redacted Witness Statements, JA at 706-11, 714-21, 724-28; Stotler Dep. at 9:8-25, 28:11-23, JA at 559, 562; Pirock Dep. at 9:16-10:3; 62-23:63:13, JA at 417-18, 446-47; Drummond Dep. at 96:14-23, JA at 161).  If a representative chooses to communicate a specific work schedule for a two-week period (*e.g.*, if she informs the branch manager that she will begin work at 8:30 a.m. every day), she nonetheless remains entirely free to change that schedule however she would like.  (DOL Redacted Witness

---

[3] Branch offices are generally open Monday through Friday, from 8:30 a.m. to 5:00 p.m., although branch managers have discretion to allow representatives to begin working slightly earlier, such as at 8:15 a.m.  (Drummond Dep. at 79:5-16, JA at 158).

Statement, JA at 698-705; McIlwain Dep. at 128:13-19, at JA 412; Maziarz Dep. at 12:1-5, 84:4-10, JA at 312, 339).

Similarly, representatives have absolute autonomy in determining both when to take breaks throughout a workday and how long those breaks will last. (Pirock Dep. at 136:6-15, JA at 476; McIlwain Dep. at 70:7-22, JA at 403; Maziarz Dep. at 108:5-15, JA at 351; Stotler Dep. at 79:16-80:6; 87:4-9, JA at 583-85). As an example, some representatives will work for 20 minutes at the beginning of the day and then leave for five hours. (Stotler Dep. at 80:7-13, JA at 584; Maziarz Dep. at 107:13-20, JA at 350). Conversely, other representatives come in and work non-stop until they decide to leave for the day. (Drummond Dep. at 244:3-9, JA at 239). At its core, representatives control all aspects of their schedules including starting time, stopping time, and any breaks they may choose to take. (McIlwain Dep. at 8:11-15, JA at 387; Pirock Dep. at 99:1-5, JA at 463).[4]

Representatives are paid a base rate as set by the compensation policy that applies to a representative's branch office, and are also eligible for additional pay for meeting committed hours and sales per hour targets. (Stipulated Facts at Nos. 23-26; Progressive Compensation Policies, JA at 869-71, 884-86). For instance, representatives receive additional pay if they maintain a certain sales per hour level over a specific two-week period. (JA at 869-71, 884-86; Stipulated Facts at No. 24). Representatives are also eligible for a "two week hourly bonus for

---

[4] Although the Secretary may argue that certain written materials suggest that representatives work a more fixed schedule, those materials do not reflect the reality of the workplace. For instance, the testimony established that employees are allowed to take lunch whenever they want and for however long they want. (Pirock Dep. at 118:5-19, 120:2-7, JA at 471, 473; McIlwain Dep. at 73:9-12, JA at 406; Stotler Dep. at 76:23-77:3, JA at 580-81; Maziarz Dep. at 109:9-16, JA at 352, 365-66, 161:19-162). Likewise, representatives are not expected to work from 8:30 a.m. to 5:00 p.m. but are given total flexibility over their schedule. (Pirock Dep. at 123:2-21, JA at 474; McIlwain Dep. at 78:21-24, JA at 407; Maziarz Dep. at 121:19-122:2, JA at 355-56).

cumulative order rate" if they maintained a certain sales per hour level over the previous twelve weeks.  (Progressive Compensation Policies, JA at 869-71, 884-86).

       B.       <u>The Evolution of Progressive's Flexible Break Policy</u>

       Prior to February 2009, all Progressive offices maintained a uniform break policy that granted representatives two 15-minute paid breaks.  (Progressive 2007 Compensation Policy, JA at 860-62).  Each representative was permitted to take a 15 minute break in the morning and another 15 minute break in the afternoon.  (*Id.*)  Because Progressive controlled the length, frequency, and timing of these breaks, the breaks were paid.

       In February 2009, the manager of the Sayre, Pennsylvania branch, Kurt Riche, installed his own break policy that applied solely to the Sayre branch.  (Drummond Dep. at 214-20, JA at 222-28).  Mr. Riche revised the Sayre break policy by removing the references to paid breaks and allowing representatives to take breaks at their own choosing.  (Feb. 2009 Sayre, PA Compensation Policy, JA at 863-65).  Mr. Riche made the change to the Sayre break policy on his own without consulting or obtaining approval from corporate management.  (Drummond Dep. at 216-20, JA at 224-28).  The change to the Sayre policy later came to the attention of Mr. Satell and Colin Drummond, Director of Call Center Operations, but only after its implementation.  (*Id.* at 216, 219-20, JA at 224, 227-28).

       The decision to implement a flexible break policy on a corporate-wide basis arose from the representatives themselves.  (Drummond Dep. at 217:2-20, JA at 225; Stotler Dep. at 89:19-90:1, JA at 587-88).  As Director of Call Center Operations, Mr. Drummond regularly visits Progressive's branch offices.  (Stipulated Facts at No. 8; Drummond Dep. at 217, JA at 225).  In the course of those visits, Mr. Drummond learned that a large number of representatives were unhappy with the existing break policy of two paid breaks because it reduced their sales per hour levels.  (*Id.* at 217:21-18:15, JA at 225-26; Transcript of the Deposition of E. Satell ("Satell

Dep.") at 232:11-233:4, JA at 513-14).  In fact, many representatives chose to forego paid breaks.  Representatives would log-off during their breaks—and thereby voluntarily go into an unpaid status during a break—so that their sales per hour levels would not be reduced by having log-on time during which they could not make sales.  (Drummond Dep. at 217-19, JA at 225-27). In turn, Mr. Drummond relayed the representatives' concerns about the break policy to Mr. Satell.  (Satell Dep. at 234-36, JA at 515-17).

After learning of the policy change in the Sayre branch, and of the representatives' dissatisfaction with the existing break policy, Mr. Satell, in consultation with Mr. Drummond, began developing a uniform break policy.  (Satell Dep. at 236-37, JA at 517-18; Drummond Dep. at 219-21, JA at 227-29).  In crafting the new policy, Mr. Satell and Mr. Drummond paid close attention to making sure that the new break policy was fair to the representatives and responsive to their concerns.  (Satell Dep. at 232-37, JA at 513-18; Drummond Dep. at 219-21, JA at 531-33).  Mr. Satell also consulted with counsel and undertook personally a comprehensive review of relevant case law and regulations to ensure that the new policy complied with the FLSA.  (Satell Dep. at 237-39, 317-23, JA at 518-20, 531-33; Drummond Dep. at 220, JA at 228).

Following that review, Progressive changed its break policy in or around July 2009 to provide that "Representatives may take personal breaks at anytime for any reason.  Personal break time is NOT paid because it is a disadvantage to the representative to do so."  (Stipulated Facts at No. 28; Progressive July 2009 Compensation Policy, JA at 869-71).[5]  Progressive's policy allowing breaks "at anytime for any reason" has not changed since July 2009. (Progressive Compensation Policies, JA at 884-86).  All representatives are given a copy of the

---

[5] As noted above, if a representative logs-off for 90 seconds or less, that time is captured as log-on time and is paid.  (*See* Declaration of T. Schubert, JA at 2088-89).

policy at the outset of their employment.  The policy clearly informs representatives that they have total flexibility over their breaks, and may choose when to log-off and when to return to work, if at all.  (Drummond Dep. at 277, JA at 2096; Satell Dep. at 185-86, JA at 2098-99).

As its terms make clear, Progressive's flexible break policy allows representatives to take as many breaks as they want, as often as they want, and for as long as they want.  Thus, unlike the fact patterns at issue in the cases and regulation relied on by the Secretary, Progressive does not mandate that its representatives take breaks of 20 minutes or less.  Rather, representatives choose the duration of their breaks.  To the extent that a given break lasts 20 minutes or less, the duration is due solely to an individual representative's choice.

Consistent with the spirit of Progressive's flexible break policy, representatives receive no instruction on when to take a break, including when they may or may not take a break, the number of breaks they may take, the length of breaks, or what they may do during a break. (Maziarz Dep. at 108:5-15, JA at 351; McIlwain Dep. at 71:4-11, JA at 404; Stotler Dep. at 79:16-80:6, JA at 583-84; Pirock Dep. at 106:1-13, JA at 469; Drummond Dep. at 184, JA at 206).  These facts are confirmed by the DOL's own witnesses.  (DOL Redacted Witness Statements, JA at 706-11, 714-21).  Similarly, representatives are not required to inform—much less receive approval from—branch managers before taking a break.  (Stotler Dep. 79:16-80:6, JA at 583-84; Maziarz Dep. at 106:2-22, JA at 349).

Finally, there is absolutely no obligation for representatives to return to work at any set time after they log-off.  (Drummond Dep. at 197:23-198:6, JA at 219-20).  Rather, as both Progressive and DOL witnesses confirm, representatives may freely come and go as they please by taking breaks at their choosing and returning to work, if they so desire, at their choosing. (Pirock Dep. at 12:3-10, JA at 419; DOL Redacted Witness Statement, JA at 712-13 ).

9

Representatives may work for 20 minutes and then leave for five hours (Drummond Dep. at 197-

198, JA at 219-20; McIlwain Dep. at 70:7-22, JA at 403; Maziarz Dep. at 106:23-107:22, JA at

349-50; Stotler Dep. at 80:7-13, JA at 584) or may simply decide to end their day at any point.

(Pirock Dep. at 130:2-22, JA at 475).  Put simply, Progressive does not impose any rules or

restrictions on representatives' use of breaks.

      C.      <u>Representatives Take Frequent and Full Advantage of Progressive's Flexible
Break Policy</u>

Representatives take frequent and full advantage of Progressive's flexible break policy.

For example, some representatives take advantage of the ability to take breaks whenever they

choose to continue their education.  Different representatives make use of the break policy to

maintain employment while meeting the requirements of probation or living in a halfway house.[6]

The flexibility allows yet other representatives to work a second job or run their own businesses

– which they are able to do on Progressive's premises by choosing to log-off for however long

they need for their other employment.  Many representatives use breaks to leave work to care for

sick relatives.  Similarly, numerous representatives take breaks to handle urgent personal or

family matters as they arise.  The table below illustrates the myriad ways that representatives

utilize Progressive's flexible break policy.[7]

| Representative | Summary of Use of Breaks |
|---|---|
| Joan Bootel | Makin and attending appointments for cancer treatment.  JA at 2000-03. |
| Pamela Davis | Making and attending medical appointments for carpel tunnel and nerve damage; caring for 12-year old daughter; personal errands. JA at 2004-07. |

---

[6] Progressive's unique flexible workplace is especially important to individuals who need to be available to attend a meeting with a probation officer or return to a halfway house at a moment's notice.  (*See* Declaration of D. Hollister, JA at 2021-25).  In fact, many individuals living in a halfway house have lost their jobs or been unable to find a job because employers are unwilling to accommodate the requirements of their schedules.  (*See id.*).

[7] Due to privacy concerns and the requirements of the Health Insurance Portability and Accountability Act, the table and the declarations refer to third-parties' medical conditions only in general terms.

| Cathy Gallagher | Caring for parents with serious medical conditions to allow them to stay in their home; caring for 9-year old; running personal errands. JA at 2008-11. |
|---|---|
| Lesley Graham | Working a second job for which always on-call, including taking calls and leaving to work shifts; caring for family, including arranging appointments and transportation; running personal errands.  JA at 2012-16. |
| Heather Hartnett | Taking online classes, including participating in online discussions and checking assignments; running personal errands.  JA at 2017-20. |
| Daniella Hollister | Obeying rules of living in a halfway house, including leaving work when the halfway house goes into "shut down" mode; attending drug and alcohol counseling, speaking with her brother about children and their school.  JA at 2021-25. |
| Michael McCann | Caring for children as a single father, including picking up from school, or leaving work to watch them if they are sick; running personal errands.  JA at 2026-28. |
| Wendy Miller | Working a second job as a manager at a fast food restaurant; running personal errands, including checking on renovations at home.  JA at 2029-32. |
| Amber Nadolny | Caring for children as a single mother; taking care of issues connected with changing residences; running personal errands.  JA at 2033-36. |
| Debra O'Neill | Running a business with her husband and working with counsel to incorporate the business; running personal errands.  JA at 2037-40. |
| Kathleen Pedrick | Short calls with lawyer about legal matters; medical appointments; giving piano lessons; singing in nursing homes.  JA at 2041-45. |
| Bonnie Peters | Caring for her diabetic condition, including making and attending medical appointments; working second job at J.C. Penney's; taking classes at Penn State University; running personal errands.   JA at 2046-49. |
| Cynthia Riddick | Caring for family, including picking children up from school, taking them to medical appointments, attending son's sporting events; caring for own health, including attending appointments; personal errands.  JA at 2050-54. |
| Jodi Robertson | Treating son's serious health condition, including doctor's appointments and school arrangements; phone calls with son in the army in Afghanistan; running personal errands.  JA at 2055-58. |
| Pamela Rodriguez | Being a full-time student; checking on renovations at home; caring for 8 children including car and medical emergencies; caring for own medical issues.  JA at 2059-63. |
| Kendra Rutter | Caring for stepdaughter; helping fiancé with his serious medical condition; running errands to help mother-in-law work two jobs.  JA at 2064-67. |
| Amber Smith | Attending probation meetings and, on a daily basis, drug and alcohol counseling; caring for her daughter; personal errands.  JA at 2068-72. |
| Marissa Walker | Working as an assistant high school soccer coach; caring for aunt with a serious medical condition, including visiting during the day.  JA at 2073-77. |
| Danielle Weise | Caring for her son and daughter, including doctor's appointments, meetings at school, and volunteering; running personal errands.  JA at 2078-81. |
| Robin Willard | Caring for her grandson's medical condition including, attending classes on caring for his condition; caring for her adult son's and her parents' medical conditions; divorce proceedings and child support issues.  JA at 2082-87. |

If the Secretary prevails in this litigation, Progressive representatives will be deprived of the ability to attend to these matters.  As the Secretary's own expert agrees, it is not economically feasible for Progressive to maintain its flexible break policy if the Secretary's interpretation on the compensability of breaks prevails.  (Transcript of Deposition of D. Crawford ("Crawford Dep.") at 68:1-17, 70:16-24, 161:8-163:12, JA at 602, 604, 620-22).

In contrast to the numerous ways in which representatives benefit from Progressive's flexible break policy, Progressive does not itself reap reward from the policy.  An empirical analysis of the log-on/log-off records and sales per hour records for representatives over the relevant time period in this case showed that the representatives' use of breaks did not increase their productivity.  (Expert Report of J. Guryan ("Guryan Report") at 18, JA at 777).  As Dr. Jonathan Guryan explained, "[e]ssentially, the analysis asks whether a given representative is more productive on the days she takes more breaks than on the days she takes fewer breaks.  The data clearly indicate that on average representatives are not more productive on the days they take more breaks."  (*Id.*).[8]

D.    Procedural History

In or around July 2009, the Secretary began a multi-year investigation of Progressive's break policy.  Throughout its investigation, the Secretary articulated a rigid interpretation of the FLSA that all breaks of 20 minutes or less must be compensated regardless of the factual circumstances surrounding a company's break policy or the flexibility that it grants employees.  (Transcript of the Deposition of B. Johnson ("Johnson Dep.") at 36:17-37:4, 55:3-10, JA at 104-05, 111).  At the DOL's request, Progressive prepared and shared an empirical analysis of the

---

[8] The Secretary has retained his own expert to opine on the benefits of Progressive's break policy.  That expert did not conduct any analysis of the breaks taken by Progressive representatives, however, and his report is subject to a separate motion to strike.

effects of breaks on representatives' productivity.  (Satell Dep. at 302-03, JA at 528-29; JA at 826-32).  This analysis showed that breaks of 20 minutes or less did not improve representatives' productivity.  (JA at 826-32).  Despite having requested the study, the DOL ignored it; the DOL never acknowledged the study and did not respond with a single comment or question.  (Satell Dep. at 302-03, JA at 528-29; Johnson Dep. at 61:8-62:5, 63:2-4, 64:14-21, JA at 117-20).

The Secretary filed the instant Complaint on November 1, 2012.  (Complaint, JA at 1-7). The primary allegation in the Complaint is that Progressive's break policy results in Progressive failing to pay minimum wage to certain representatives.  (Stipulated Facts at No. 18).  The Secretary seeks relief on behalf of approximately 1,900 current and former Progressive representatives listed in Schedule A to the Complaint.  (Complaint, JA at 1-7).

## III.   **LEGAL STANDARD**

Summary judgment is appropriate if the evidence before the Court shows that there is "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of showing the absence of a genuine dispute of material fact and the court views the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).  If record evidence "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment should be granted.  *Id.* at 587 (internal quotations and citation omitted); *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013).

A party opposing summary judgment may not simply rest upon mere allegations or denials contained in the pleadings, but must set forth specific facts demonstrating that there is a genuine issue for trial.  *Matsushita*, 475 U.S. at 586-87; *Marten v. Godwin*, 499 F.3d 290, 294-95

(3d Cir. 2007).  To avoid summary judgment, a party must demonstrate that there is a dispute over a material fact under the applicable substantive law, not merely the existence of any factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## IV.   ARGUMENT

### A.   The FLSA Does Not Require Compensation for Breaks Taken by Progressive Representatives Because the Breaks Are Not "Work," and No Deference Is Due the Secretary's Contrary Position

The FLSA does not require employers to provide breaks.  (*See* DOL Opinion Letter FLSA-1413 dated Aug. 15, 1973, JA at 2126-27 ("there is no law administered by the Department of Labor which requires an employer to give his employees a rest period")); *see also* Johnson Dep. 40:19-24, JA at 106).  Similarly, nothing in the text of the FLSA requires that employers pay for breaks.  This aligns with the common sense principle that an employee is not entitled to compensation for time not spent working.

The Supreme Court's interpretation of the FLSA is clear that the workweek ordinarily includes "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946) (superseded by statute on other grounds).  Accordingly, courts have continued to view times when an employee is not "required to be on the employer's premises, on duty or at a prescribed work place" as not constituting "work" under the FLSA.  *See Salazar v. Butterball, LLC*, 644 F.3d 1130, 1135 (10th Cir. 2011) (applying the definition of "workweek" announced in *Mt. Clemens*); *Hinson v. Tecumseh Prods. Co.*, No. 99-6091, 2000 WL 1597947, at *2 n.3 (6th Cir. Oct. 17, 2000) (DOL regulations "define hours worked as time when the employee must be on duty or on the work premises primarily for the employer's benefit"); *cf. McGrath v. City of Phila.*, 864 F. Supp. 466, 479-81 (E.D. Pa. 1994) ("courts should adopt a . . .

14

practical, realistic approach under the unique circumstances of each case when deciding whether certain activities constitute work.").

When viewing Progressive's singularly unique flexible break policy through that practical, realistic lens, periods when a representative elects to log-off, including for less than 20 minutes, are not "work."  That is, when a representative voluntarily elects to log-off—as he or she is permitted to do for any reason and at any time—that representative is not "required to be on the employer's premises," "on duty," or "at a prescribed work place."  (*See supra* at 9-10).  Instead, representatives come and go as they please, and work only when they want.  Regardless of whether an employee chooses to log off for 15 minutes, three hours, or not at all—or whether the employee works for 15 minutes then leaves for the day—Progressive accommodates its employees' preferred schedules.  By focusing solely on the length of an employee's break, the DOL overlooks that the decision of when to work, and for how long to work, rests solely in each employee's judgment of how to best use his or her time.  In light of that unfettered freedom, the time that an employee is logged-off and not otherwise completing tasks for Progressive does not constitute "work" under the FLSA.

The Secretary nonetheless contends that Progressive's break policy violates the FLSA because it does not comply with the DOL's "rest period" regulation, 29 C.F.R. § 785.18 ("§ 785.18").  Because the Secretary's interpretation of § 785.18 conflicts with the established understanding of "work" and would result in absurd results to the detriment of Progressive's representatives, no deference is due to the Secretary's position.

The "rest period" regulation is an interpretive regulation.  29 C.F.R. § 785.2 ("[t]he ultimate decisions on interpretations of the Act are made by the courts.").  As a result, courts do not defer to the DOL's position, but, instead, follow the regulation "only to the extent that [they]

find [it] persuasive." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *see also Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 186 (3d Cir. 2000) ("informal agency interpretations [including those in enforcement guidelines] are entitled to respect based only on their persuasiveness.") (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 699 n.17 (3d Cir. 1994) ("a court is not required to give effect to an interpretive regulation."). The Secretary's rigid position that § 785.18 *per se* requires compensation for all breaks of less than 20 minutes is unpersuasive.

First, the Secretary's current interpretation of § 785.18 is inconsistent with the Secretary's prior interpretation of the regulation, as well as the case law cited in the regulation itself. The "rest period" regulation at § 785.18 has not historically been interpreted as a bright-line rule that looks only to the length of a break. Instead, the determination of whether rest periods are compensable has focused on whether the rest periods are spent predominantly for the benefit of the employee or the employer. (*See infra* at 22-25) (discussing how case law—including the case law cited specifically in § 785.18—and DOL opinion letters call for a fact-specific, non-bright-line determination of whether breaks of less than 20 minutes are compensable)).

The Secretary's current, rigid view of § 785.18 represents an about-face that sharply undermines the persuasive value of the Secretary's interpretation. *See Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 304 (3d Cir. 2012) (stating that because the consistency of an agency's interpretation is one of the most important considerations in determining deference due under a *Skidmore* analysis, "[l]ess deference is afforded when an agency's interpretation is inconsistent with its prior positions"); *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 155 (3d Cir. 2004) (reasoning that under *Skidmore*, an agency's "internally conflicting positions [repudiating

16

prior positions]… militate against affording deference to [an] interpretive rule"); *see also Henson v. Pulaski Cnty. Sheriff Dep't*, 6 F.3d 531, 535 (8th Cir. 1993) (concluding that the DOL's interpretation of "hours worked" lacked persuasive force where it was "inconsistent with the Supreme Court's longstanding interpretation of the Act and would mandate the application of a rigid rule in the face of the Supreme Court's direction that courts take a practical approach based on the unique facts of each case.").

Moreover, the absurd results that would flow from the Secretary's interpretation of § 785.18 further undermine its persuasiveness.  According to the Secretary, § 785.18 requires compensation for breaks even if an employee repeatedly works for five minutes then goes on break for 19 minutes such that non-working time is 80% of the shift.  (Johnson Dep. at 131:2-12, JA at 121).  What is more, an employer would still have to pay an employee for all of those repeated 19 minute breaks even if he or she were performing work for, and compensated by, a second employer during those breaks.  (*Id.* at 150:9-22, JA at 122).  Additionally, an employee who spent 19 minutes on break drinking heavily would have to be compensated for that time.  (*Id.* at 57:9-19, JA at 113).  Under the Secretary's interpretation, an employee would also be entitled to compensation if he or she purposefully sought to injure his or her employer during a break.  For example, if an employee spent a 19 minute break spray painting graffiti disparaging his or her employer on the employer's building, or blocked potential customers from accessing an employer's property, that break would still be compensable.  This Court should decline to defer to the Secretary's view that Congress intended such an absurd result.

B.     Even if DOL Regulations Are Entitled to Deference, the Secretary Is Relying Upon the Wrong Regulation.  Under the Correct Regulation, Breaks Taken by Representatives are Non-Compensable as Off Duty Time

The Secretary's insistence that Progressive must compensate representatives for all breaks of 20 minutes or less not only conflicts with the statutory interpretation of "work" and the

17

Secretary's prior interpretation of § 785.18, it also relies on the wrong interpretive regulation. Representatives are free to take breaks at any time and for any length of time.  As a result, representatives do not have to return to work unless and until they decide to, assuming they choose to return to work at all.  Because representatives have unique flexibility to control their time as they see fit, to the extent that any regulation is applicable to this case, it is the "off duty" regulation – 29 C.F.R. § 785.16 ("§ 785.16").

The "off duty" regulation provides, in relevant part:

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked.  He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived.  Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

29 C.F.R. § 785.16.  Under the facts and circumstances of this case, time that representatives are logged-off is non-compensable because they are completely relieved from duty during any log-off time and are able to use that time effectively for their own purposes.

Representatives may elect to log-off at any time they choose, and branch managers have no authority to restrict the timing, length, or frequency of breaks taken by representatives.  (*See supra* at 9-10).  In accordance with that policy, branch managers do not monitor the breaks taken by representatives, nor do they provide any instructions or impose any restrictions on when, for how long, and for what reason breaks may be taken.  (*Id.*).

Once a representative has decided to log-off, there are absolutely no work duties required of him or her.  Rather, he or she can use that time for any reason that he or she chooses; and there is no requirement or expectation to perform any work-related tasks while logged-off.  (*See id.*).

18

Accordingly, representatives are completely relieved from duty during their breaks, and they use the time for their own purposes, including things ranging from personal errands and appointments, to caring for children and parents, to working second jobs or running their own small businesses.  (*See* Representatives' Declarations, JA 2000-87).  Representatives are also free to leave Progressive's office at any time they would like and for as long as they would like.

Finally, representatives are relieved from duty, and able to undertake personal pursuits, for as long as they want.  A representative is free to work for 20 minutes and then leave for five hours.  (*See supra* at 6, 9-10).  Or, a representative may initially intend to take a short break when logging-off but then decide to leave for the day.  (*See id.*).  In sum, Progressive's representatives may stop working whenever they want and do not have to resume working until they want, or at all.[9]  Under those facts, representatives are "off duty" and need not be compensated for breaks because they can use that time effectively for their own purposes.

The "critical issue in determining whether an employee should receive compensation for idle time is whether the employee can use the time effectively for his or her own purposes." *Halferty v. Pulse Drug Co.*, 864 F.2d 1185, 1189 (5th Cir. 1989).  This is a fact-specific test, and nothing in the "off-duty" regulation forecloses its application to breaks of 20 minutes or less. Indeed, consistent with the requirement to evaluate all of the facts and circumstances surrounding given periods of idle time, courts have eschewed blind adherence to the type of "length of break" test on which the Secretary relies.  *See Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1411-13 (5th Cir. 1990) (characterizing breaks of 15 minutes as idle time and analyzing

---

[9] In this regard, Progressive's sales representatives are similar to outside sales representatives in that they make only outgoing sales calls and do not have to be waiting and ready for incoming calls.  This is fundamentally different than most call center operations, where the employee must wait for incoming calls.  The FLSA does not require outside sales representatives to be paid for time when they are not seeking a sale.  29 U.S.C. § 213.  So too, Progressive's representatives' breaks are not paid when they are not seeking sales or engaging in other work-related tasks.

whether, under the specific facts present, employees could effectively use those 15 minutes for personal purposes); *Mitchell v. Turner*, 286 F.2d 104, 105 (5th Cir. 1960) (describing two 15-minute breaks as "idle time"); *Douglass v. Hurwitz Co.*, 145 F. Supp. 29, 31, 33-34 (E.D. Pa. 1956) (ruling that an employee's "15 minutes of completely free time" was not hours worked).

Where employees are free to choose when to work—and when not to work—they can effectively use time for their own purposes. For example, in *Bernal v. Trueblue, Inc.*, 730 F. Supp. 2d 736 (W.D. Mich. 2010), the plaintiffs were employees of a temporary labor service, Labor Ready, that provided human labor to its clients. *Id.* at 738. In order to receive an assignment, employees were required to register with Labor Ready by appearing in person and signing in at a regional dispatch office on any day they wished to receive an assignment. *Id.* at 738-39. Employees could register at any point in the day, however, and were also free not to register. *Id.* at 739. Moreover, after registering, employees were not required to remain in the dispatch office or to accept jobs. Instead, employees were free "to leave the dispatch office at any time, and employees that [took] advantage of this right [were] permitted to return to the dispatch office at their leisure and resume their pursuit of employment. Labor Ready exert[ed] no control over the employees during this time period." *Id.* at 743 (internal quotations omitted).

Under those circumstances, the court found that employees could effectively use the time spent waiting for an assignment for their own personal purposes because their free will was unrestrained. That is, because the employees controlled when to arrive, depart, and return to the dispatch office, they were able to use time away from the dispatch office however they wanted. Accordingly, that time was non-compensable. *Id.* at 743-44.

The circumstances in *Bernal* mirror the freedom enjoyed by Progressive's representatives. Progressive representatives control when to start, stop, and resume work (if they

decide to resume at all).  They can use breaks effectively for their own purposes because they can make those breaks as long, or short, as they want in order to complete whatever personal task they have at hand.  Therefore, that time is non-compensable off-duty time.  *See id.*; *Clark v. Atlanta Newspapers, Inc.*, 366 F. Supp. 886, 891-92 (N.D. Ga. 1973) (holding that time during coffee break where plaintiff was completely relieved of all duties and able to leave the premises was not hours worked under § 785.16); *Douglass*, 145 F. Supp. at 31, 33-34 (excluding "15 minutes of completely free time" from calculation of plaintiff's hours worked); *see also Zhong v. Zijun Mo*, No. 10-0806, 2012 WL 2923292, at *5 (E.D.N.Y. July 18, 2012) (time during the middle of a shift that employee was free to spend "gambling, shopping, or engaging in other personal activities" was non-compensable off-duty time); *Rich v. Delta Airlines, Inc.*, 921 F. Supp. 767, 776 (N.D. Ga. 1996) (holding that an employee was off-duty because "she was generally free to use the time on a layover for her own purposes.").

Consistent with the above cases, the DOL has found that arrangements that are more restrictive than Progressive's constituted non-compensable "off-duty" time.  In an opinion letter dated May 7, 1981, the DOL explained that employees who were free to engage in personal pursuits such as "watching T.V., sleeping, etc.," while waiting at a hotel to be notified of when to report to work were off-duty such that the time spent waiting at the hotel was non-compensable. (DOL Opinion Letter dated May 7, 1981, JA at 2128-31).  The same was true when employees were given a specific reporting time but otherwise "absolutely free to do as they desired until the specific reporting time."  (*Id.*).  Likewise, employees of an "off-shore operation" were off-duty when they were "completely free from all duties for a specified time (rather than some undeterminable time such as until the weather clears) long enough for them to use the time effectively for their own purposes, and [were] not required by the employer to stand by at the

21

work site."  (DOL Opinion Letter dated Mar. 25, 1964, JA at 2120-21).  Unlike the employees

referenced in the DOL's opinion letters, Progressive representatives freely choose when to report

to work and are not required to remain in any specified location.  Moreover, Progressive's

representatives may leave the work site at their choosing, engage in whatever pursuits they

desire, and return only when—and if—they desire.[10]  As Progressive's representatives are more

able to use time effectively for their own purposes than employees who the DOL has found are

off-duty, the time a representative is logged-off is non-compensable.

C.    <u>Even if the Rest Period Regulation Is Applicable to this Case, Breaks Taken by
Progressive Representatives are Non-Compensable Because the Breaks Are to the
Benefit of the Representatives, Not Progressive</u>

Even when viewed under the "rest period" regulation, § 785.18, the breaks taken by

Progressive representatives are non-compensable because they are to the benefits of the

representatives, not Progressive.  The Secretary's wooden position that all breaks of 20 minutes

or less must always be paid, *no matter the factual circumstances*, is incorrect.  The "rest period"

regulation states:

> Rest periods of short duration, running from 5 minutes to about 20
> minutes, are common in industry.  They promote the efficiency of
> the employee and are customarily paid for as working time.  They
> must be counted as hours worked.  Compensable time of rest
> periods may not be offset against other working time such as
> compensable waiting time or on-call time.  (*Mitchell v. Greinetz*,
> 235 F.2d 621, 13 W.H. Cases 3 (C.A. 10, 1956); *Ballard v.
> Consolidated Steel Corp., Ltd.*, 61 F. Supp. 996 (S.D. Cal. 1945)).

29 C.F.R. § 785.18.

The case law cited in the regulation itself rejects the Secretary's bright-line test.  *See*

*Mitchell v. Greinetz*, 235 F.2d 621, 625 (10th Cir. 1956) (holding that "no hard or fast rule can

---

[10] The representatives' ability to effectively use their time for personal pursuits in Progressive's
flexible workplace is further shown by the fact that representatives work on average only 20-25
hours per week.  (Drummond Dep. at 257:24-258:18, JA at 2094-95).

be laid down in these cases and each must be decided upon its own facts and circumstances").

Instead, "the answers to these questions must be gleaned from *all the facts and circumstances of*

*each case*." *Id.* at 623 (emphasis added).  This Court has reached a similar conclusion that the

compensability of breaks "is predominately a question of fact and the answer is to be gleaned

from all the facts of each case."  *Donovan v. Litvin*, No. 84-1453, 1985 U.S. Dist. LEXIS 17047,

at *19-20 (E.D. Pa. Aug. 8, 1985).  Other courts have agreed that more than the simple

stopwatch approach adopted by the Secretary is required.  *See*, *e.g.*, *Garcia v. Tyson Fresh*

*Meats, Inc.*, 766 F. Supp. 2d 1167, 1183 (D. Kan. 2011) (finding that § 785.18 "does not state

that 20-minute rest breaks are necessarily compensable.");  *Bernal*, 730 F. Supp. 2d at 741

("[W]hether waiting time is for the benefit of the employer or the employee depends on all the

circumstances of the case.");  *Brock v. Claridge Hotel & Casino*, 664 F. Supp. 899, 906 (D.N.J.

1986) (commenting that the determination of whether break time was compensable "hinges on a

close examination of the subject employment setting by the trier of fact.").

    In contrast to its current rigid interpretation, the Secretary previously agreed that a

holistic, fact-specific test was required to determine whether rest periods are compensable.  *See*

DOL Opinion Letter, FLSA-1358 dated Jan. 25, 1995, JA at 2132-33 ("[a]s the court pointed out

in *Mitchell v. Greinetz* . . . these cases must be decided in light of the particular facts and

circumstances involved.  Of primary consideration is whether the time involved under the

conditions of employment is such that it cannot be effectively used by the employees for

purposes not connected with their employment.");  DOL Opinion Letter dated Oct. 13, 1964, JA

at 2124-25  ("[w]here, however, a purported meal period is not really intended and used

primarily as a meal period, its status under the act has been deemed to *depend upon the nature*

*and amount of liberty* available to the employee during the period.") (emphasis added);  DOL

Opinion Letter dated Aug. 13, 1964, JA at 2122-23 ("[t]he length of any break is a factor in

determining if compensation is due, but, […] it is not the only factor.  It has been the experience

of the Divisions that *normally* a break of 20 minutes is not sufficient to allow the employee to

utilize the time for his own purposes.  Therefore, such breaks *normally* must be counted as hours

worked.") (emphasis added).  Progressive's policy is far from normal.  Instead, Progressive has

implemented a uniquely flexible policy that provides its representatives with unrestrained liberty

over when to take breaks, for how long to take breaks, and how to use that time.  But for that

flexibility, some representatives would be unable to work at all and others would be unable to

provide necessary care for family.  (Representatives' Declarations, JA at 2000-87).

As case law—including the case law cited specifically in § 785.18—and the Secretary's

own guidance make clear, the proper method for assessing the compensability of break time

under § 785.18 is to consider whether the break time (1) is "spent predominantly for the

employer's or employee's benefit," and (2) "is of sufficient duration and taken under such

conditions that it is available to employees for their own use and purposes disassociated from

their employment time."  *Greinetz*, 235 F.2d at 623; *Turner*, 286 F.2d at 105-06 (denying both

the Secretary and the employer summary judgment on whether two 15-minute breaks were

compensable and holding that "[t]he test to be applied is whether the 'idle time' is predominantly

for the employer's benefit or for the employee's.")[11] (internal quotations and citation omitted);

*see also Garcia*, 766 F. Supp. 2d at 1183-84 (denying summary judgment for employer and

employees because the factual record was not sufficiently developed to determine whether 20

---

[11] Unlike *Turner*, representatives' breaks are non-compensable off-duty time because
representatives have total control over their breaks and therefore may effectively use them for
personal pursuits.  Moreover, even if §785.18 is applicable, Dr. Guryan's empirical analyses and
representatives' declarations make clear that Progressive's flexible break policy is predominantly
to the benefit of the employees, and not Progressive.  Thus, unlike *Turner*, no genuine issue of
material fact exists warranting the denial of both motions for summary judgment here.

minute breaks predominantly benefited the employer or the employees);[12] *Litvin*, 1985 U.S. Dist. LEXIS 17047, at *19.  Applying those considerations to Progressive's representatives, the undisputed facts demonstrate that time spent in breaks is not compensable because Progressive's flexible policy (1) allows representatives to use as much time as they want for any personal purpose they want; and (2) is predominantly to the benefit of representatives.

First, Progressive's policy grants total control over breaks to its representatives, including when to take breaks and for how long to take breaks.  (*See supra* at 6, 9-10).  While on breaks, there is absolutely no expectation or requirement that representatives perform any work-related tasks or that they return to work at any time other than their choosing.  (*See supra* at 9-10).  Under those circumstances, representatives unquestionably are able to make effective use of break time for purposes disassociated from their employment.

Representatives personally benefit from the liberty they enjoy under Progressive's policy for numerous reasons.  Some representatives benefit by returning to school and pursuing college degrees.  (*See* Declarations of H. Hartnett at JA 2017-20, B. Peters at JA 2046-49, P. Rodriguez at JA at 2059-63).  Other representatives benefit by using the flexibility to run their own business or to hold a second job.  (*See* Declarations of L. Graham at JA 2012-16, W. Miller at JA 2029-32, D. O'Neill at JA 2037-40, B. Peters at JA 2046-49, M. Walker at JA 2073-77).  Representatives also enjoy a host of family and personal benefits from their breaks, including leaving work to pick up a child from school, taking a child to a medical appointment, or leaving work to care for a sick parent, sibling, aunt or uncle nearby.  (*See* Declarations of P. Davis at JA 2004-07, C. Gallagher at JA 2008-11, L. Graham at JA 2012-16, D. Hollister at JA 2021-25, M.

[12] In contrast to *Garcia*, the record here shows that representatives enjoy unlimited freedom to cease working when they want and to use those periods however they like.  In those circumstances, the predominant benefit of "breaks" flows to the representatives, particularly given the evidence that such periods do not improve productivity.

McCann at JA 2026-28, A. Nadolny at JA 2033-36, C. Riddick at JA 2050-54, J. Robertson at JA 2055-58, P. Rodriguez at JA 2059-63, K. Rutter at JA 2064-67, A. Smith at JA 2068-72, M. Walker at JA 2073-77, D. Weise at JA 2078-81, R. Willard at JA 2082-87).  Representatives further benefit from merely being able to take a break in order to address personal needs, such as running errands or making and attending appointments.  (Representatives' Declarations, JA at 2000-87).  For yet other representatives, the flexibility under Progressive's policy is the only reason they can work at all.  (See Declarations of C. Gallagher at JA 2008-11, D. Hollister at JA 2021-25, A, Smith at JA 2068-72).  Simply put, there are countless different ways that representatives take advantage of and benefit from the ability to balance work and life under Progressive's policy.  (Guryan Report at 3-10, JA at 762-69).

In addition to the representatives' own accounts of how they benefit from Progressive's flexible break policy, flexible work arrangements have been more broadly recognized as beneficial to employees.  For instance, the Secretary's own expert agreed that flexible work schedules increase the attractiveness of jobs to women and older workers, and that increased workforce diversity is beneficial for the functioning of the national economy.  (Crawford Dep. at 26:5-24, 30:9-31:12, JA at 599-601); *see also* Kristen M. Shockley & Tammy D. Allen, *When Flexibility helps: Another look at the availability of flexible work arrangements and work-family conflict*, 71 Journal of Vocational Behavior 479-93 (2007), JA at 2134-48 (finding that flexible work arrangements, particularly those offering temporal flexibility, help decrease work interference with family and that flexible work arrangements appear to be uniformly beneficial for women with substantial family responsibilities); Jean Flatley McGuire, PhD, Phyllis Brashler & Kaitlyn Kenney, *Promoting Children's Well-Being: The Role of Workplace Flexibility*,

Georgetown Univ. Law Ctr. (2010), JA at 2149-58 (explaining how workplace flexibility enhances workers' ability to be effective parents).

Even the DOL has recognized that flexible schedules are a benefit to employees.  (*See* DOL Website on Workplace Rights and Benefits (characterizing flexible schedules as a workplace "benefit"), JA at 2172).  A core focus of the DOL, in conjunction with the White House, is to create "a 21st century workplace that works for all Americans."  (*See* DOL and White House Summit on Working Families, at JA 2173-74).  As part of that focus, the DOL has highlighted the need for workplace flexibility to help Americans balance their work and home responsibilities.  (*See* DOL Press Release on National Dialogue on Workplace Flexibility Conference, at JA 2175).  The Secretary's outdated interpretation of § 785.18 works against the DOL's stated goals, and would prevent Progressive from maintaining the type of family-friendly flexible policy that the DOL is supposedly working to advance.

In contrast to the numerous and significant ways in which Progressive's representatives benefit from breaks, Progressive itself does not benefit from its employees' breaks.  Dr. Jonathan Guryan's empirical analysis of the effect of breaks on a representative's productivity found that "neither additional breaks nor longer breaks make sales representatives more productive at making sales at Progressive."  (Guryan Report at 18, JA at 777).  If, as the Secretary contends, break time were counted as work time (despite the representatives' control over when they work), then an increase in the number of breaks a representative takes has a statistically significant negative effect on a representative's productivity.  (*Id.* at 16-17, JA at 775-76).  In other words, Dr. Guryan's analysis demonstrates that breaks reduce representatives' productivity.  (*Id.*)  In sum, representatives benefit from the breaks in myriad personal ways,

whereas Progressive does not benefit because breaks do not increase a representative's productivity.

In weighing the relative benefits of breaks to Progressive and to its representatives, it is clear that the breaks are predominantly for the benefit of the representatives.  Under these circumstances, the flexibility and liberty enjoyed by employees renders the time non-compensable.  *See Bernal*, 730 F. Supp. 2d at 744 (holding that time spent at workplace was non-compensable where employer's policy gave employees "the unique option of being able to work only when they wanted to work[;]" because employees could effectively use the waiting time for non-work purposes, that time was "overwhelmingly for the benefit of" the employees).

In relying on a bright-line interpretation of the compensability of breaks, the Secretary advances a position contrary to the interests of Progressive employees.  It was Progressive's employees in the first place, not Progressive's management, who advocated for the adoption of the current flexible break policy.  (*See supra* at 7-8).  Many representatives choose to work at Progressive specifically because of that flexibility and would be worse off with a set break schedule.  (Guryan Report at 4, 18, JA at 763, 777).  Despite all that, the Secretary maintains a position that, if successful, will leave Progressive with no choice but to eliminate its flexible break policy.  As the Secretary's own expert conceded, it is not economically viable for Progressive to maintain its current flexible policy of allowing representatives total control over their breaks while also compensating representatives for those breaks.  (*See* Crawford Dep. at 68:1-17, 70:16-24, 161:8-163:12, JA at 602, 604, 620-22); (*see also* Guryan Report at 18, JA at 777).  In turn, this will negatively affect representatives who value the flexibility and rely upon it in their daily lives.  (*Id.*).  As has been wisely noted, "[a]lthough the FLSA overrides contracts, in close cases it makes sense to let private arrangements endure – for the less flexible statutory

approach has the potential to make everyone worse off." *Dinges v. Sacred Heart St. Mary's Hosp., Inc.*, 164 F.3d 1056, 1059 (7th Cir. 1999).

>    D.    If Applied to Require Progressive to Compensate Its Employees for Breaks Under Twenty Minutes, the Statute Would Raise Serious Constitutional Concerns

Under the well-established constitutional avoidance doctrine, courts should, wherever possible, construe statutes to avoid constitutional problems or concerns. *United States v. Navarro*, 145 F.3d 580, 589 (3d Cir. 1998) ("Generally speaking, we avoid statutory constructions that raise grave and doubtful constitutional questions."); *Hindes v. FDIC*, 137 F.3d 148, 166 (3d Cir. 1998) ("Courts, of course, will avoid such questions where possible.").  In this case, the constitutional avoidance doctrine provides an additional reason why this Court should reject the Secretary's position, because applying the FLSA to require Progressive to compensate employees for all breaks of less than 20 minutes would raise serious constitutional concerns under the due process clause.

Although courts afford legislatures wide latitude when it comes to economic regulation, that latitude is not boundless—such regulation must have a rational relationship to a constitutionally permissible objective to pass constitutional muster. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985); *St. Joseph Abbey v. Castille*, 712 F.3d 215, 227 (5th Cir. 2013) (reviewing courts must "insist" that "regulation not be irrational").  That requirement cannot be satisfied here.

There is no legitimate government objective in requiring Progressive, with its unique business model, to pay workers for all breaks less than 20 minutes when: (i) the Secretary has conceded that Progressive is not required to provide *any* paid breaks, and (ii) Progressive places no limits whatsoever on the number or duration of breaks that an employee may take.  *See Cleburne Living Ctr.*, 473 U.S. at 448 ("Because in our view the record does not reveal any

rational basis for believing that the Featherston home would pose any special threat to the city's legitimate interests, we affirm the judgment below insofar as it holds the ordinance invalid as applied in this case."); *St. Joseph Abbey*, 712 F.3d at 226 ("That Louisiana does not even require a casket for burial, does not impose requirements for their construction or design, does not require a casket to be sealed before burial, and does not require funeral directors to have any special expertise in caskets leads us to conclude that no rational relationship exists between public health and safety and limiting intrastate sales of caskets to funeral establishments.").

The absence of a rational basis becomes even more apparent when considering the absurd results that flow from the Secretary's position.  For instance, there is no legitimate government objective in requiring a company to pay for breaks that amount to 80% of a workday (if the employee repeatedly worked five minutes and then took a break for 19 minutes).  Similarly, forcing an employer who derives no benefit from an employee's break to pay for that break while the employee works for, and is paid by, a second employer during that break defies common sense.  Because applying the FLSA to Progressive's unique business model to require compensation for all breaks under 20 minutes would therefore raise serious due-process concerns, summary judgment should be granted to Progressive for that reason as well.

## V.     CONCLUSION

For all of the foregoing reasons, Progressive respectfully submits that there is no genuine dispute of material fact, and that the Court should enter summary judgment in its favor.

Dated: May 23, 2014                          Respectfully submitted,

                                             /s/ Sarah E. Bouchard
                                             Sarah E. Bouchard
                                             Lincoln O. Bisbee, admitted *pro hac vice*
                                             MORGAN, LEWIS & BOCKIUS, LLP

                                             *Attorneys for Defendants*

30

<u>**CERTIFICATE OF SERVICE**</u>

I, Lincoln O. Bisbee, hereby certify that on May 23, 2014, I served the foregoing

Memorandum of Law In Support of Motion for Summary Judgment via the Court's CM/ECF

System on:

> Adam F. Welsh
> A. Scott Hecker
> U.S. Department of Labor, Officer of the Solicitor
> Suite 630E, The Curtis Center
> 170 S. Independence Mall West
> Philadelphia, PA 19106
> welsh.adam@dol.gov

> /s/ Lincoln O. Bisbee
> MORGAN, LEWIS & BOCKIUS LLP
> Lincoln O. Bisbee, admitted *pro hac vice*
> lbisbee@morganlewis.com
> MORGAN, LEWIS & BOCKIUS LLP
> 1111 Pennsylvania Avenue, NW
> Washington, DC  20004
> (202) 739 -3000
> (202) 739-3001 FAX