IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. PEREZ, SECRETARY OF | : | CIVIL ACTION |
| LABOR, UNITED STATES DEPARTMENT | : | |
| OF LABOR, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN FUTURE SYSTEMS, INC. | : | NO. 12-6171 |
| d/b/a/ PROGRESSIVE BUSINESS | : | |
| PUBLICATIONS, et al. | : | |

## MEMORANDUM

**L. Felipe Restrepo, J.**                                        **December 16, 2015**

Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor

("Plaintiff" or the "Secretary"), filed suit against American Future Systems, Inc. d/b/a/

Progressive Business Solutions ("Progressive") and its principal owner, Edward Satell ("Satell")

(collectively, "Defendants") for violations of the minimum wage and recordkeeping provisions

of the Fair Labor Standards Act, 29 U.S.C § 201 *et seq*.  The alleged minimum wage violations

are the result of Progressive's policy that employees must "log-off" the computer systems, and

thus not be paid, during any break taken through the workday, including breaks of 20 minutes or

less.  The alleged recordkeeping violations are the result of Progressive's failure to maintain and

produce employee time records from certain branch locations for various time periods at issue.

The parties have each moved for summary judgment in their favor.[1]  The parties have also each

moved to exclude the expert testimony of the opposing party's principal expert witness pursuant

to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993).

---

[1]        Plaintiff moved for summary judgment on FLSA minimum wage liability, FLSA recordkeeping
liability, Satell's role as an employer under the FLSA, liquidated damages, and willfulness, but not on the
actual damages calculation.  Defendants moved for complete summary judgment in their favor.

For the reasons that follow, both <u>Daubert</u> motions will be denied as moot.[2]  Further, the

Secretary's summary judgment motion will be granted with respect to FLSA minimum wage

liability, FLSA recordkeeping liability, Satell's role as an employer under the FLSA, and

liquidated damages.  The Secretary's motion for summary judgment will be denied with respect

to the willfulness of the violations.  Defendants' motion for summary judgment will be denied.

## I.   FACTUAL AND PROCEDURAL HISTORY[3]

Progressive is a Pennsylvania corporation, with its principal place of business in Malvern,

Pennsylvania.  JSSF ¶ 1.  Progressive's primary business is creating business information

publications and selling those publications to various entities using sales representatives.  <u>Id.</u> ¶ 2.

Progressive's sales representatives' duties consist primarily of selling Progressive's publications

to business executives via outbound telephone calls.  <u>Id.</u> ¶ 12.  Those sales representatives

currently work in ten call centers operated by Progressive throughout Pennsylvania, Ohio, and

New Jersey.  <u>Id.</u> ¶ 13.  During the relevant period, Progressive sales representatives also worked

out of four additional call centers in Pennsylvania, which have since been closed.  <u>Id.</u> ¶ 14.

Progressive's sales representatives have been employed in an enterprise engaged in commerce or

the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(a), and

Progressive's annual gross revenue meets the jurisdictional threshold in this matter.  <u>Id.</u> ¶¶ 3, 11.

Furthermore, Defendants do not dispute that Progressive is an "Employer" as defined in 29

U.S.C. § 203(d).

---

[2]     Because the FLSA minimum wage liability issue is resolved by applying §785.18 as a bright-line rule, the Court need not address the merits of the parties' positions as to the "facts and circumstances" of the breaks at issue.  Since this approach obviates the need to rely on any of the proffered expert testimony, the parties' respective <u>Daubert</u> motions will be denied as moot.

[3]     In support of their respective motions, the parties have submitted a Joint Statement of Stipulated Facts ("JSSF") (ECF No. 40).  Numerical citations to the JSSF will refer to the paragraph number of the stipulated fact.  The parties have also submitted in Joint Appendix ("JA") (ECF Nos. 35, 36, 39, 42, and 47) in support of their motions.  Numerical citations to the appendix will refer to the page number on which that fact appears.

Satell is President, Chief Executive Officer, and at least 98% owner of Progressive.  JSSF ¶ 4.  Satell is responsible for Progressive's policies, operations, and results.  Id. ¶ 5.  Satell makes or approves high level recruitment decisions, large capital expenditures and/or significant contracts, and major changes of policy.  Id.

Progressive maintains a timekeeping system that requires its sales representatives to log-on and log-off its computer and telephone systems at certain times.  JSSF ¶ 20.  When representatives arrive at work during a branch's hours of operation, they log-on to the branch's computer system.  Id. ¶ 21.  Representatives remain logged-on to the computer system while making outbound sales calls, documenting the results of those calls, receiving training, and other approved tasks.  Id. ¶ 22.  Progressive sales representatives are only paid for the time that they are logged into the timekeeping system.[4] 7/14/14 Hr'g Tr. 13:12 – 14:3, 33:17 – 34:14.  See also JA 850 (setting forth what time is paid and unpaid under the Progressive break policy); JA 194-99 (deposition testimony of Colin Drummond explaining when and why employees should be logged into or out of the computer system).

At some point in 2009, Satell consulted with Colin Drummond, Progressive's Director of Call Center Operations, to develop a uniform break policy across its call centers.  JSSF ¶¶ 7, 27.  In or around June 2009, the Department of Labor ("DOL") commenced a multi-year investigation of Progressive's break policy.  Id. ¶ 15.  In July 2009, Progressive implemented a written compensation policy stating, among other things, that: "Representatives may take personal breaks at anytime for any reason.  Personal break time is NOT paid because it is a disadvantage to the representative to do so."  Id. ¶ 28; JA 850.  After July 2009, if a Progressive

---

[4]     Some representatives recorded additional time on physical timesheets for certain tasks, such as cleaning communal office space.  JA 493-94, 552-53; Defs. Summ. J. Mot. (ECF No. 38) 4-5.

sales representative is not on an active sales call, recording the results of a call, engaged in training or administrative activities, or engaged in other activities that Progressive considers to be work-related, the sales representative is required to log-off on Progressive's computer system. JSSF ¶ 30.  The log-on/log-off records after July 2009 produced by Progressive show each time the employee in question logged on an logged off system during the day in question and the amount of time that the employee in question was logged on and logged off the system during the day in question.[5]  Id. ¶ 33.  Progressive was unable to produce log-on/log-off records from the Bensalem, Meadville, Pottsville, Sayre, Uniontown, and Wyomissing call centers for various timespans during the relevant period.  Id. ¶¶ 44-49.  Progressive stated that its inability to produce these log-on/log-off records was due to the records being lost on account of (1) computer server destruction due to force majeure (e.g., flood or power outage), or (2) the recycling of computer servers containing the relevant records when the corresponding branch office closed.  Id. ¶ 50.

On March 16, 2011, the Wage & Hour Division of the DOL informed Progressive that breaks of twenty minutes or less were compensable and that Progressive's policy of not paying for those breaks resulted in violations of the FLSA's minimum wage requirement.  JSSF ¶ 16. The parties agreed to toll all applicable statutes of limitations for the periods from May 2, 2011 through August 1, 2011, and from August 9, 2011 through September 14, 2012.  Id. ¶ 19.

The Secretary initiated this action against Defendants on November 1, 2012.  ECF No. 1. The parties cross-moved for summary judgment on May 23, 2014.  ECF Nos. 31-32, 35-36, 38-

---

[5]     Defendants' counsel has represented to Plaintiff's counsel, and Plaintiff's counsel has apparently conceded, that Progressive sales representatives are compensated for any log-off period of 90 seconds or less.  JSSF ¶ 43.  Progressive's payment of these log-out periods of 90 seconds or less is apparently the result of a "grace period" built into Progressive's policies.  As a result of this "grace period" and the resulting payment to Progressive representatives for breaks of 90 seconds or less, the log-on/log-off records produced by Progressive to do reflect any log-out period of less than 90 seconds. Id.

40.  On May 23, 2014, the parties also cross-moved to exclude the expert testimony offered by the opposing side.  ECF Nos. 33-34, 37.  The parties filed their responses in opposition to the cross-motions for summary judgment on June 13, 2014.  ECF Nos. 41-42, 44-45, 47.  On June 13, 2014, the parties also filed their responses in opposition to the cross-motions to exclude expert testimony.  ECF Nos. 43, 46.  The parties filed replies in further support of their cross-motions for summary judgment on June 20, 2014.  ECF Nos. 48, 51.  On June 20, 2014, the parties also filed their replies in further support of their cross motions to exclude expert testimony.  ECF Nos. 49-50.  On July 4, 2014, with leave of Court, Defendants filed a sur-reply with respect to Plaintiff's motion to exclude Defendants' expert testimony.  ECF No. 54.  The Court held oral argument on both sets of cross-motions on July 14, 2014.  ECF Nos. 57-58.  With leave of Court, the parties submitted supplemental briefing with respect to: (1) a Notice of Supplemental Authority regarding Ruffin v. MotorCity Casino, 775 F.3d 807 (6th Cir. 2015) (ECF Nos. 63-65), (2) the appropriate level of deference afforded to certain administrative regulations (ECF Nos. 67-68); and (3) a Notice of Supplemental Authority regarding Babcock v. Butler County, 806 F.3d 153 (3d Cir. 2015) (ECF Nos. 71-72).

## II.    JURSIDICTION AND LEGAL STANDARD

This court has subject-matter jurisdiction over this matter pursuant to 29 U.S.C. § 217, and 28 U.S.C. §§ 1331, 1345.

In ruling on a motion for summary judgment, the Court must "construe the evidence in the light most favorable" to the non-moving party, Zimmerman v. Norfolk S. Corp., 706 F.3d 170, 176 (3d Cir. 2013), and grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact's "materiality" is determined by the substantive law at issue,

and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 4778 U.S. 242, 247 (1986).  "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." Doe v. Abington Friends Sch., 480 F.3d 225, 256 (3d Cir. 2007) (citations omitted). This analysis remains unchanged when there are cross-motions for summary judgment. Lawrence v. City of Philadelphia, PA, 527.F.3d 299, 310 (3d Cir. 2008).  The analysis is unchanged because "[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968).

## III.   LEGAL ANALYSIS

### A.   Genuine Issues of Material Fact

That the parties have each moved for summary judgment, and thus each represented that there are no material facts in dispute, does not permit the Court to ignore this portion of the summary judgment analysis.  See Coolspring Stone Supply, Inc. v. American States Life Ins. Co., 10 F.3d 144, 150 (3d Cir. 1993) (citing Raines, 402 F.2d at 245).  The Court, however, agrees with the parties that this matter is ripe for summary judgment on the issues presented, as there are no genuine issues of material fact.  7/14/14 Hr'g Tr. 7:1-8 ([Counsel for Plaintiff:] "There are facts in dispute, but our legal position is that there are really no material facts in dispute . . . the facts that you need to apply those things, we do not believe are in dispute[.]");  7/14/14 Hr'g Tr. 37:24 – 38:5 ([Counsel for Defendants:] "And you are absolutely able to rule as

6

a matter of law based on the policy, because that's ultimately what the <u>Tyson Foods</u> case was doing, and they would have gotten there if the record had been more developed.  <u>Tyson Food</u> did not have the wealth of data that we produced in this case[.]").

The factual record in this matter is very well-developed.  Plaintiff submitted the declarations of 70 former Progressive employees, while Defendants submitted the declarations of 21 current and former Progressive employees.  JA 1004-1253, 2000-89; 7/14/14 Hr'g Tr. 11:9-24.  In addition, the parties have engaged in substantial deposition practice, deposing no less than eight fact witnesses throughout the course of this case.  JA 103-260, 311-597.  Furthermore, the data provided by Progressive's timekeeping system is extensive and undisputed.  JSSF ¶¶ 32-42; JA0896-JA0901; Defs. Opp. at 8 ("[T]he data is akin to having thousands of declarations . . . ."); Defs. Opp. at 18 ("[T]he data provided a detailed factual imprint for each and every class member, and is more reliable than post hoc recollections from former class members.  The fact-intensive inquiry required by [the CFR] is easily made through the data, making summary judgment appropriate here, where in other circumstances with other employers, it is not as easily proven."); 7/14/14 Hr'g Tr. 40:8 ([Counsel for Defendants]: "The data is undisputed.").  The data delivers a clear and unbiased history of the breaks taken by Progressive sales employees during the relevant period.  7/14/14 Hr'g Tr. 39:10-14 ([Counsel for Defendants]: "You can simply rely on what the data shows . . . what better facts and circumstances for you to look at than a million data points.").

While each party submitted a statement of disputed material facts in opposition to the opposing party's summary judgment motion (ECF Nos. 41-1, 45), upon close inspection it is clear that these alleged disputed material facts are no impediment to summary judgment.  Of the thirty-eight disputed material facts submitted by the parties, each fall into one of the following

categories: (1) the fact is not material to the analysis required by the court; (2) the dispute is not about the fact itself, but rather is about the characterization or interpretation of the fact;[6] (3) the fact is not in dispute, but one party desired to supply additional detail or context;[7] (4) the dispute about the fact has been resolved;[8] and, (5) the fact is actually an argument advanced by the opposing party.[9]  In the absence of any genuine issues of material fact, in light of the agreement of the parties, and having considered the extensive evidentiary record comprised of declarations, depositions, documents, and data, the Court concludes that summary judgment on liability issues may be granted on the current record.

**B.**   **FLSA Minimum Wage Liability**

The Secretary alleges that Defendants have violated the minimum wage provisions of the FLSA, namely 29 U.S.C. § 206(a)(1)(c).  Specifically, the Secretary argues all workday breaks of 20 minutes or less are compensable time under 29 C.F.R. § 785.18,[10] and that Progressive's break policy and compensation practices do not comport with that regulation.  As a result, the Secretary alleges that many current and former Progressive employees have not been properly credited for all compensable time, and thus have been paid below the minimum wage established by the FLSA.  The Secretary argues that Progressive's conduct violates the law whether the court

---

[6] Plf. Stmt. No. 1, 2, 4-7 ; Def. Stmt. No. 2, 3, 6, 9, 10, 12, 13, 15-18, 20, 22, 24-27.
[7] Plf. Stmt. No. 9; Def. Stmt. No. 1, 4, 5, 7, 8, 19, 21, 23.
[8] Plf. Stmt. No. 10.
[9] Plf. Stmt. No. 3, 8; Def. Stmt. No. 11, 14, 28.
[10] 29 C.F.R. § 785.18 ("Rest") reads as follows:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time.

applies § 785.18 as a bright-line rule, or whether the court considers the matter under a "facts and circumstances" test.

Defendants argue that the Secretary is attempting to enforce the wrong regulation, and that the court should apply 29 C.F.R. § 785.16[11] to Progressive's break policy instead of § 785.18.  Defendants argue § 785.16 is appropriate because Progressive's break policy is completely flexible, allowing Progressive employees to take as many breaks as they want for as long as they want, even though the law does not require an employer to permit any breaks at all. Defendants further argue that § 785.16 is the appropriate regulation here because no matter how long or short the break, the employee is completely relieved of all duties during that time and is under no obligation to return to work.  Defendants argue that since the employees use their breaks for their own purposes and not for Progressive's benefit, and the breaks do not increase worker productivity, then none of the breaks are compensable time for purposes of the FLSA.

The Court is persuaded that: (1) § 785.18, and not § 785.16, is the appropriate rule for determining the compensability of the breaks at issue here; (2) § 785.18 warrants substantial Skidmore deference;  and (3) § 785.18 should be enforced on a bright-line basis to govern the compensability of short workday rest periods of 20 minutes or less taken by Progressive employees.

---

[11] 29 C.F.R. § 785.16 ("Off duty") reads, in relevant part, as follows:

> Periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked. He is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived. Whether the time is long enough to enable him to use the time effectively for his own purposes depends upon all of the facts and circumstances of the case.

1.     The Administrative Posture of § 785.18

Generally speaking, there are two types of "rules" found within the Code of Federal Regulations: "legislative rules" and "interpretive rules."  Rules issued through the notice-and-comment procedure established by Section 4 of the Administrative Procedures Act, 5 U.S.C. § 553, are "legislative rules" that have the force and effect of law.  Perez v. Mortgage Bankers Ass'n, 135 S. Ct. 1199, 1203 (2015).  On the other hand, "interpretive rules" do not go through the notice-and-comment process, and while there is substantial disagreement about the exact definition, "the critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers."  Id. (internal quotations marks and citations omitted).  Accordingly, "[i]nterpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process."  Id. (internal quotations marks and citations omitted).

The relevant rules found at 29 CFR Part 785 are properly classified as "interpretive rules," as they have not been promulgated pursuant to notice-and-comment, and instead were created to inform the public of the positions that the Administrator of the Wage and Hour Division would take in enforcing the FLSA.  See 29 C.F.R § 785.2.  Both parties seem to have taken the position that interpretive rules may never be afforded Chevron deference.  Compare ECF No. 67 at 1 ("Skidmore deference is appropriate where, as here, an agency promulgates interpretive rules outside of the 'notice and comment' rulemaking set forth in the Administrative Procedures Act, 5 U.S.C. § 553."), with ECF No. 68 at 1 ("First, as both the Supreme Court and Third Circuit have made clear, the level of deference, if any, afforded to enforcement guidance and interpretive rules such as those found in 29 C.F.R. §§ 785.16 and 785.18 is evaluated under Skidmore.").  Both parties, however, appear to have missed the mark.  In United Stated v. Mead

10

Corp, the Supreme Court said, "as significant as notice-and-comment is in pointing to Chevron authority, the want of that procedure here does not decide the case, for we have sometimes found reasons for Chevron deference even when no such administrative formality was required and none was afforded . . . The fact that the [rule] here was not a product of such formal process does not alone, therefore, bar the application of Chevron."  553 U.S. 218, 230-31 (2001) (internal citation omitted).  A year later, the Supreme Court reiterated this proposition from Mead: "And the fact that the Agency previously reached its interpretation through means less formal than 'notice and comment' rulemaking, see 5 U.S.C. § 553, does not automatically deprive that interpretation of the judicial deference otherwise its due.  If this Court's opinion in Christensen[] suggested an absolute rule to the contrary, our later opinion in Mead[] denied the suggestion." Barnhart v. Walton, 535 U.S. 212, 221-22 (2002) (internal citations omitted).  Nevertheless, in the absence of a party advocating for its application, the Court will not thrust the possibility of Chevron deference upon them.[12]  Accordingly, the Court will now turn to the position of the parties, who, for whatever reason, both agree that Skidmore v. Swift, 323 U.S. 134 (1944), is the proper lens through which to view §§ 785.16 and 785.18.

2.    The Level of Skidmore Deference for Section 785.18

Though the parties agree that the level of deference afforded § 785.18 is appropriately determined under the Skidmore framework, compare ECF No. 67 at 1-2, with ECF No. 68 at 1-2, they strongly disagree about the amount of deference that § 785.18 deserves.   Plaintiff argues that the regulation "is due substantial Skidmore deference" (ECF No. 67 at 1), while Defendants argue that "[h]ere, no deference is warranted § 785.18" (ECF No. 68 at 2).

---

[12]    Because the Court concludes that § 785.18 warrants substantial Skidmore deference and is the appropriate rule to govern the breaks at issue here, the application of Chevron deference would only increase the strength of the position adopted by the Court.

In <u>Skidmore</u>, the Supreme Court recognized that the rulings, interpretations, and opinions of the Administrator of the Wage and Hour Division under the FLSA "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  323 U.S. 134, 140 (1944).  Furthermore, the Supreme Court held that the weight given to an interpretation or opinion "will depend upon the thoroughness evident it is consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]"  <u>Id.</u>  More recently, the Third Circuit has "adopted <u>Mead</u>'s conceptualization of the <u>Skidmore</u> framework as a 'sliding-scale' test in which the level of weight afforded to an interpretation varies depending on [the] analysis of the enumerated factors."  <u>Hagans v. Commissioner of Social Sec.</u>, 694 F.3d 287, 304 (3d Cir. 2012) (quoting <u>United States v. Mead Corp.</u>, 553 U.S. 218, 228 (2001)).  Those factors include whether the interpretation was: (1) issued contemporaneously with the statute; (2) consistent with other agency pronouncements; (3) reasonable given the language and purposes of the statute; (4) within the expertise of the relevant agency; and (5) part of a longstanding and unchanging policy. <u>Hagans</u>, 694 F.3d at 304-05.  <u>See also</u> <u>Cleary ex rel. Cleary v. Waldman</u>, 167 F.3d 801, 808 (3d. Cir. 1999) (if an agency has been granted administrative authority by Congress, <u>Skidmore</u> deference is warranted "as long as it is consistent with other agency pronouncements and furthers the purposes of the Act.").

As a preliminary matter, there is no dispute that Congress properly delegated authority to the Administrator of the Wage and Hour Division to administer the FLSA.  <u>See</u> 29 U.S.C. § 204(a) ("There is created in the Department of Labor a Wage and Hour Division which shall be under the direction of an Administrator, to be known as the Administrator of the Wage and Hour Division . . . The Administrator shall be appointed by the President, by and with the advice and

consent of the Senate.").  In addition, it cannot be credibly argued that § 785.18 does not fall within the expertise of Department of Labor and the Wage and Hour Division.  See Gonzales v. Oregon, 546 U.S. 243, 256 (2006) ("In Auer, the underlying regulations gave specificity to a statutory scheme the Secretary was charged with enforcing and reflected the considerable experience and expertise the Department of Labor had acquired over time with respect to the complexities of the Fair Labor Standards Act."); see also Townsend v. Mercy Hosp. of Pittsburgh, 862 F.2d 1009, 1012-13 (3d Cir. 1988) (declaring that "the Administrator's expertise acquired through day-to-day application of the [FLSA] makes us hesitant to contravene such opinions unless the statute plainly requires otherwise.").  Accordingly, both factors favor substantial Skidmore deference for § 785.18.

With respect to contemporaneousness, the FLSA was signed into law on June 25, 1938,[13] and did not go into effect until October 24, 1938.[14]   Section 785.18 originates from a June 10, 1940 interpretive press release from the Administrator of the Wage and Hour Division.  See Minimum Wages and Maximum Hours, 51 MONTHLY LAB. REV. 417, 418 (1940) (reporting the issuance of Wage and Hour Division Press Release No. R-837, June 10, 1940, as saying that short rest periods, up to and including 20 minutes, are construed by the Administrator of the Wage and Hour Division as working time); Mitchell v. Greintz, 235 F.2d 621, 624 (10th Cir. 1965) ("On June 10, 1940, the Administrator issued an interpretive press release declaring that short rest periods up to and including twenty minutes should be compensated.").  The issuance of this interpretive press release predecessor to § 785.18 was part of what could only be described as a flurry of activity by the Wage and Hour Division to effectively administer the FLSA in its infancy.  See, e.g., U.S. Dep't of Labor, Wage & Hour Div., ANNUAL REPORT FOR THE FISCAL

---

[13]     Fair Labor Standards Act, Pub. L. No. 75-718, 52 Stat. 1060 (1938).
[14]     See 29 U.S.C. § 215(a) (stating that that law will become effective 120 days after June 25, 1938).

YEAR ENDED JUNE 30 1940 147-48 (U.S Gov't Printing Office, 1941) (describing that during the fiscal year ending June 30, 1940, the Wage and Hour Division, among other things, issued 449 press releases explaining various administrative actions, as "[o]nly a continuous flow of information material can serve to keep all employers adequately and timely informed of the policies, determinations, interpretations, certifications and wage orders requisite to intelligence compliance with the act."). Considering the expansive nature of the FLSA, the fact that the Wage and Hour Division was a created by the very act it was then tasked to administer, the large number of inquiries the Wage and Hour Division handled during its infancy,[15] and that the relevant guidance was issued within the first twenty months of the statute's existence, the direct predecessor to § 785.18 was sufficiently contemporaneous with the passage of the FLSA to militate in favor of substantial Skidmore deference.[16]

Section 785.18 is a rule that is both longstanding and unchanging.  The text of the rule today is identical to the text of the rule when it was implemented in 1961.  See 26 Fed. Reg. 190 (Jan 11, 1961).  In addition, the DOL's consistent application and interpretation of this rule spans many decades and is well-documented.  See JA0841-0848 (containing Wage and Hour Division and Public Contract Divisions Administrator, U.S. Dep't of Labor (Aug. 13, 1964); Wage and Hour Division and Public Contract Divisions Administrator, U.S. Dep't of Labor (Dec. 19, 1967); Wage and Hour Division Administrator, Opinion Letter FLSA, U.S. Dep't of Labor, FLSA-587 (Oct. 3, 1975); Wage and Hour Division Administrator, Opinion Letter FLSA, U.S. Dep't of Labor, SCA-126 (Mar. 27, 1987); Wage and Hour Division Administrator, Opinion Letter FLSA, U.S. Dep't of Labor, (Feb. 19, 1998)).  Perhaps the Wage and Hour Division's

---

[15]     Id. at 91 (noting that in the first twenty months since the effective date of the FLSA, the Wage and Hour Division received a total of 56,678 complaints alleging violations of the act).

[16]     It is also worth noting that that the initial codification of §785.18 in the CFR was nearly contemporaneous with the passage of the 1961 amendments to FLSA – the two were separated by approximately four months.  See Pub. L. No. 87-30, 75 Stat. 65.

position with respect to the applicability of the rule is best summarized by one of its earlier

pronouncements:

> Employees have always taken short work breaks, with pay, for a
> myriad of non-work purposes -- a visit to the bathroom, a drink of
> coffee, a call to check the children, attending to a medical
> necessity, a cigarette break, etc.  The Department has consistently
> held for over 46 years that such breaks are hours worked under the
> FLSA, without evaluating the relative merits of an employee's
> activities.  This position [is] found at 29 C.F.R. 785.18 . . . The
> compensability of short breaks by workers has seldom, if ever,
> been questioned . . . The FLSA does not require an employer to
> provide its employees with rest periods or breaks.  If the employer
> decides to permit short breaks, however, the time is compensable
> hours worked.

U.S. Dep't of Labor, Wage and Hour Division Opinion Letter Fair Labor Standards Act (FLSA),

1996 WL 1005233, at *1 (Dec. 2, 1996).  Furthermore, other Wage and Hour Division

pronouncements are consistent with the rule announced in §785.18.  See U.S. Dep't of Labor,

Field Operations Handbook, ch. 31a01(a) (Dec. 15, 2000) ("Rest periods of short duration,

running from 5 minutes to about 20 minutes, are common in industry.  They promote the

efficiency of the employee and are customarily paid for as working time.  They must be counted

as hours worked."); U.S. Dep't of Labor, Wage and Hour Division Opinion Letter Fair Labor

Standards Act (FLSA), 2001 WL 1869965, at *1 (May 19, 2001) (concluding that when there

has been an unauthorized extension of authorized break, "[o]nly the length of the unauthorized

extension of an authorized break will not be considered hours worked . . . not the entire break.").

These records clearly show that § 785.18 represents the longstanding and unchanging policy of

the Wage and Hour Division, a policy that has been (and continues to be) consistent with other

agency pronouncements about the compensability of short rest periods of twenty minutes or less.

Accordingly, these factors also favor the application of substantial Skidmore deference to §

785.18.

With respect to the language and purposes of the FLSA, it is clear from the plain language of the statute that it was designed as a remedial measure to improve working conditions and reduce unfair treatment of employees.  See, e.g., 29 U.S.C. § 202(b) ("It is declared to be the policy of this chapter . . . to correct and as rapidly as practicable to eliminate the conditions above referred to . . . .").  Congress deemed the FLSA necessary in the face of "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and the general well-being of workers . . . ."  29 U.S.C. § 202(a).  By ensuring that employees do not have their wages withheld when they take short breaks of 20 minutes or less to visit the bathroom, stretch their legs, get a cup of coffee, or simply clear their head after a difficult stretch of work, the regulation undoubtedly protects employee health and general well-being by not dissuading employees from taking such breaks when they are needed.  Whether the "efficiency" of Progressive employees is improved by the regulation is the subject of some disagreement between the parties.  That disagreement, however, does not impair the conclusion that § 785.18: (1) undoubtedly furthers the other articulated purposes of the FLSA for employees (including Progressive employees); (2) improves employee efficiency generally;[17] and (3) at least arguably improves the efficiency of Progressive employees, whether efficiency is judged on a micro or macro scale.  Clearly, the reasonableness of § 785.18 in light of the language and purposes of the FLSA also favors the application of substantial Skidmore deference.

The Court is convinced that § 785.18 should be afforded the most substantial deference permitted under the sliding-scale of Skidmore.  The Third Circuit has found that "the

---

[17]     See, e.g., U.S. Dep't of Labor, Wage & Hour Div., ANNUAL REPORT FOR THE FISCAL YEAR ENDED JUNE 30 1940 4-22 (U.S Gov't Printing Office, 1941) (discussing, at length, the history of improvements in employee efficiency witnessed by employers who implemented reduced hours per day/week, as the reduction in hours: reduced employee fatigue, allowed for increased effort, resulted in more contented workers with higher morale, reduced loss of time due to illness, and decreased labor turn-over).

16

Administrator's expertise acquired through day-to-day application of the statute makes us hesitant to contravene such opinions unless the statute plainly requires otherwise."  Townsend v. Mercy Hosp. of Pittsburgh, 862 F.2d 1009, 1012-13 (3d Cir. 1988).  This Court is particularly hesitant to contravene the Administrator's opinion here, as the expertise gleaned through day-to-day application of the statute via § 785.18 dates back over 50 years (and dates back over 75 years for the predecessor of § 785.18).

3. The Application of Section 785.18 as a Bright-Line Rule

Though it is clear to the Court that § 785.18 warrants substantial Skidmore deference, there is no clear precedent from the Third Circuit applying § 785.18 as a bright-line rule.[18]  The parties have not provided any controlling Third Circuit precedent for this Court to consider, and independent research has yielded none.  Fortunately, the decisions of other District Courts provide ample persuasive guidance.

---

[18] Defendants, in their most recent Notice of Supplemental Authority, argue that the Third Circuit's decision in Babcock v. Butler County, 806 F.3d 153 (3d Cir. 2015), should be interpreted to mean that: (1) "no deference is due to the DOL's rest period regulation . . . in this case;" (2) "the 'predominant benefit' test is the proper framework to determine the compensability of employees' breaks;" and (3) "the Secretary's argument that Progressive's alleged control over breaks changes the predominant benefit calculus" must be rejected.  ECF No. 72.  The Court does not read Babcock in the same manner.

 Babcock is a case that focuses on meal periods, not rest periods.  If this wasn't clear from the first sentence of the second paragraph of the majority's opinion ("This appeal raises the issue of whether a portion of time for the Butler County Prison corrections officers' meal periods is compensable under the FLSA."), it should become clear after reading the majority opinion and the dissent in their entirety – neither of which contain a single reference to § 785.18.

 The absence of § 785.18 from Babcock does not mean, however, that it had nothing to say about rest periods.  In fact, the singular reference to "rest periods" in the entire opinion arises when the Third Circuit quotes, with approval, the following proposition from the Eleventh Circuit: "the essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal."  Babcock, 806 F.3d at 157 (quoting Kohlheim v. Glynn County, 915 F.2d 1473, 1477 (11th Cir. 1990)).  This reference suggests the Third Circuit's agreement with two key points: (1) short breaks taken to eat a regularly scheduled meal are either "rest periods" or "bona fide meal periods;" and (2) "rest periods" are compensable.  In the instant case, since none of the short breaks of 20 minutes or less were taken for the purpose of eating a regularly scheduled meal (Progressive's break policy contains separate provisions about the scheduling of regular meal periods), the Court need not apply the newly adopted predominant benefit test, as that test is used to "determine whether a meal period is compensable under the FLSA."  Babcock, 806 F.3d at 155.

17

While Progressive's break policy and workplace may be unique, courts considering break periods of 20 minutes or less consistently find such breaks compensable in all types of working environments, relying on § 785.18 as a bright-line rule to do so. [19]  Many courts have reached this legal conclusion in the aftermath of a trial.  See Solis v. Cindy's Total Care, Inc., 2012 WL 28141, at *9, 19 (S.D.N.Y Jan 5, 2012) (comparing § 785.18 (rest) with § 785.19 (meal) to explain why an employer might lie about the length of employee breaks: "unlike shorter breaks, an employer need not compensate employees for longer rest periods;" also citing § 785.18 to support the conclusion that compensable time "also includes work breaks approximately of 20 minutes or less in duration."); Gomez v. Tyson Foods, Inc., 2013 WL 5516277, at *5 (D. Neb. Oct. 2, 2013) (citing § 785.18 to support the conclusion that a fifteen minute break was compensable time); Reich v. Cole Enterprises, Inc., 901 F. Supp. 255, 260 (S.D. Ohio 1993) (concluding that "cigarette breaks" taken by employees are compensable time under § 785.18).

---

[19]      Defendants, in their first Notice of Supplemental Authority, urged the Court to consider Ruffin v. MotorCity Casino, 775 F.3d 807 (6th Cir. 2015), as standing for two relevant propositions: (1) "it is not impractical or unmanageable for the Court to evaluate the totality of circumstances of breaks as a whole and decide whether they predominantly benefit Progressive or its sales representatives;" and (2) "non-work periods can predominantly benefit employees even where an employer exercises some level of control over those periods."  ECF No. 63 at 2.  The Court finds the latter proposition to have little bearing on the case now before it.  In Ruffin, the Sixth Circuit considered the compensability of meal periods, a matter addressed by its own regulation (29 C.F.R. § 785.19) and did not analyze or even mention either §785.16 or §785.18.  The Ruffin Court's holding that the employer's "requirement that [the employees] take their meals on [employer] property does not show that the meal periods predominantly benefited the [employer]" is likely a position that Plaintiff would agree with – after all, the Department of Labor's own regulation recognizes that "Bona fide meal periods are not worktime . . . [and] [i]t is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period."  29 C.F.R. § 785.19.  However, not all temporary periods of inactivity are created equal, and this Court has been asked to address rest periods of 20 minutes or less in duration, not meal periods, waiting time, or any other type of break.  Accordingly, Ruffin's conclusions are not only not controlling, they are not persuasive with respect to the type of breaks at issue here.  As for the former proposition, the Court is unpersuaded that the Sixth Circuit's logic in Ruffin strengthens Defendants' overall litigation position in the manner they hoped it would.  After all, in considering the "facts and circumstances" presented in Ruffin, the court seemingly gave determinative weight to an advisory opinion from the Wage and Hour Division of the Department of Labor.  775 F.3d at 815.  If this Court gave the advisory opinions of the Wage and Hour Division the same determinative weight that the Sixth Circuit did in Ruffin, Defendants would be in an unenviable position.  See, e.g., 1996 WL 1005233, at *1 ("Employees have always taken short work breaks, with pay, for a myriad of non-work purposes . . . the time is compensable hours worked.).

Other courts have applied § 785.18 as a bright-line rule at the summary judgment stage. <u>See</u> <u>Brown v. L&P Industries, LLC</u>, 2005 WL 3503637, at *6 (E.D. Ark. Dec. 21, 2005) (relying on § 785.18 to find that a "brief break" each morning for 15 minutes "cannot properly be deducted from [employee] work hours"); <u>DeKeyser v. Thussenkrupp Waupaca, Inc.</u>, 747 F. Sup. 2d 1043, 1056-1057 (E.D. Wisc. 2010) (citing § 785.18 and § 778.223 to support the conclusion that rest breaks of five to twenty minutes "taken outside of [the employer's] provided rest breaks should be considered work time under the FLSA." ); <u>Jones v. C&D Technologies, Inc.</u>, 2014 WL 1233390, at *11 (S.D. Ind. March 25, 2014 (citing § 785.18 as support for the conclusion that twenty minute lunch break is compensable time); <u>Lacy v. Reddy Electric Co.</u>, 2013 WL 3580309, at *14 (S.D. Ohio July 11, 2013) (citing § 785.18 as support for defendant's apparent concession that "employees must be paid for stand-alone breaks of 5-20 minutes."); <u>Martin v. Waldbaum</u>, Inc., 1992 WL 314898, at *1 (E.D.N.Y. Oct. 16, 1992 (citing § 785.18 and concluding as a matter of law that "breaks of less than twenty minutes are compensable" and short employee breaks for personal telephone calls and cigarettes "are commonplace and sensible in any working environment").

This Court is further convinced that § 785.18 should be applied as a bright-line rule by the fact that other courts have repeatedly relied on the regulation when considering claims involving multiple plaintiffs.   In <u>Aboud v. City of Wildwood</u>, the court granted plaintiffs' motion for conditional certification as a collective action under FLSA, finding that the employees were sufficiently similarly situated and that a factual nexus existed between the treatment of plaintiffs and other employees under the policy in question.  2013 WL 2156248, at *3-7 (D.N.J. May 17, 2013).  The court relied on  § 785.18  in rejecting defendant's claims that two fifteen minute "coffee breaks" during the course of a shift should be subtracted from the

calculation of hours worked for purposes of the FLSA.  Id. at *5-6 ("Because plaintiffs' two fifteen minute 'coffee breaks' are of short duration the Court rejects [defendant's] arguments and concludes that for present purposes they are compensable.").  In Hawkins v. Alorica, Inc., the court again granted plaintiffs' motion for conditional certification as a collective action under FLSA, though it did so under stricter scrutiny than was applied in Aboud.  287 F.R.D. 431, 441-43 (S.D. Ind. 2012).  The court was sufficiently satisfied that the employees were sufficiently situated with respect to the company's break policy, because there was some evidence that the company policy required the sales representatives to log-out of the phone system for breaks, even if the breaks lasted less than twenty minutes.  Id. at 442.  The court seemingly adopted § 785.18 as a bright-line rule, citing both the regulation and a 1996 Opinion Letter from the Wage and Hour Division regarding the FLSA in concluding that "[e]ven where a company has provided for scheduled breaks, and the employee takes an unscheduled break in addition to those scheduled breaks, the employer must compensate for the additional unscheduled break if it is less than twenty minutes."  Id.  In yet another case conditionally certifying a collective action under FLSA, the court in Petrone v. Werner Enterprises, Inc., cited § 785.18 as a bright-line rule in support of the conclusion that breaks of less than 20 minutes must be counted under the FLSA as hours worked.  2012 WL 4848900, at *3 (D. Neb. Oct. 11, 2012).

In light of the foregoing, the Court concludes that it is appropriate to apply § 785.18 as a bright-line rule to determine the compensability of short workday rest periods of twenty minutes or less.

4.      Inapplicability of § 785.16

Defendants devote many pages of their summary judgment papers to advocate for the application of § 785.16 to Progressive's break policy, in lieu of § 785.18.  Ultimately, the Court finds this position to be unavailing.

First, Defendants' argument that "courts have eschewed blind adherence to the type of 'length of break' test of which the Secretary relies" is not an accurate summary of the existing caselaw.  Numerous courts, all across the country, have done exactly that.  See, e.g., Naylor v. Securiguard, Inc., 801 F.3d 501, 504-05 (5th Cir 2015) ("The regulations thus make the duration of the break the key factor in whether it is classified as the shorter, compensable 'rest break' or the longer, noncompensable 'meal period.'"); Rother v. Lupenko, 515 Fed. Appx. 672, 674-75 (9th Cir. 2013) ("It is the general rule under federal law that breaks of less than thirty minutes are compensable."); Heidbrink v. Thinkdirect Marketing Group, Inc., 2015 WL 7253010 (M.D. Fla. Nov 17, 2015) ("The relevant law suggests that break periods consisting of twenty minutes or less and lunches that are not 'bona fide meal periods' should be compensated regardless of the status the employer requires its employees to select.);

Second, Defendant's argument that Progressive employees "can use breaks effectively for their own purposes because they can make those breaks as long, or short, as they want in order to complete whatever personal task they have at hand" misses the point.  The Secretary's position, as embodied in § 785.18, is that breaks of twenty minutes or less are of such short duration that they cannot, by their very nature, be used for "whatever personal task."

The Secretary's regulations cover a wide variety of situations, including rest periods, meal periods, waiting time, travel time, on-call time, training time, and preparatory and concluding time, among others.  Defendants efforts to transform a specific situation – that is, a

break of 20 minutes or less – which is covered by a specific regulation, into a more general situation (off duty time), which is covered by a more general regulation is both unpersuasive and contrary to the longstanding cannon of favoring the specific over the general.  See Creque v. Luis, 803 F.2d 92, 95 (3d Cir. 1986) (explaining that when two statutes are in conflict, the specific statute is favored over the more general statute).

>    5.    Limitations on § 785.18

Though not raised by the parties, the Court notes two exceptions to the bright-line rule embodied in § 785.18: (1) unauthorized extensions of authorized breaks, and (2) breaks taken for the purpose of expressing breast milk.

In Lillehagen v. Alorica, Inc., 2014 WL 698923 (C.D. Cal Dec. 10, 2014), the Honorable David O. Carter analyzed both exceptions.  Relying on Chapter 31a01(c) of the Department of Labor's Filed Operations Handbook, dated December 15, 2000,[20] and a 2001 Department of Labor Opinion Letter interpreting Chapter 31a01(c), 2001 WL 1869965,[21] Judge Carter concluded that "if an employer has 'expressly and unambiguously communicated do the employee that : (1) the authorized break may only last for a specific length of time; (2) Any extension of such break is contrary to the employer's rules; and (3) Any extension of such a break will be punished,' then unauthorized extensions of authorized breaks need not be compensated."  Lillehagen, 2014 WL 6989230, at *10 (citation omitted).  This exception has no bearing on the present case, because it requires the existence of paid authorized breaks and the Progressive break policy does not permit any.  See JA 850 ("Personal break time is NOT paid . .

---

[20]    Chapter 31a01(c) states: "Unauthorized extensions of authorized employer breaks are not counted as hours worked for an employee when the employer has expressly and unambiguously communicated to the employee that: (1) The authorized break may only last for a specific length of time; (2) Any extension of such break is contrary to the employer's rules; and (3) Any extension of such a break will be punished.

[21]    The 2001 Opinion Letter stated in relevant part: "Only the length of the unauthorized extension of an authorized break will not be considered hours worked when the three conditions are not, not the entire break."

. .").

The second exception is relevant to the present case. The comprehensive healthcare reforms enacted by the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 4207, 124 Stat. 110, 577 (2010), included the addition of § 207(r) to the FLSA.  In relevant part, § 207(r) states: "(1)(A) An employer shall provide -- a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk . . . (2) An employer shall not be required to compensate an employee receiving reasonable break time under paragraph (1) for any work time spent for such purpose."  29 U.S.C. § 207(r)(1)-(2).  Section 207(r) became effective on March 23, 2010.[22] Accordingly, any breaks taken by Progressive employees on or after March 23, 2010, for the purpose of expressing breast milk for a nursing child within one year after the birth of that child is not a compensable break.[23]

---

[22]     While may sections of the Patient Protection and Affordable Care Act specified their effective date, or provided some means to calculate their effective date, the Act contained no such language for § 4207.  Accordingly, the addition § 207(r) to the FLSA became effective on March 23, 2010, the date the Act was signed into law.  See Gozlon-Peretz v. United States, 498 U.S. 395, 404 (1991) ("It is well established that, absent a clear direction by Congress to the contrary, a law takes effect on the date of its enactment." (citations omitted)).

[23]     The nature of this amendment also demonstrates that § 785.18 warrants substantial Skidmore deference.  In Barnhart v. Walton, the Supreme Court made clear that Congress' frequent amendment or reenactment of the underlying statute can be considered as relevant evidence that Congress agreed with an agency's interpretation of a statute.  535 U.S. 212, 220 (2002).

In the numerous amendments to the FLSA since its enactment, Congress has never disrupted the Department of Labor's interpretation of the FLSA as set forth in §785.18.  Congress' inaction in this area for over 50 years can clearly be viewed as acquiescence to the agency's position.

Interestingly, in adding § 207(r) to the FLSA Congress did take specific steps to ensure that these newly provided-for breaks were different from breaks that would otherwise be governed by § 785.18.  First, unlike short workday breaks of twenty minutes or less, breaks taken for the purpose of expressing breast milk are required by the statute.  Second, unlike short workday breaks of twenty minutes or less, breaks taken for the purpose of expressing breast milk do not require compensation.  If FLSA employers were not otherwise required to compensate employees for breaks of 20 minutes or less, then the carve-out in § 207(r) would seem to be meaningless for breast milk breaks of less than 20 minutes.  Such surplusage is disfavored.  See Mackey v. Lanier Collection Agency & Service, Inc., 468 U.S. 825, 837 (1988) ("As our case have noted in the past, we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law.").

C.      **Satell as an Employer Under the FLSA**

The Secretary argues that Satell is an employer under the FLSA, and should be liable for

any FLSA liability attributable to Progressive as a result of the company's break policy.  Pl.'s

Mot. at 24-26.  In response, Defendants do not truly address the merits of the Secretary's legal

position, but instead characterize the Secretary's position as "unwarranted and vexatious,"

"unwarranted and harassing," "egregious," and evidence of "unnecessary aggressiveness."

Defs.' Opp. at 24-25.  The necessity or niceness of the Secretary's position does not dictate the

Court's resolution of this issue.  The Court instead turns to the language of the FLSA, as well as

binding and persuasive authority for guidance.  In light of the substantial authority provided by

the Secretary in support of its position,[24] and the lack of meaningful authority offered in response

by Defendants, the Court is convinced that Satell qualifies as an employer under the FLSA and

must be held liable for Progressive's violations of the FLSA.

The FLSA defines an employer as "any person acting directly or indirectly in the interest

of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Third Circuit has

recognized that this is an expansive definition.  In re Enter. Rent-A-Car Wage & Hour Practices

Litig., 683 F.3d 462, 467 (3d. Cir. 2012).  To determine whether an individual is an employer

under the FLSA, the Third Circuit uses the "economic reality" test.  Haybarger v. Lawrence

County Adult Probation and Parole, 667 F.3d 408, 417-18 (3d Cir. 2012).  Under the FLSA,

"whether a person functions as an employer depends on the totality of the circumstances rather

than on 'technical concepts of the employment relationship.'"  Id. at 418 (quoting Hodgson v.

---

[24]      See, e.g., Castellino v. M.I. Friday, Inc., 2012 WL 2513500, at *3 (W.D. Pa. June 29, 2012)
(finding an individual to be a joint employer for FLSA purposes where, among other things, the
individual was the owner and CEO of the company, exerted operational control over the company, had
the ability to hire and fire the company's employees, and set the compensation rates and policies for the
employees); Jackson v. Art of Life, Inc., 836 F. Supp. 2d 226, 235 (E.D. Pa. 2011) (finding that a
corporate officer with operational control of a company, who was personally responsible for setting the
compensation policies, was an employer for FLSA purposes).

Arnheim & Neely, Inc., 444 F.2d 609, 612 (3d Cir. 1971)).  More specifically, to determine if

Satell is a joint employer of Progressive employees, the Court must apply the Enterprise test.

683 F.3d at 469-70.  Under the Enterprise test, in determining whether a joint employment

relationship exists:

> courts should consider: (1) the alleged employer's authority to hire
> and fire the relevant employees; (2) the alleged employer's
> authority to promulgate work rules and assignments and to set the
> employee's conditions of employment: compensation, benefits,
> and work schedules, including the rate and method of payment; (3)
> the alleged employer's involvement in day-to-day employee
> supervision, including employee discipline; and (4) the alleged
> employer's actual control of employee records, such a payroll,
> insurance, or taxes.

Enter. Rent-A-Car, 683 F.3d at 469.  However, these factors "cannot be 'blindly applied' as the

sole considerations necessary to determine joint employment . . . [particularly where] other

indicia of 'significant control' are present to suggest that a given employer was a joint

employer."  Id. at 469-70 (quoting Bonnette v. California Health and Welfare Agency, 704 F.2d

1465, 1469-70 (9th Cir. 1983)).

  Satell owns 98% of Progressive, and serves as its president and CEO.  JA 480-81, 486.

In his own words, Satell is responsible for: "primarily strategy, overview of the company, [and] .

. . all of the people and all the activities within the company."  JA 481.  According to Progressive

COO Thomas Schubert, Satell "is primarily responsible for strategy and policy.  That's what he

likes to play and stay involved with, so strategy about where we're trying to grow and why, and

any major policy decisions for the company."  JA 546; JA 133-34.  Satell is the final authority

for the telemarketer compensation policies, the telemarketer break policy, and is "responsible for

the budgets and how we perform."  JA 482-84; JA 131-32; JA 244-45.  While he delegates

authority to others to make the day-to-day decisions about hiring and firing individual

telemarketers, he retains the final authority with respect to such hiring and firing decisions "on a policy level," that is, for key hires.  JA 484, 546.  Furthermore, Satell speaks with COO Schubert every day about Progressive's operations.  JA 546.

Upon consideration of the economic reality of Satell's role at Progressive, the factors set forth by the Enterprise test, and the other indicia of significant control, this Court concludes that Satell is a joint employer of Progressive employees for purposes of the FLSA.  Accordingly, the Secretary's motion for summary judgment will be granted with respect Satell's role as an employer.

### D.   Willfulness

Nowhere in its summary judgment papers does the Secretary address why it is seeking a determination that Defendants' violations of the FLSA were willful.  Pl.'s Mot. at 28-29.  Independently, the Court has identified two possible motivations for pursuing such relief.  First, if a defendant willfully violates the FLSA then the statute of limitations for such violations is extended from two years to three years.  29 U.S.C. § 255(a).  Second, a defendant who willfully violates the FLSA may be liable for civil money penalties imposed by the Administrator of the Wage and Hour Division.  29 U.S.C. § 216(e)(2); 29 C.F.R. §§ 578.3, 580.2.  Because it appears that neither the statute of limitations,[25] nor the imposition of civil money penalties[26] are at issue

---

[25]   The earliest alleged FLSA violation identified in the Complaint occurred on July 24, 2009.  Compl. at 5.  The Complaint was filed on Nov. 1, 2012.  Id.  Using those dates as outside boundaries for the statute of limitations, the Court calculates that period as spanning 1196 days.  The parties, however, entered into a series of tolling agreements that excluded a total of 479 days from that period.  JA 100-02.  As a result, 717 non-excluded days remain at issue.  When taking into account the excluded time, all of those 717 days would fall within the shortest possible limitations period that could apply – 2 years (or 730 days).  Since expanding the statute of limitations to three years would bring no additional conduct within the jurisdiction of this Court, the Court need not determine whether a two-year or three-year statute of limitations applies.

[26]   First, civil money penalties are not a form of relief sought in the present action.  See Compl. at 6-7 (seeking only: (1) a permanent injunction, (2) a "judgment in the amount of back wage compensation due together with an equal amount in liquidated damages," and (3) costs).  Second, it appears that a Court cannot impose civil money penalties in an action such as this, as any such penalties must be pursued in

in this action, the Court need not issue an advisory opinion on the question of willfulness. Accordingly, to the extent that the Secretary's summary judgment motion seeks a finding of willfulness, that portion of the motion will be denied.[27]

### E.    Liquidated Damages

In relevant part, 29 U.S.C. § 216(c) states that: "The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages."  Such liquidated damages are compensatory – to ease any hardship endured by employees who were deprived of lawfully earned wages; they are not regarded as a way to punish the company for violating the statute. Martin v. Selker Bros., Inc., 949 F.2d 1286, 1299 (3d Cir. 1991) ("These liquidated damages are compensatory rather than punitive in nature; they compensate employees for the losses they may have suffered by reason of not receiving their proper wages at the time they were due."). Accordingly, "[d]ouble damages are the norm, single damages the exception[.]"  Walton v. United Consumers Club, Inc., 786 F.2d 303, 310 (7th Cir. 1986).

A court, in its sound discretion, may award no liquidated damages or may award less than the maximum permitted by the statute if the employer shows to the satisfaction of the court that it acted in good faith and had reasonable grounds for believing that it was not violating the FLSA.  29 U.S.C. § 260.  "[A] defendant employer bears the 'plain and substantial' burden of proving he is entitled to discretionary relief from the FLSA's mandatory liquidated damages provision."  Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907 (3d Cir. 1991) (quoting Williams v. Tri-County Growers, Inc., 747 F.2d 121, 128-29 (3d Cir. 1984)).  Thus, "[t]o avoid

---

the first instance by the Administrator of the Wage and Hour Division through a dedicated administrative process.  See 29 C.F.R § 580.1 et seq.

[27]      It is also worth noting that the pleadings in this action do not invoke jurisdiction on the basis of the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and no party has plead relief under the Declaratory Judgment Act.

liability for liquidated damages, the employer must make a showing of good faith and reasonable grounds for its conduct.  If the employer fails to carry its burden of demonstrating good faith and reasonable grounds, the award of liquidated damages is mandatory."  Selker Bros., 949 F.2d at 1299 (citations omitted); see also Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982) (holding that in the absence of a showing of good faith and that reasonable grounds existed for the employer's belief that the FLSA did not apply, "the district court has no discretion to mitigate an employer's statutory liability for liquidated damages").

At his deposition, Satell stated that his motivation for changing Progressive's break policy was to ensure that employees across all call centers were being treated equally with respect to breaks, and specifically rebuked the suggestion that the policy change was motivated by the close-in-time increase in the minimum wage.  JA 522-26.  Satell testified that he consulted the Department of Labor website, and "then tr[ied] to get as much guidance as [he] could from the [Department of Labor]."  JA 518-19.  He became at least "vaguely aware" of the existence and content of 29 C.F.R. § 785.18.  JA 531-32.  Satell sought and obtained the advice of legal counsel on the subject.  JA 519-20, 531-36.  He also read a number of legal opinions from various courts on the subject.  JA 532-33, 536.  In total, Satell and Drummond, held about a dozen meetings to discuss the change to the company-wide break policy.  JA 229.

Defendants argue that Staell's "intensive review of the FLSA, relevant regulations, and case law is more than sufficient to establish good faith."  Defs' Opp. at 27.  And while Defendants have cited a number of cases in which courts have found similar efforts sufficient to establish good faith, Id. at 26-27, Defendants have not identified any cases where the defendant: (1) obtained legal advice from several lawyers; (2) refused to disclose the substance of that legal advice; and (3) was found to have acted in good faith.  This Court recognizes that a large

number of courts have found that "the FLSA . . . does not require an employer to seek a legal

opinion." <u>Grant</u>, 2012 WL 124399, at *14.  Where such a legal opinion has been sought and

obtained, however, this Court is of the opinion that a defendant cannot demonstrate that it has

acted in good faith unless it comes forward with at least some evidence that it acted in

conformance with that legal advice (or, at the very least, that it has not contravened the legal

advice).  "The good faith requirement is a subjective one that 'requires the employer have an

honest intention to ascertain **and follow** the dictates of the Act.'"  <u>Cooper Elec.</u>, 940 F.2d at 907

(emphasis added) (quoting <u>Tri-County Growlers, Inc.</u>, 747 F.2d at 129).  Here, it is entirely

possible that Defendants implemented the new break policy in 2009, despite being told by one or

more of its lawyers that the policy violated the FLSA.  It would be an absurd result to classify

such conduct as "good faith," but Defendants have refused to take action to eliminate that

scenario from the realm of very real possibilities.  Accordingly, Defendants are unable to

demonstrate that they had an honest intention to ascertain **and follow** the dictates of the FLSA,

so they have failed to meet their plain and substantial burden of proving an exception to the

otherwise mandatory award of liquidated damages.  The Secretary's motion for summary

judgment with respect to liquidated damages will be granted, and liquidated damages will be

awarded in an amount equal to the yet-to-be-determined back wage compensation award.

### F.    <u>Recordkeeping</u>

The FLSA imposes recordkeeping requirements on employers.  <u>See</u> 29 U.S.C. § 211(c).

As summarized by the Third Circuit, the FLSA "requires employers to maintain accurate records

to ensure that all workers are paid the minimum wage for every hour worked."  <u>Tri-County</u>

<u>Growers, Inc.</u>, 747 F.2d at 128 (citing <u>Wirtz v. Williams</u>, 369 F.2d 783, 785 (5th Cir. 1966)).

The burden to keep accurate wage and time records lies with the employer.  <u>Dole v. Solid Waste</u>

Serv., Inc., 733 F. Supp. 895, 924 (E.D. Pa. 1989).  Under the applicable regulations, the wage and time records must be preserved for a period of at least two years, and must include, *inter alia*, the hours worked per day and week, as well as the daily starting and stopping time of individual employees.  29 C.F. R. §§516.2(7), 516.6(a)(1).

Defendants argue that "[t]he Secretary's allegation that Progressive violated the recordkeeping requirement of the FLSA should be dismissed as non-justiciable."  Defs. Opp. at 29.  Defendants, however, have offered no relevant and applicable case law that supports their unspecified justiciability objection.  To the contrary, one of the cases cited by Defendants demonstrates that disputes over compliance with the FLSA's recordkeeping provisions are justiciable.  See Lugo v. Framer's Pride Inc., 737 F. Supp. 2d 291, 311-12 (E.D. Pa. 2010) (addressing the impact of FLSA recordkeeping violations on the applicable burden of proof, and not avoiding the recordkeeping violations on justiciability grounds); see also Tri-County Growers, Inc., 747 F.2d at 127-28 (fully evaluating the impact of the employer's failure to satisfy the FLSA's recordkeeping requirements, and not avoiding the recordkeeping violations on justiciability grounds).  In addition, Defendants appear to argue that any recordkeeping violations are de minimus and the result of "circumstances beyond Progressive's control."  Defs. Opp. at 30.  Even if this Court adjudged the alleged recordkeeping violations here to be de minimus and/or the result of circumstances beyond Defendants' control, Defendants have not provided the Court with any authority to support the proposition that either circumstance would excuse or constitute a defense to the alleged violations.

Plaintiff, in its reply, argues that the recordkeeping violations are relevant to this case because "the compensable breaks in the missing records will have to be reconstructed . . . [and] [t]he existence of the recordkeeping violation means that the Secretary need only prove the

amount of that uncompensated time through 'a just and reasonable inference.'" Pl.'s Reply at 9-10 (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-688 (1946)).  The impact of recordkeeping violations in a case such as this was clearly recognized by the Third Circuit in Tri-County Growlers, Inc.: "Once an employee establishes that the employer's records are inadequate, the employee need only introduce enough evidence to support a reasonable inference of hours worked.  The burden then shifts to the employer to come forward with evidence to negate the inference to be drawn from the employee's evidence." 747 F.2d at 128 (internal citations and quotation marks omitted).

In light of the relevant authority presented to the Court, the Court finds that the alleged recordkeeping violations are clearly justiciable.  Furthermore, in light of Defendants' concessions in the Joint Statement of Stipulated Facts, JSSF 44-50,[28] Defendants have clearly violated the recording keeping requirements of the FLSA.  Accordingly, the Secretary's Motion for Summary Judgment with respect to the recordkeeping violations will be granted.

## IV.    CONCLUSION

For the reasons set forth above, the parties Daubert motions will be denied.  Plaintiff's partial motion for summary judgment will be granted with respect to FLSA minimum wage liability, FLSA recordkeeping liability, Satell's role as an employer under the FLSA, and liquidated damages.  Plaintiff's partial motion for summary judgment will be denied with respect to the willfulness of the FLSA violations.  Defendants' motion for summary judgment will be denied.

---

[28]    These stipulated facts evidence Progressive's failure to preserve log-on/log-off records for various periods from the Bensalem, Meadville, Pottsville, Sayre, Uniontown, and Wyomissing call center locations.